HEATHER E. WILLIAMS, #122664
Federal Defender
ALEXANDRA NEGIN, #2500376
Assistant Federal Defender
OFFICE OF THE FEDERAL DEFENDER
801 "I" Street, 3rd Floor
Sacramento, CA 95814
916-498-5700
Lexi_negin@fd.org

Attorney for Defendant
JUAN TANG

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 20-MJ-96-DB |
| Plaintiff, | )<br>)<br>) | DEFENDANT'S MOTION FOR BAIL REVIEW PURSUANT TO 18 U.S.C. § 3141 et seq. |
| v. | ) | |
| JUAN TANG, | )<br>) | Date:   July 31, 2020 |
| Defendant. | )<br>)<br>) | Time:   2:00 p.m.<br>Judge:  The Honorable Deborah Barnes |

Ms. Juan Tang, by and through undersigned counsel, respectfully requests this Court release her on the least restrictive conditions that will provide safety to the community and assure her appearance in Court. Counsel requests that the Court schedule this matter for 2:00 p.m. on Friday, July 31, 2020 for a detention hearing. Government counsel agrees to that date and time for a detention hearing.

**I.      PROCEDURAL BACKGROUND**

Ms. Tang moves pursuant to 18 U.S.C. § 3142 for release pending trial in accordance with the Bail Reform Act. Ms. Tang herein presents additional information, not available at the time of her original hearing on July 27, 2020, pertaining to the question of release. As the docket reflects, on that date defense counsel "submitted on detention" with the understanding that the detention ruling would be without prejudice until such time a viable release plan could be

presented. Dkt. 6. Ms. Tang now offers that she can immediately reside in housing arranged by the Office of the Public Defender that will be paid for by Ms. Tang's family. Ms. Tang proposes that she be subject to electronic monitoring, travel restrictions and other conditions of pretrial supervision that will assure her appearance in Court.

## II.     REVIEW OF THE BAIL REFORM ACT

"Only in rare circumstances should [pretrial] release be denied." United States v. Motamedi, 767 F.2d 1403, 1404 (9th Cir. 1985). This presumption reflects the essential principle that "[i]n our society liberty is the norm, and detention prior to trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987). That exception is to be invoked "only for the strongest of reasons." Sellers v. United States, 89 S. Ct. 36, 38 (1969) (Black, J., in chambers). This case does not present *the strongest of reasons* for detention. The Bail Reform Act provides that:

> Upon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that, pending trial, the person be --
>
> (1) released on personal recognizance or upon execution of an unsecured appearance bond . . . ;
>
> (2) released on a condition or combination of conditions . . . ;
>
> (3) temporarily detained [for certain reasons]; or (4) detained [if conditions set forth in subdivision (e) are met].

18 U.S.C. § 3142(a). Conditions of release range from release on personal recognizance or unsecured bond, subd. (b), to "the least restrictive further condition, or combination of conditions, that [the] judicial officer determines will reasonably assure the appearance of the person as required," subd. (c). A long list of conditions is provided in the statute in order to facilitate release rather than detention. See subd. (c)(1)(B).

On a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk. United States v. Gebro, 948 F.2d 1118, 1121 (9th Cir.1991). The government bears the burden to prove that no combination

of conditions will assure the defendant's future appearance. <u>United States v. Townsend</u>, 897 F.2d 989, 994 (9th Cir. 1990).  Further, if seeking detention on the basis of flight risk, the government must prove "that no condition or combination of conditions will reasonably assure the appearance of the person required . . . by clear and convincing evidence" under section 3142(e).

In determining whether there are conditions "that will reasonably assure the appearance of the person as required," the following factors are considered:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including --
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at Court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### III. FACTORS SUPPORT RELEASE ON ELECTRONIC MONITORING WITH OTHER APPROPRIATE CONDITIONS

Ms. Tang is 37 years old.  She is married and has one eight year old child.  Her husband is a medical doctor who is currently with her daughter in China.  She left the family home at age 18 to attend college and eventually earned her PhD in cellular biology in China in 2010.  She is a cancer researcher.  She is a citizen of China and had not travelled outside of China prior to coming to the United States on December 27, 2019, to work at the University of California, in

Davis (UC Davis) doing cancer research for a one year program.  It is the application for the visa to come to the United States to work at UC Davis that is the subject of the charges.

As the complaint alleges, Ms. Tang applied for and received a visa to enter the United States and did so on December 27, 2019.  Ms. Tang lived in an apartment in Davis and began her work at UC Davis, but shortly after the lab was closed due to the COVID-19 pandemic.  In June Ms. Tang, realizing she was unlikely to be back in the lab to do her work, decided to return to China and had made plans to leave the apartment where she had been staying.

Law enforcement interviewed her and executed a search warrant at her residence in Davis on June 20, 2020.  Law enforcement seized Ms. Tang's passport and visa at that time.  Concerned about the interaction with law enforcement, and given that she could not go back to China as planned because she no longer had her visa, she reported to the Chinese consulate in San Francisco to ask for assistance.  Ms. Tang remained in the consulate for approximately a month.  Unknown to her, the government filed a complaint under seal and obtained an arrest warrant on June 26, 2020.  She could have tried to obtain a new passport and leave the United States prior to June 26th if she had any intent to flee.  Instead, she remained at the consulate awaiting information about her legal situation.

Ms. Tang was unaware that a warrant had issued until she was told by consulate employees on or about July 23, 2020.

On or about Thursday, July 23, 2020, law enforcement appeared at the Chinese consulate to inform Ms. Tang that a warrant had been issued for her arrest.  Legally unable to arrest her on consulate property, law enforcement was reportedly told by someone at the consulate that they would inform her of the warrant and the charges and that it would be her decision to surrender or stay in the consulate.  Ms. Tang desired to surrender to be arrested, but was in hysterics upon learning of the warrant, she suffers from asthma, and the consulate employees believed she needed to be seen by a doctor.  Counsel believes that law enforcement conducted surveillance on the consulate and after a short time observed Ms. Tang as a passenger in a vehicle being driven by consulate employees leave consulate property.  Law enforcement followed the vehicle to a

medical office where Ms. Tang was seen, medically cleared and then arrested. Ms. Tang could have remained in the consulate to avoid arrest. Instead she agreed to leave consulate property knowing this would allow law enforcement to arrest her.

There is no evidence or indication that Ms. Tang is a danger to the community. The only question for the Court is whether she is a flight risk. The following factors demonstrate that there are conditions of release that can be fashioned to assure Ms. Tang's reappearance in Court.

(1) The nature and circumstances of the offense charged: The offense charged is non-violent. Ms. Tang is alleged to have answered questions falsely on her visa application that allowed her to join a program to work in a cancer research lab. There is no indication that Ms. Tang would have had access to any national security or other sensitive information. The materiality of those false answers is not high and would have only subjected her application to greater scrutiny. The answers that the government believes to be true, that Ms. Tang is in the military and is affiliated with the communist party, would not have necessarily caused the visa application to be rejected. Assuming that FBI internet searches are enough for probable cause, which is not necessarily a sound assumption, the criminality of the allegations is relatively minor. While the maximum penalty is 10 years in prison, Ms. Tang's federal sentencing guidelines appear to be 0-6 months after conviction at trial. See, 2L2.2. Thus this case does not have a high prison sentence hanging in the balance as an incentive to flee. Ms. Tang has no passport and thus has no ability to leave the United States.

(2) The weight of the evidence against the person: The allegations in the complaint, while for argument's sake rise to the level of probable cause, are based on investigation that comprised of the reliability of internet searches and translation apps, and old photographs of Ms. Tang in uniform are weak and lend themselves to many innocent explanations, from not completely understanding the way the questions are presented, to potential cultural misunderstandings. Ms. Tang apparently attended a prestigious medical school that is run by the military in China. That does not mean that she was "in the military." The civilian students are required to wear uniforms but those uniforms do not indicate that the student is

in the military. The civilian students have no rank in the military and are free upon graduation to go wherever they wish to work. There are many significant cultural differences that impact this case. Ms. Tang is presumed innocent and the Court must allow for room that there are innocent explanations for the supposed false responses on the visa application. The Court may not presume Ms. Tang is guilty of this offense.

(3) The history and characteristics of the person: Ms. Tang has no criminal history and holds a PhD. She is a daughter, a wife and a mother. She has every incentive to see this case through to its conclusion and return to China after the case is resolved. If she is detained, she will be deprived a speedy trial, as the Court is not conducting trials due to COVID-19, and there is a likelihood that if found guilty even after a guilty plea her sentence will be overserved. Ms. Tang has no substance abuse issues or other issues that would make her unsuitable for release.

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release: there is no danger to any person or the community that would be caused by Ms. Tang's release.

Counsel understands that an ICE detainer has been placed on Ms. Tang. Ms. Tang has not previously been removed or deported and therefore she would be eligible for immigration bond and voluntary departure from the United States. This Court may not consider the risk of ICE taking Ms. Tang into custody in its determination of whether she is a risk of flight. United States v. Santos-Flores, 794 F.3d 1088 (9th Cir. 2015). In Santos-Flores, the Ninth Circuit explained: "The government may, therefore, elect to deliver the alien to the United States Attorney's Office for prosecution, as it did here, instead of removing him immediately pursuant to 8 U.S.C. § 1231(a)(5). Having made this choice, however, the government may not use its discretionary power of removal to trump a defendant's right to an individualized determination under the Bail Reform Act." Id. at 1091. Once the Court deems that conditions of release can be fashioned to assure Ms. Tang's appearance at future court proceedings, the government can

decide whether it is in the public interest for her to be removed to China or to remain for prosecution.

Ms. Tang came to the United States legally and there is no allegation of any misconduct during her six months in the United States. She is accused of a crime that would carry sentencing guidelines of zero to six months. She has asthma which puts her at risk for contracting COVID-19 in the jail where there is a growing number of COVID-19 cases. For all of these reasons, and any other that the Court deems just and proper, she requests release.

### IV.     CONCLUSION

The conditions proposed above will reasonably assure Ms. Tang's appearance at all future court dates in this case. Ms. Tang respectfully requests that this Court order her release.

Dated: July 29, 2020                                        Respectfully submitted,

                                                            HEATHER E. WILLIAMS
                                                            Federal Public Defender

                                                            */s/ Lexi Negin*
                                                            LEXI NEGIN
                                                            Attorney for Defendant
                                                            Juan Tang