Malcolm Segal, SBN 075481
Emily E. Doringer, SBN 208727
**SEGAL & ASSOCIATES, PC**
400 Capitol Mall, Suite 2550
Sacramento, CA 95814
Telephone: (916) 441-0886
Facsimile: (916) 475-1231
msegal@segal-pc.com

Thomas A. Johnson, SBN 119203
Kristy M. Horton, SBN 271250
**Law Office of Thomas A. Johnson**
400 Capitol Mall, Suite 2560
Sacramento, CA 95814
Telephone: (916) 442-4022
taj@tomjohnsonlaw.com

Patrick Wong, SBN 241740
**Patrick Wong, Esq.**
145 El Camino Real
Menlo Park, CA 94025-5234
Telephone: (650) 391-5366
Facsimile: (650) 352-3562
patrick@wong.law

Attorneys for Defendant
JUAN TANG

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>v.<br><br>TANG JUAN,<br>aka Juan Tang,<br>　　　　Defendant.<br>_____ | Case No. 2:20-CR-00134 JAM<br><br>**DEFENDANT'S OPPOSITION TO UNITED STATES' MOTION FOR REVOCATION** |

## I. Introduction

Having made an unsuccessful attempt to obtain a stay, the government now seeks revocation of Magistrate Judge Newman's Order releasing the defendant from detention, subject to a combination of conditions, including, among others, the requirement of a Third-Party Custodian, and the Custodian's posting of security in the amount of $750,000 in his and his spouse's residence, where the Custodian and the defendant will reside for the duration of the case. Judge Newman determined to release the defendant after thorough briefing by the parties and two afternoons of hearings during which the government had an unfettered opportunity to test the sincerity of the Third-Party Custodian in undertaking the obligation to monitor the defendant.

Additionally, Judge Newman signed the final Release Order only after the government had the opportunity to scrutinize the documents providing security for the bond and receipt of proof that the required deed had been and duly recorded in the County where the property is located.

Magistrate Judge Newman gave the matter careful and thoughtful consideration and followed the direction of the Bail Reform Act. The government's motion for revocation presents no additional facts, argument, or law in support of its position that the defendant should be detained, that the conditions of release are inadequate or should be supplemented, or that the posted security is deficient. The government's motion should be denied.

## II. Argument

The Bail Reform Act "requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community." *United States v. Gebro,* 948 F.2d 1118, 1120 (9th Cir. 1991); 18 USC §3142(c)(2). "Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor." *Id*. The standard is clear. Courts must carefully consider pretrial detention "to ensure that the 'order is consistent with the

defendant's constitutional and statutory rights.'" *United States v. Petersen*, 557 F. Supp. 2d 1124, 1130 (ED CA 2008) [quoting *United States v. Townsend*, 897 F.2d 989. 994 (9th Cir. 1990)]. The determination demands that courts remain mindful that "[t]he Fifth and Eighth Amendment prohibitions of deprivations of liberty without due process and of excessive bail require careful review of pretrial detention orders to ensure that the statutory mandate has been respected." *Id*. [quoting *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985)].

A District Court has statutory authority to review a release order entered by a magistrate. 18 USC §3145(a)(1). The Court is empowered to conduct an independent review. *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk. *United States v. Motamedi*, 767 F2d 1403, 1406-1407 (9th Cir. 1985).

The government's present argument for revocation of the Release Order offers a restatement of its previous position that a relatively straightforward prosecution for visa fraud, minimally punishable under the sentencing guidelines, presents an insurmountable risk of flight requiring that a foreign national be detained. The Motion for Revocation offers no new facts, and no substantial arguments or supporting law favoring revocation. There has never been any suggestion that the defendant is a danger to the community, or any evidence presented that Dr. Tang affirmatively indicated at any time that she intends to flee. Virtually the entirety of the government's argument is one based on opinion--its own opinion. To the contrary, as the Court has already seen from its own review of the record, the defendant's application for pretrial release on the current stated conditions is compelling.

**A.    The Qualified and Highly Regarded Custodian and His Spouse Provide Ample Assurance of Conformity to the Court's Orders.**

The government argues that the defendant's lack of deep rooted personal familial connections to the Third-Party Custodian somehow dilutes his effectiveness as her Custodian. There is no substance to that contention, in large part because of the

obvious integrity of the Custodian and the personal financial stake he and his family have in making sure the defendant complies with her release obligations. The United States Attorney and the Federal Bureau of Investigation were given an opportunity to investigate the Third-Party Custodian in advance of the hearings, based upon statements in his sealed declaration in support of the release motion, and then two opportunities to challenge his integrity in court. It had an equal opportunity to dispute the ownership and value of the security he personally proffered. Nothing has been presented, or even argued, to suggest anything but a fully committed, respected and responsible Custodian. This Court can safely assume that the United States Department of Justice completed a comprehensive investigation of the Third-Party Custodian. The government has known his identity for weeks and has not raised any concerns bearing on his ability to serve reliably as a Custodian or that he is motivated by anything but altruism. The lack of any reason to conclude otherwise can only mean one thing--the Magistrate was correct, he is a reliable, unbiased, and thoroughly capable Custodian.

Judge Newman personally assessed the Custodian; he is quite obviously an attorney with outstanding and impeccable credentials. He and his wife posted their substantial equity in their primary residence and graciously agreed to permit Dr. Tang to live there. Given his circumstances, which provide him with the ability to supplement electronic monitoring by his personal presence in the residence, the Custodian is more than able to monitor the defendant, understand the terms of the Release Order, and supervise her compliance. Judge Newman took care to determine that the Custodian was fully aware of the significant responsibility he was agreeing to take on, and to assure that the Custodian was prepared to do so at the risk of losing his own home. And then, Judge Newman fashioned an additional, detailed combination of conditions to provide further assurance. The defendant is to be electronically monitored, cannot visit her consulate and may only contact the consulate with defense counsel present on the phone, cannot leave the Custodian's residence for any reason without the express permission of Pretrial Services, and must fulfill other detailed conditions of release,

including a two-week quarantine in the home because of potential exposure to the Covid-19 virus at the jail. 18 USC §3142(f).

While the government may be correct that the Court most often sees personal sureties and Third-Party Custodians who come forward because they are related to or have a personal friendship with the defendant, such a relationship is not a requirement under the Bail Reform Act. The value of such a personal relationship is always just a little suspect because, in the final analysis, who more than a friend or a loving relative wants to see a defendant escape a penalty for his or her conduct, or may be willing to excuse that persons failure to comply with conditions of release. That is not to say that friends or relatives willingness to step up and post security for a defendant's release should be discounted, but rather that the willingness of a committed, objective Custodian to post his own home as security should be highly valued. In fact, the primary requirement for acceptance as a personal surety at English common law was not that he or she be a relative or friend but rather that the person enjoy the status as "a responsible individual from the community" who promised to pay a sum should the accused fail to appear at trial. Drimmer, Jonathan, <u>When Man Hunts Man: The Rights and Duties of Bounty Hunters in the American Criminal Justice System</u>, 33 Hous. L.R. 731, 745 (Fall, 1996). If any preference ought to exist, it should not be for a family member, or even a longstanding personal friend, but instead for a thoroughly vetted and well-qualified Custodian who understands the rules and is personally and professionally willing to report violations to the Court, at the risk of his or her own financial loss.

**B.     The Extensive Combination of Conditions, in Light of the Individual Circumstances of the Case, Support the Release Order.**

While the evidence is one of several factors to consider when fashioning a release order, "the weight of the evidence is the least important of these factors," *United States v. Winsor*, 785 F,2d 755, 757 (9th Cir. 1986). Such evidence is only relevant insofar as it relates to risk of flight, and "'the statute neither requires nor permits a pretrial determination of guilt.'" *United States v. Xiaolang Zhang,* 2019 U.S. Dist. LEXIS 219317

at 6 (ND CA 2019) (quoting *Gebro*, 948 F.2d at 1121); *see also United States v. Jizhong Chen*, 2019 U.S. Dist. LEXIS 219311 at 8-9 (ND CA 2019) (fact that the defendant lied to investigators regarding materials he took from an employer and his destruction of incriminating evidence are facts "<u>more pertinent to the issue of guilt and less to consideration of [pretrial release]</u>" [emphasis added]).

      The government's argument that a professional scientist and cancer researcher is a flight risk is not grounded on anything she said or expressly manifested--and she never attempted to flee the country, conceal her whereabouts, or hide her identity. And, the force of the government's claims as to the strength of its case is diminished by the fact that it persists in devoting six pages of its brief to a discussion of the facts of wholly unrelated cases, yet acknowledges that it has not charged the defendant with participating in a conspiracy. Those other cases are merely a distraction, and as Judge Newman recognized, none of the information about those other cases has any place for proper consideration here. Beyond that, the government continues to rely primarily on its own conclusory view as to the meaning of photographs and its reading of documents. It does so without offering someone with significant expertise as to the wearing of uniforms, the meaning of insignia, or the relationship between the photographs and the specific questions asked on the visa application form and by the investigative agents, when applied to the conduct of citizens of a different governmental entity. They have similarly drawn self-serving conclusions from defendant's conduct after her interview and the seizure of her cell phone and computer, ambiguous at most, when that conduct was indicative of a person, far from home in a difficult and confusing legal situation, and then mischaracterized that conduct as evidence of the risk of flight.

      Following FBI seizure of her passport, laptop, and phone, although she was not arrested, Dr. Tang went to her country's consulate and chose to stay there while she tried to understand and appreciate what had occurred. Within hours of learning from consulate personnel that they were informed of an arrest warrant issued for her, she voluntarily left the consulate expecting to be arrested. She stopped only for a medical

consultation before the FBI took her into custody. It is worth noting again that the defendant's initial conduct in seeking the assistance of her Consulate was consistent with a person distressed after a law enforcement contact in a foreign country, and it was exactly what the United States State Department tells our citizens to do under like circumstances. And, while the government contends that prior to the visit by the FBI-- and when she was apparently even unaware that the FBI intended to visit her--materials were deleted from her computer creates suspicion, those concerns are belied by the fact that many were readily recoverable from the computer's recycle storage folder and, in any event, were not taken from a computer at the research laboratory, or from any illicit source, or they would have stated as much in the filed charges.

The facts, notwithstanding the government's opinions, do not weigh in favor of detention, and the nature of the charged offenses cannot possibly create an innate flight risk. The government has conceded that the guideline range for the charged offenses may be as low as no incarceration, yet they urge that the defendant be held in custody until trial, knowing that trial will undoubtedly be substantially delayed due to the Covid-19 epidemic. Judge Newman, in making his determination, raised and appreciated the significant concern that, even if the defendant were to be convicted, the sentence would be far less than the time she would spend in detention pending a trial.

This is a case where the defendant's detention was not required, particularly under circumstances where conditions of release could be fashioned and enforced to assure her presence at trial when one is available to her. No one can reasonably argue that the conditions imposed here and the security the Court has required are insufficient to provide that assurance.

### III.     Conclusion

The current Release Order reflects a reasonable and careful consideration of the relevant factors and arguments. The willingness and ability of the Third-Party Custodian to serve in that capacity, and his understanding of the risk he bears as a surety, is clear

/ / /

from the record. The extensive combination of conditions in place will more than adequately assure the defendant's presence at all further proceedings in the case.

The government's Motion for Revocation should be denied.

Dated: September 14, 2020         **SEGAL & ASSOCIATES, PC**


By:  /s/ Malcolm Segal
     MALCOLM SEGAL
     EMILY E. DORINGER
     Counsel for Defendant


**LAW OFFICE of THOMAS A. JOHNSON**


By:  /s/ Thomas A. Johnson
     THOMAS A. JOHNSON
     Counsel for Defendant