Malcolm Segal, SBN 075481
Emily E. Doringer, SBN 208727
**SEGAL & ASSOCIATES, PC**
400 Capitol Mall, Suite 2550
Sacramento, CA  95814
Telephone: (916) 441-0886
Facsimile: (916) 475-1231
msegal@segal-pc.com

Thomas A. Johnson, SBN 119203
**Law Office of Thomas A. Johnson**
400 Capitol Mall, Suite 2560
Sacramento, CA 95814
Telephone: (916) 442-4022
taj@tomjohnsonlaw.com

Patrick Wong, SBN 241740
**Patrick Wong, Esq.**
145 El Camino Real
Menlo Park, CA 94025-5234
Telephone: (650) 391-5366
Facsimile: (650) 352-3562
patrick@wong.law

Attorneys for Defendant
JUAN TANG

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No: 2:20-CR-00134 JAM |
| Plaintiff, | |
| v. | **DEFENDANT JUAN TANG'S MOTION TO MODIFY CONDITIONS OF PRETRIAL RELEASE** |
| TANG JUAN, aka Juan Tang, | Date:   November 6, 2020 |
| Defendant. | Time:   2:00 p.m. |
| | Crtrm:  25, 8th Floor |
| | Judge:  Hon. Kendall J. Newman |

-1-

1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2

PLEASE TAKE NOTICE THAT on  November 6, 2020, at 2:00 p.m., or as

3

soon thereafter as this matter may be heard in the above-entitled Court,

4

Defendant JUAN TANG will and does hereby move to modify the conditions of

5

her pretrial release.  This motion is brought pursuant to 18 USC §3141 and §3142

6

and is based on the existence of new and changed circumstances bearing on the

7

issues raised in the Motion to Modify Conditions of Release.  18 USC §3142(f).

8

This motion is based on the attached Memorandum of Points and Authorities, and

9

exhibits, and on such further facts and evidence as the Court may consider at the

10

hearing of the matter.

11

12

Dated: October 23, 2020          **SEGAL & ASSOCIATES, PC**

13

14

By:     /s/ Malcolm Segal
               MALCOLM SEGAL

15

               EMILY E. DORINGER
               Counsel for Defendant

16

17

**LAW OFFICE of THOMAS A. JOHNSON**

18

19

By:    /s/ Thomas A. Johnson
               THOMAS A. JOHNSON

20

               Counsel for Defendant

21

22

23

24

25

26

27

28

Defendant Juan Tang's Motion to Modify Conditions of Pretrial Release

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

**OF DEFENDANT JUAN TANG'S MOTION TO MODIFY**

**CONDITIONS OF PRETRIAL RELEASE**

Dr. Juan Tang, by and through undersigned counsel, respectfully requests that this Court modify conditions of her pretrial release, based on changed circumstances.  Recent events have created significant concerns for the personal safety of the Third-Party Custodian (hereafter also "Custodian") and uninvolved family members and guests in his household.  The defendant therefore requests that she be permitted to reside in a leased apartment in close proximity to the Custodian's home while remaining subject to his ongoing, continuous supervision. The Custodian continues to be willing to offer the $750,000 equity in his own home as security for the defendant's release and agrees to continue to continuously monitor her while all other conditions, including electronic monitoring, remain in place.

The changed circumstances have arisen since the time of the Defendant's prior release order, and are related to an ever-increasing concern for the safety of the Third-Party Custodian's home and family, and for the safety of the defendant, as a result of well-reported heightened political and public tension between the United States and China over the prosecution and detention of a number of Chinese scientists in the United States, and the discussion of aggressive threats in the press about the Chinese government taking counter hostages.  In addition, threats have been made by individuals on social media which forebode possible physical harm to those involved in the defense of the case.

This request is based on the record in this case, the fact that Dr. Tang has remained fully cooperative and totally compliant, the lack of any changed or amended charges, the current applicable sentencing guidelines, and the nature of the evidence in this case.  The proposed revised conditions are clearly sufficient to safeguard her continued appearance in this case.  18 USC §3142(c)(3).

## I.    Introduction and Factual Background

Dr. Juan Tang is an accomplished academic and cancer researcher with a PhD in Cellular Biology.  She is a wife and a mother to a young child.  She is a Chinese citizen, who arrived in California in December 2019 with plans to work in a grant program at the University of California, Davis ("UC Davis"), participating in a cancer research program.  Pretrial Services has been able to confirm that her family members in China continue to support her and her defense in this case.

## II.    Procedural Background

The defendant was initially charged in a sealed Complaint filed June 26, 2020, charging an alleged violation of 18 USC 1546(a), involving fraud or misuse of a visa document.  DKT #1; DKT #4.  Following her July 23, 2020 arrest, she was arraigned on July 27, 2020; and ordered detained without prejudice and pending continued detention proceedings.  DKT #6.  On August 6, 2020, an Indictment was returned charging visa fraud and false statements to the investigating agents, based on the same allegedly false information in the visa application, and including a forfeiture allegation.  DKT #18.  A guideline analysis based on the known facts and present charges indicates a likely guideline sentence ranging between probation and eight months if the defendant is convicted, with credit to be applied for the lengthy period during which she was detained in the Sacramento County Jail.  USSG §2L2.1.

Following a renewed motion for release based on the availability of a qualified Third-Party Custodian, who had no prior connection to the defendant and none to the case, and the Custodian's expressed willingness to post a bond secured by his own home, the defendant was ordered released.  The government sought a stay and revocation in the District Court.  Both were denied.  Upon the posting and proof of recording of the security for the $750,000 bond, the defendant was released on September 10, 2020.  Since that time, Dr. Tang has been fully cooperative with Pretrial Services, the Custodian, her attorneys, and

Defendant Juan Tang's Motion to Modify Conditions of Pretrial Release

the Court's orders.  She remained quarantined for the required period and after

testing was completed, she was confirmed as negative for the Covid-19 virus.

She has maintained all ordered contact with Pretrial Services and is in regular

contact with her attorneys and actively engaged in assisting in her defense.

### III.   Heightened Political Tension Between the Government of China and the United States, and Threats on Public Media, Have Created a Safety Risk Unless the Conditions of Release are Modified.

This case has received considerable media attention in part because

several cases like it have been filed around the country.  Even though the cases

have not been connected by an allegation of conspiracy, the government has

taken the position in all cases that the defendants should be detained.  And, in

response to an entirely separate matter, the United States has ordered the

closure of the Chinese government Consulate in Houston, Texas, and directed its

consular officers to leave the United States.

There has been a steady interest in this case in the local and national press

in the United States, in part because of the defendant's detention. A photograph,

claiming to be her likeness, has been widely published.  There has also been a

stream of negative press in the Chinese language media, often very hostile

toward Dr. Tang, and toward the Third-Party Custodian during and after his

appointment.  Those public attacks have been not only persistent but are

increasingly unsettling.  False accusations have been made that the Third-Party

Custodian, by stepping forward to assist the defendant, is working with or for the

Chinese government.  While those claims are not true, the attention and

accusations have been unrelenting.  Upon Dr. Tang's initial release, their content

was sufficiently aggressive that it was necessary to notify local law enforcement

of the situation, as a precaution against the potential for personal attacks against

her or against the Third-Party Custodian at home.  See Exh. 1 (Declaration.)

While earlier stories in the news discussed various trade and political

disputes between China and the United States, news stories this week in the *Wall*

Defendant Juan Tang's Motion to Modify Conditions of Pretrial Release

*Street Journal* and the *New York Times* raised a new claim and one which has intensified the attention on this case and heightened the risk.  These nationally read  newspapers, and their online content, carried prominent stories reporting threats by the Chinese government to take American scientists as effective hostages in order to gain the return of its scientists who are being prosecuted or detained in the United States. The *Wall Street Journal* story singled out and referred directly to Dr. Tang as one case which has given rise to those threats, causing her counsel to have to affirmatively state that the defense has no connection to the Chinese government.  See Exh. 2 (*Wall Street Journal* Story) and Exh. 3 (*New York Times* Story).   No one can reasonably dispute the fact that an assertion in such prominent newspapers to the effect that the Chinese government is willing to take American citizens as hostages for Dr. Tang's return, even though apparently denied by those authorities, will increase animosity to her by various individuals and create a risk to her safety and that of others associated with the defense.

Similarly, recent Chinese language social media posts discussing the case have contained explicitly violent threats.  A copy of a few of those threats, together with translations, have been provided to the Court under seal in order to minimize the opportunity for third parties to repost or otherwise recirculate them. See Exh. 4 (media posts/SEALED)

As a result of these stories and attacks, there is a significant concern for the safety of people residing in the Third-Party Custodian's home, including the visitors to his home who have no connection to the case, while the defendant resides there.  In light of Dr. Tang's fully compliant performance under release supervision, and given the personal concerns for the Custodian's wellbeing and that of Dr. Tang, the defendant moves the Court for a modification of her release terms, to permit her to reside in an apartment close to the Third-Party Custodian. A suitable apartment has already been found and is available for inspection by

Pretrial Services.  The close proximity of the apartment will assure that the Third-Party Custodian can easily continue to supervise the defendant and ensure her ongoing compliance.  The Third-Party Custodian would be able to conduct regular check-ins, document those contacts, and perform any other supervisory responsibilities required by the Court.

All other conditions would remain in place, including the property bond and electronic monitoring.  Because Dr. Tang is clearly committed to maintaining full compliance, the proposed modification constitutes the least restrictive combination of conditions that will reasonably assure future appearances.  18 USC §3142(c)(1)(B).

## IV.   Consideration of the Statutory Factors Weigh in Favor of the Requested Modified Conditions.

In determining pretrial detention and release matters, the Court considers whether "any condition or combination of conditions…will reasonably assure the appearance of the person" and will assure safety to the community.  18 USC §3142(f).  Potential conditions are myriad, but expressly include an order that a person "remain in the custody of a designated person, who agrees to assume supervision" of the person; that a person "abide by specified restrictions on personal associations, place of abode, or travel" beyond that necessary to make appearances; that a person "report on a regular basis" to law enforcement; or that a person "comply with a specified curfew."  18 USC §3142(c)(1)(B).

Any release order must be on "the least restrictive" conditions necessary to assure future appearance.  18 USC §3142(c)(1)(B).  Under the pretrial release statute, "in determining whether there are conditions of release that will reasonably assure the appearance of the person," the salient factors to be considered include: the nature of the offense; the weight of the evidence; the history and characteristics of the person, and any danger involved in the person's release.  18 USC §3142(g).

In the instant case, the Court previously determined that there are sufficient conditions to ensure Dr. Tang's appearance.  Since her release, Dr. Tang has been cooperative and compliant with all restrictions and instructions from the Court and Pretrial Services.  She has been nothing short of exemplary in meeting her obligations, as indicated by the Third-Party Custodian.  Exh. 1 (Declaration). The significant change in circumstances is not due to the Defendant's conduct, but rather was created by public and political events wholly outside Dr. Tang's or the Third-Party Custodian's control.

A.    **The Proposed Modified Conditions Are Sufficient to Assure Future Appearance.**

The proposed modified conditions will permit Dr. Tang to reside in a leased apartment that has already been selected and is in close proximity to the Third-Party Custodian's residence.  Exh. 1 (Declaration.)  The Custodian, a well-respected member of the legal and business communities in California, will remain responsible for Dr. Tang's supervision and will continue to undertake the serious duty of immediately reporting any deviations from the conditions of release to the Court and Pre-Trial Services.  Equally significant, the Custodian remains amenable to the continued posting of his own home as collateral for the substantial release bond, and will continue to be available to provide important assistance to Pre-Trial Services with its monitoring and visits, and to facilitate communication with defense counsel.

Given the extent of the remaining conditions, including electronic monitoring, and considering the continuing active role of the Third-Party Custodian, the modified conditions will continue to meet the statutory requirement of the least restrictive means sufficient to ensure appearance.  A defendant residing within proximity to a committed Third-Party Custodian is wholly consistent with the nature of pretrial release considerations and applicable law.

Defendant Juan Tang's Motion to Modify Conditions of Pretrial Release

1    Like the Bail Reform Act's statutory provisions, the Federal Rules of

2    Criminal Procedure contemplate release orders that impose a variety of

3    conditions and restrictions, including the release of a defendant to a Third-Party

4    Custodian's supervision, but not necessarily into the Custodian's full-time physical

5    custody.  The Advisory Committee Notes to the 1966 amendments to Rule 46 of

6    the Federal Rules of Criminal Procedure discuss the fact that an appropriate

7    Third-Party Custodian relationship can take different forms.  The Committee

8    Notes indicate that traditionally, "such conditions…'might include release in

9    custody of a third party, such as the accused's employer, minister, attorney, or a

10   private organization.'"  F.R. Crim. Pro., Rule 46 [Committee Notes re 1966

11   revisions to Subdivision (d).]

12        The Criminal Justice Section of the American Bar Association publishes

13   written standards regarding pretrial release.  As to the use of Third-Party

14   Custodians, the ABA standards note that a potential condition imposed by the

15   courts is to "release the defendant into the custody or care of some other qualified

16   organization or person responsible for supervising the defendant and assisting

17   the defendant in making all court appearances."  However, the ABA standards do

18   not indicate that such a custodial arrangement requires physical custody.  Rather,

19   "[s]uch supervisor should be expected to maintain close contact with the

20   defendant, to assist the defendant in making arrangements to appear in court,

21   and, when appropriate, accompany the defendant to court."  ABA Criminal Justice

22   Standards, Standard 10-5.2., 3rd Ed. (2007).

23        In *United States v. Bronson*, the defendant was an apprentice in the Navy

24   when he was charged with robbery.  *United States v. Bronson*, 433 F.2d 537

25   (D.C. Cir. 1970).  While release on personal recognizance was not permitted, the

26   court recognized the Bail Reform Act's "recognition of the need for flexible and

27   individualized conditions."  *Id*. at 539.  In that case, the defendant, a military

28

Defendant Juan Tang's Motion to Modify Conditions of Pretrial Release

service member without significant community ties, was ordered released on the condition that his unit commander serve as a custodian.  *Id*. at 540.

There is nothing in the Bail Reform Act, in the Federal Rules, or stated in the case law to suggest a Third-Party Custodian must or should remain in the constant physical presence of the defendant.  To the contrary, the process of pretrial release is based on the "need for flexible and individualized conditions" that meet the same statutory goals in a wide variety of factual circumstances.  *Id*. at 539.

### B.      The Remaining Statutory Factors Weigh in Favor of the Proposed Modification.

Dr. Tang is a 37-year-old scientist and researcher.  While they cannot be physically present, Dr. Tang's family actively supports her, and supports her efforts in defending herself against the charges she faces.  She has a professional career, has successfully published her scientific research, and enjoys an excellent professional reputation.  There is no indication she has ever been accused of any offense, and she has been entirely cooperative with authorities; it would be contrary to her established character for her to fail to maintain compliance with all pretrial supervision orders.

There is no suggestion that Dr. Tang is a threat to anyone's personal safety.  She has a stable background of education, academic work, and family. The offense alleged is one involving her answers to written questions on a visa application.  Her answer on the visa application, and her subsequent restatement of the same information, forms the entire substance of this case.  In the many weeks since her release, there has been no addition or increase to the charges, and the evidence in favor of the prosecution theory is strongly disputed because it appears to be based largely on an unverified and nebulous interpretation of photographs and insignia discussed in unofficial, non-government and online publications.  But even were there to be a conviction, the potential punishment

Defendant Juan Tang's Motion to Modify Conditions of Pretrial Release

1  under the sentencing guidelines includes a sentence in the least severe

2  sentencing category possible under the guidelines, a portion of which Dr. Tang

3  would be credited with for the considerable time spent in detention in the

4  Sacramento County Jail.  Thus, Dr. Tang continues to have every reason to

5  appear in furtherance of her defense.

6                          **V.    Conclusion**

7          The defendant and the Third-Party Custodian have demonstrated the

8  desire, ability, and intention to ensure the defendant's compliance and

9  appearance.  Changed circumstances outside the control of either Dr. Tang or the

10 Third-Party Custodian have raised additional concerns regarding personal

11 physical safety, security, and well-being.  This modification to the release

12 conditions will permit Dr. Tang to live separately from, but remain in close contact

13 with and under the supervision of, the Third-Party Custodian, while also easing

14 some of the fear and pressure facing the Custodian regarding the safety and

15 security of those who are present at his residence.  The proposed modification,

16 together with the conditions set by the Court, constitutes the least restrictive

17 combination of conditions that will reasonably assure future appearance.  18 USC

18 §3142(c)(1)(B).

19 Dated: October 23, 2020          **SEGAL & ASSOCIATES, PC**

20

21                                 By:   /s/ Malcolm Segal_____

22                                       MALCOLM SEGAL
                                         EMILY E. DORINGER
23                                       Counsel for Defendant

24                                 **LAW OFFICE of THOMAS A. JOHNSON**

25

26                                 By:   /s/ Thomas A. Johnson_____
                                         THOMAS A. JOHNSON
27                                       Counsel for Defendant

28

-11-

Defendant Juan Tang's Motion to Modify Conditions of Pretrial Release

REQUESTING SEAL

# EXHIBIT 1

# EXHIBIT 2

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit https://www.djreprints.com.

https://www.wsj.com/articles/china-warns-u-s-it-may-detain-americans-in-response-to-prosecutions-of-chinese-scholars-11602960959

◆ WSJ NEWS EXCLUSIVE | POLITICS

# China Warns U.S. It May Detain Americans in Response to Prosecutions of Chinese Scholars

Blunt message suggests U.S. nationals in China at risk of becoming 'hostages' in Chinese diplomatic tactic



A Chinese security guard outside the U.S. Embassy in Beijing in September.

PHOTO: GREG BAKER/AGENCE FRANCE-PRESSE/GETTY IMAGES

*By [Kate O'Keeffe](#) and [Aruna Viswanatha](#)*
Updated Oct. 17, 2020 3:37 pm ET



**Listen to this article**
7 minutes

Chinese government officials are warning their American counterparts they may detain U.S. nationals in China in response to the Justice Department's prosecution of Chinese military-affiliated scholars, according to people familiar with the matter.

The Chinese officials have issued the warnings to U.S. government representatives

repeatedly and through multiple channels, the people said, including through the U.S. Embassy in Beijing.

The Chinese message, the people said, has been blunt: The U.S. should drop prosecutions of the Chinese scholars in American courts, or Americans in China might find themselves in violation of Chinese law.

China started issuing the warning this summer after the U.S. began arresting a series of Chinese scientists, who were visiting American universities to conduct research, and charged them with concealing from U.S. immigration authorities their active duty statuses with the People's Liberation Army, the people said.

The arrests were the subject of a Wall Street Journal article that also reported U.S. allegations that Chinese diplomats were coordinating activities with the researchers, and described that as a factor in ordering China to close its Houston consulate in July and remove the remaining military scientists from the country.

Chinese authorities have on occasion detained foreign nationals in moves seen by their governments as baseless, or in some instances as diplomatic retaliation, a tactic that many in Washington policy circles have referred to as "hostage diplomacy." China has denied U.S. citizens permission to exit from the country, and arrested, charged or sentenced Canadian, Australian and Swedish citizens on what officials from those governments have said are bogus allegations.

SCHOLARS IN THE SPOTLIGHT

- U.S. Probes of Chinese Researchers Draw More Organized Opposition (Oct. 1)

- Chinese Diplomats Helped Military Scholars Visiting the U.S. Evade FBI Scrutiny, U.S. Says (Aug. 25)

- Report Sheds Light on China's Use of Military-Linked Researchers (July 30)

A State Department spokesman declined to address China's alleged threats to retaliate for the U.S. arrests of Chinese military scholars, saying: "We warn U.S. citizens that business disputes, court orders to pay a settlement, or government investigations into both criminal and civil issues may result in an exit ban which will prohibit your departure from China until the issue is resolved."

In a September travel advisory, the department recommended Americans avoid

China travel for a number of reasons, including a warning that the Chinese government detains other countries' citizens "to gain bargaining leverage over foreign governments."

John Demers, head of the Justice Department's national security division, said: "We are aware that the Chinese government has, in other instances, detained American, Canadian and other individuals without legal basis to retaliate against lawful prosecutions and to exert pressure on their governments, with a callous disregard of the individuals involved."

Mr. Demers declined to comment on the specifics of the alleged Chinese threats made in conjunction with the U.S. cases against the Chinese researchers but added: "If China wants to be seen as one of the world's leading nations, it should respect the rule of law and stop taking hostages."

Neither the Chinese Embassy in Washington nor China's Ministry of Foreign Affairs responded to requests for comment. Beijing objects to the use of the term "hostage diplomacy" by U.S., Canadian and other officials and says it is only implementing its laws and acting to protect national security.

Chinese prosecutors in June indicted two Canadian citizens on espionage charges, advancing a pair of cases widely seen as retribution for Canada's arrest of a prominent Chinese executive at Huawei Technologies Co. in conjunction with a U.S. extradition request.

Canadian Prime Minister Justin Trudeau has publicly criticized the arrests. On Thursday, China's ambassador to Canada hit back at Mr. Trudeau at a media event marking the 50th anniversary of diplomatic relations between the two countries.

Ambassador Cong Peiwu warned Canada to stop granting asylum to democracy activists from the Chinese territory of Hong Kong, saying Canada should support Beijing's implementation of a new national security law that many Western countries condemn as draconian, if it is concerned about the "health and safety" of 300,000 Canadians who live in the former British colony, according to a recording of the event the embassy posted online.

Asked by a journalist if he was issuing a threat, Mr. Cong replied: "That is your interpretation."

The U.S. has affixed tariffs on Chinese imports, restricted Chinese corporations over national security concerns, and sought to counter Beijing's military buildup in the South China Sea. But former U.S. national security officials say the Justice Department's cases against the military-affiliated researchers, who were arrested as they had prepared to leave the country, represented a major, public embarrassment for China in a way that other U.S. actions targeting China haven't.



Staff from the Chinese consulate in Houston arrived in Beijing on Aug. 17 after the U.S. ordered the consulate closed.
**PHOTO:** YUE YUEWEI/XINHUA/ZUMA PRESS

"Historically, these dust-ups were resolved behind closed doors to contain the diplomatic fallout and allow China to save face," said Craig Singleton, a former U.S. national security official who is now a fellow at the Foundation for Defense of Democracies, a research institute advocating for the defense of democratic countries.

"DOJ's recent moves represent a full-on assault of one of China's most revered institutions, the PLA," Mr. Singleton said. "It's a real game-changer that could carry significant risk for both sides."

China began conveying the warnings after one of the Chinese military-affiliated scientists took up residence in China's San Francisco consulate for a month after

being questioned by the Federal Bureau of Investigation in June, according to one of the people familiar with the matter. Chinese officials told their U.S. counterparts they would detain an American in China if the U.S. didn't allow the researcher, Tang Juan, to leave the consulate and return to China.

U.S. officials say they expected China to make good on the threat, but it didn't, and the FBI arrested Ms. Tang in July when she left the consulate grounds.

A lawyer for Ms. Tang, who is out on bail after pleading not guilty to visa fraud charges, said in a statement that his "inquiries reveal nothing even remotely similar to any assertion that the Chinese government sought to interfere in Dr. Tang's case."

The lawyer, Malcolm Segal, added: "The Chinese government has played no role whatsoever in the case itself or in her defense, nor do I ever expect them to do so."

In addition to Ms. Tang, four other researchers recently accused of hiding their ties to the Chinese military have pleaded not guilty to similar charges. Two are scheduled to face trial next month.

*—Kim Mackrael contributed to this article.*

**Write to** Kate O'Keeffe at kathryn.okeeffe@wsj.com and Aruna Viswanatha at Aruna.Viswanatha@wsj.com

**Corrections & Amplifications**
The Foundation for Defense of Democracies is a research institute advocating for the defense of democratic countries. An earlier version of this article characterized the institute as conservative, which the foundation disputes. (Corrected on Oct. 18)

*Appeared in the October 19, 2020, print edition as 'China Warns It May Arrest Americans.'*

Copyright © 2020 Dow Jones & Company, Inc. All Rights Reserved

This copy is for your personal, non-commercial use only. To order presentation-ready copies for distribution to your colleagues, clients or customers visit https://www.djreprints.com.

# EXHIBIT 3

# *China Threatens to Detain Americans if U.S. Prosecutes Chinese Scholars*

American officials said China had insisted that the Justice Department not proceed with cases against the arrested scholars, who are in the Chinese military and face charges of visa fraud.

 **By Edward Wong**

Oct. 18, 2020

WASHINGTON — Chinese officials have told the Trump administration that security officers in China might detain American citizens if the Justice Department proceeds with prosecutions of arrested scholars who are members of the Chinese military, American officials said.

The Chinese officials conveyed the messages starting this summer, when the Justice Department intensified efforts to arrest and charge the scholars, mainly with providing false information on their visa applications, the American officials said. U.S. law enforcement officials say at least five Chinese scholars who have been arrested in recent months did not disclose their military affiliations on visa applications and might have been trying to conduct industrial espionage in research centers.

American officials said they thought the Chinese officials were serious about the threats. The State Department has reiterated travel warnings as a result, they said. Western officials and human rights advocates have said for years that the Chinese police and other security agencies engage in arbitrary detentions.

The threats are another striking escalation in tensions between the United States and China, which have been rising for years and have surged sharply since the coronavirus pandemic began in central China last winter.

But some analysts in Washington and Beijing say the Chinese government is trying to avoid any serious provocations against the United States before the elections in November. And some Chinese officials are aiming to cool the temperature of U.S.-China relations, whether President Trump wins another term or Joseph R. Biden Jr., the Democratic challenger and former vice president, takes over in the White House.

A Chinese Foreign Ministry spokesman, Zhao Lijian, accused the United States on Monday of "outright political repression" of Chinese scholars when asked at a news conference in Beijing about reports of detention threats made by Chinese officials.

"The U.S. claim that foreign nationals in China are under threat of arbitrary detention is playing the victim and confusing black and white," he said.

A Justice Department spokesman declined to comment on whether Chinese officials had delivered warnings about plans to detain American citizens to retaliate for prosecutions of Chinese scholars. The threats were reported earlier by The Wall Street Journal.

"We are aware that the Chinese government has, in other instances, detained American, Canadian and other individuals without legal basis to retaliate against lawful prosecutions and to exert pressure on their governments, with a callous disregard of the individuals involved," John C. Demers, the head of the Justice Department's national security division, said in a statement. "If China wants to be seen as one of the world's leading nations, it should respect the rule of law and stop taking hostages."

On Sunday, Hu Xijin, the chief editor of Global Times, a nationalistic newspaper linked to the Chinese Communist Party, wrote on Twitter that the detentions in the United States of Chinese scholars on spying charges were "not good" for the "safety of some US nationals in China."

"Does Washington need to be warned?" he wrote. "It's common sense. In my view, hegemony has turned some US elites stupid, or they're pretending to be stupid."

In recent years, the Justice Department has scrutinized the work of Chinese researchers at American universities and other scientific institutions. U.S. officials have also criticized programs run by the Chinese government to recruit scientific and technical experts. Mr. Demers and other U.S. officials have long said that Beijing uses a wide range of tools to gather intelligence at American research centers.

The Trump administration announced in late May that it was barring Chinese students at the graduate level or higher who had ties to some military institutions from entering the United States.

In late July, the State Department ordered China to close its consulate in Houston, saying it was a center of research theft in the United States. Justice Department officials said that Chinese officials in other missions also took part in industrial and scientific espionage, and that the closure was meant to deter Beijing from continuing the actions. At that time, the U.S. authorities were also seeking to arrest a Chinese student or researcher, Tang Juan, who had gone into hiding in the San Francisco consulate after being questioned by the F.B.I.

The F.B.I. arrested Ms. Tang on July 23 and accused her of hiding her military affiliation. She has pleaded not guilty to charges of visa fraud and making false statements.

The Chinese government has denied accusations that members of its military are in the United States for scientific and industrial espionage.

State Department representatives declined to discuss any recent threats of detentions of Americans made by Chinese officials. But for months, department officials have been stressing harsh actions taken by Chinese security agencies against Americans. On Sept. 14, the department updated travel advisories for mainland China and Hong Kong, saying that Americans should "reconsider travel" because of Covid-19 and risk arising from "arbitrary enforcement of local laws."

In June, Chinese officials charged two Canadians — Michael Kovrig, a former diplomat, and Michael Spavor, a businessman — with espionage. Security officers had detained the two men 18 months earlier. Canadian and American officials widely believe the men are being held because of a Justice Department case against Meng Wanzhou, a top executive of the Chinese technology company Huawei, who was arrested in Canada in December 2018 and might be extradited to the United States.

Last year, Chinese security officers prevented a Koch Industries executive from leaving China for some days. And in a hotel lobby in Beijing, officers tried to take a former U.S. diplomat away for questioning. He was in China to attend a forum on artificial intelligence that he had helped organize. The American Embassy in Beijing intervened, and the Chinese officers backed off.

The State Department has also denounced the practice by Chinese officials of "exit bans," or refusing to allow foreign citizens to leave the country, often as a means of coercion in legal or business disputes.

Katie Benner and Eric Schmitt contributed reporting.

REQUESTING SEAL

# EXHIBIT 4