McGREGOR W. SCOTT
United States Attorney
HEIKO P. COPPOLA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  2:20-CR-00134 JAM |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO MODIFY CONDITIONS OF PRETRIAL RELEASE |
| v. | |
| TANG JUAN (a.k.a. Juan Tang), | DATE: November 6, 2020 TIME: 2:00 p.m. |
| Defendant. | COURT: Hon. Kendall J. Newman |

## I.      INTRODUCTION

On October 23, 2020, defendant Tang Juan (hereinafter "Tang") filed a motion to modify her conditions of release.  ECF 72.  Citing heightened political tension between the United States and China and alleged threats in the public media, Tang asserts that serious personal safety concerns now exist and requests that she be allowed to move from the third party custodian's residence into a nearby apartment, with the remaining conditions of release remaining in effect.  Because the proposed modification only increases Tang's risk of flight while doing little to address the claimed safety concerns, the United States opposes her motion and the Court should deny it.

## II.      FACTUAL AND PROCEDURAL HISTORY

The Court is aware of the factual history surrounding this matter from the government's prior pleadings related to release, which the United States incorporates herein by reference.

This Court issued a sealed criminal complaint and arrest warrant in the above-entitled case on

June 26, 2020 alleging visa fraud in violation of 18 U.S.C. § 1546.  ECF 1.  Tang was arrested pursuant to the complaint on July 23, 2020.  Tang was ordered detained as a flight risk during her first appearance before the Court on July 27, 2020.  ECF 6.  The Court heard and denied Tang's first motion for bail review on July 31, 2020.  ECF 15.  A grand jury returned a two-count indictment charging Tang with visa fraud and making false statements to the FBI in violation of 18 U.S.C. §§ 1001 and 1546 on August 6, 2020. ECF 18.

On August 24, 2020, Tang filed a second motion for bail review alleging a change in circumstances.  ECF 27.  The Magistrate Judge heard Tang's second motion for bail review on August 27 and 28, 2020.  ECF 34, 37.  Over the government's objection, the Magistrate Judge ordered Tang released to the third party custodian upon the posting of a $750,000 property bond secured by the equity in the third party custodian's primary residence and other conditions including, among other things: electronic home monitoring at the third party custodian's residence, various travel restrictions, a twenty-four hour curfew, and only telephonic or video contact with officials of the PRC in the presence of defense counsel.  ECF 37.  The United States' motions for a stay of and for the revocation of the Magistrate Judge's release order were denied by the District Court. ECF 51, 67.

On October 23, 2020, Tang filed a motion to modify the conditions of release and contemporaneously served notice of a request to seal documents in support of her motion.  ECF 71, 72. Claiming that heightened tensions between the U.S. and China, as well as that alleged threats in the public media have created personal safety concerns for the third party custodian, his family, and herself, Tang requests that she be allowed to move from the third party custodian's residence into a nearby apartment.  Tang proposes that all of the remaining conditions of release remain in effect, including the third party custodian and his wife remaining as sureties.

### III.   ARGUMENT

#### A.   Law

Under the Bail Reform Act, the Court may "at any time amend the [release] order to impose additional or different conditions of release."  18 U.S.C. § 3142(c)(3).  While the Bail Reform Act typically requires that the least restrictive conditions or combination thereof be imposed, it nevertheless provides a lengthy list of potential conditions for the Court's consideration.  18 U.S.C. § 3142(c)(1)(B).

The first of those conditions is release to a third party custodian.  18 U.S.C. § 3142(c)(1)(B)(i).

The decision whether to detain a defendant as a flight risk pending trial is made by a preponderance of the evidence. <u>United States v. Motamedi</u>, 767 F.2d 1403, 1407 (9th Cir. 1985).  The government bears the burden of proving risk of flight. <u>United States v. Gebro</u>, 948 F.2d 1118, 1121 (9th Cir. 1991).  Factors to be considered by the Court include: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) danger to the community. 18 U.S.C. § 3142(g).

### B.    <u>Media attention and alleged threats</u>

Tang was released to the third party custodian on or about September 10, 2020.  It is not surprising that Tang's case has generated significant attention in American and Chinese-language media.  Nor is it surprising, given the nature of the allegations, that people use social media to express opinions about Tang, her alleged conduct, and the fact that she remains out of custody pursuant to the Court's release order.  Additionally, in light of the third party custodian's voluntary insertion of himself in this matter, irrespective of his intentions, it is also not surprising that the media and, by extension the public, is interested in his role as the third party custodian.

Moreover, during the August 27-28 hearings, the Court engaged in an extensive colloquy with the third party custodian to ensure that he understood the duties and responsibilities involved.  The third party custodian assured the Court that he was willing to accept the responsibility and to have Tang reside in his family residence.  The third party custodian was also aware that his name and the city where he lived would also become matters of public record and that there could be media attention in the case.

While it is unfortunate that the political situation between the U.S. and China is tense and that the third party custodian now feels threatened, neither of these factors necessitate the modification of release suggested by Tang.  The decline in U.S. – Chinese diplomatic relations is not a new development.  Relations with China have been tense for many years with resulting actions and reactions.  That various American media outlets have cited this case, among others, in discussing these tensions is not surprising.  As the Court will recall, Tang was not the only Chinese scholar charged with visa fraud and/or lying to the FBI between June 2020 and August 2020.  Tang's suggestion that only further

animosity against her and/or the third party custodian will ensue based on the *Wall Street Journal* article or other media attention is speculative.

Furthermore, while the language contained within the Exhibit Four's Chinese social media posts is troubling, there is nothing to suggest that there is any imminent threat to Tang, the third party custodian, or anyone associated with the defense team. In fact, all of the posts are dated nearly a month ago. Despite Tang's claims that these posts are pervasive, beyond an initial contact with law enforcement at the time of Tang's release, entirely missing from the pleadings in this case is any suggestion that Tang or the third party custodian have reported these allegedly continuing events to law enforcement. Curiously, beyond the small sample of social media posts found in Exhibit Four, Tang provides no additional concrete examples of threats against the third party custodian, his family, or herself.

Importantly, Tang's request to live in a separate residence a short distance away from the third party custodian, if granted, will not solve the continuing media attention or public interest in this case. Until Tang's case is finally resolved, given the diplomatic tensions between China and the U.S., the media will continue to report on events that it sees as inter-related and members of the public may continue to express opinions in social media. As the Court knows, Tang is not the only alleged member of the Chinese military that is charged in federal court. Nor will Tang living in a separate residence necessarily ameliorate the allegedly threatening on-line behavior toward the third party custodian, especially considering that his stated intention is to remain as the surety. To suggest otherwise is wholly speculative.

C.    <u>Ending third party custodianship increases Tang's flight risk</u>

From the outset, the government has maintained that Tang is a flight risk under 18 U.S.C. § 3142(e)(1) and that the Court's unusual release order was insufficient to mitigate that risk. It bears repeating that she has no ties to the United States and could leave the United States at any time without sacrificing anything even under the Court's current release order. Tang's entire family is now in China and she has no significant relationship with any person in the United States. She has no job and is no longer researching/working at UC Davis. Tang's flight to and approximately thirty-day residential stay at the Chinese Consulate in San Francisco following her contact with the FBI is not indicative of

1   innocent behavior.  Moreover, that the Chinese Consulate stood ready to help Tang in her attempt to

2   avoid prosecution by the United States cannot be ignored.  That Tang may not face a significant prison

3   sentence for her conduct does not lessen the seriousness of the offense, nor does it make her any less of

4   a flight risk.

5          Notwithstanding his pledge to remain as the surety and to continue supervising the defendant,

6   allowing Tang to reside outside the third party custodian's residence is tantamount to ending the

7   custodianship, and the overall tone of Exhibit One strongly suggests that the third party custodian wants

8   to be relieved of these duties altogether.  However, implicit in the Court's reasoning when it granted

9   release over the government's objection was the notion that by residing in his home with his family,

10  Tang would essentially be supervised by the third party custodian on a continuous basis.

11         Without this condition, Tang would be unsupervised for the most of the day except for those

12  brief periods when the third party custodian would check in on her.  Without supervision, Tang's ability

13  to flee would be greatly increased.  Nothing prevents Tang from leaving the apartment during these

14  unmonitored periods despite the Court's twenty-four hour curfew order.  Electronic monitoring is not a

15  panacea.  As the Magistrate Judge noted during the August 27, 2020 hearing, "our electronic

16  monitoring, by the way, is not as good as you'd like to see in the movies, and it's not as if she steps out

17  your front door and alarms go off and officers are there in thirty seconds." August 27, 2020 transcript at

18  15; ECF 39.  Pretrial services would have even less of an opportunity to respond without the third party

19  custodian's supervision, and the proposed apartment is located outside the Eastern District of California.

20  Moreover, the Court would not have any assurance that Tang was actually complying with its other

21  conditions of release, namely not making contact with Chinese authorities outside the presence of

22  defense counsel.

23         That, according to the third party custodian, Tang has followed all of the Court's instructions and

24  been a respectful houseguest while residing with the third party custodian is not remarkable.  She has

25  little choice but to comply or face being returned to the Sacramento County Jail.  To that extent, Tang's

26  compliance in the very short time since her release is of dubious value in assessing her future

27  compliance should she be allowed to reside on her own.

28         Tang asserts, citing the 1966 Advisory Committee Notes to amendments of Federal Rule of

Criminal Procedure 46 and the ABA standards regarding release in criminal cases, that third party custodianship necessarily can take various forms and is not limited to the full-time custodianship that was ordered in this case.  Unfortunately for Tang, neither of these sources provides sufficient precedential authority for her proposed amendment of release conditions, and they are inherently distinguishable.  The Advisory Committee Notes' examples include release to a defendant's attorney, minister, or employer.  Interestingly, these individuals are implicitly expected to have some type of significant personal relationship with a defendant.  As this Court knows, such is not the case here.  The third party custodian and his wife had not met the defendant prior to the August 27-28, 2020 hearing.  Likewise, even the ABA standards cited by Tang, although not absolutely requiring physical custody, suggest that a custodian maintain close contact in order to adequately supervise a defendant.  In contrast, the clear language of 18 U.S.C. § 3142(c)(1)(B)(i) provides that the Court may order that a defendant "remain in the custody of a designated person, who agrees to assume supervision and to report any violation of a release condition to the court…"  Given the unique circumstances in this case, having the third party custodian periodically checking in on Tang while she resides in her own apartment is simply not custody and is insufficient to mitigate her risk of flight.

Tang also cites United States v. Bronson, 433 F.2d 537 (D.C. Cir. 1970) in support of her assertion that third party custodianship need not amount to physical custody.  Bronson is distinguishable.  Although the defendant's commanding officer was named as the third party custodian in Bronson, the defendant was also ordered to continue his "residence" with his assigned military unit.  Id. at 540.  Presumably, this condition referred to the defendant living in a barracks with other members of his unit and continuing to work at Anacostia Naval Base under the supervision of his commander.  This is certainly much closer to physical third party custodianship than what is now being suggested by Tang.

## IV.    CONCLUSION

For all of the above reasons, the Court should deny Tang's request to modify the conditions of release.  Tang remains a flight risk even under the Court's current release order.  Modification of the release conditions will not have the desired effect of protecting the third party custodian from continued media attention and alleged on-line threats.  The proposed modification only increases Tang's ability to

flee the United States if she so chooses.


Dated:  October 30, 2020                                McGREGOR W. SCOTT
                                                        United States Attorney


                                              By:   /s/ HEIKO P. COPPOLA
                                                    HEIKO P. COPPOLA
                                                    Assistant United States Attorney