McGREGOR W. SCOTT
United States Attorney
HEIKO P. COPPOLA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>    v.<br><br>TANG JUAN (a.k.a. Juan Tang),<br><br>      Defendant. | CASE NO.  2:20-CR-00134 JAM<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S APPEAL FOR REVIEW OF ORDER DENYING MOTION TO MODIFY PRETRIAL RELEASE CONDITIONS<br><br>DATE: November 20, 2020<br>TIME: 9:15 a.m.<br>COURT: Hon. John A. Mendez |

## I.  **INTRODUCTION**

On November 10, 2020, pursuant to 18 U.S.C. § 3145(c), defendant Tang Juan (hereinafter "Tang") filed an appeal for review of the Magistrate Judge's order denying her motion to modify pretrial release conditions.  ECF 91.  Citing alleged threats in the public media, Tang now challenges the Magistrate Judge's considered denial of her motion, asserting that serious personal safety concerns exist and requesting that this Court allow her to move from the third party custodian's residence into a nearby apartment, with the remaining conditions of release remaining in effect.  Because the proposed modification only increases Tang's risk of flight while doing little to address the claimed safety concerns, the United States opposes her appeal and this Court should deny it.

## II.  **FACTUAL AND PROCEDURAL HISTORY**

The Court is aware of the factual history surrounding this matter from the government's prior pleadings related to release, which the United States incorporates herein by reference.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
APPEAL

1

1    The Court issued a sealed criminal complaint and arrest warrant in the above-entitled case on

2  June 26, 2020 alleging visa fraud in violation of 18 U.S.C. § 1546.  ECF 1.  Tang was arrested pursuant

3  to the complaint on July 23, 2020.  Tang was ordered detained as a flight risk during her first appearance

4  before the Court on July 27, 2020.  ECF 6.  The Court heard and denied Tang's first motion for bail

5  review on July 31, 2020.  ECF 15.  A grand jury returned a two-count indictment charging Tang with

6  visa fraud and making false statements to the FBI in violation of 18 U.S.C. §§ 1001 and 1546 on August

7  6, 2020. ECF 18.

8    On August 24, 2020, Tang filed a second motion for bail review alleging a change in

9  circumstances.  ECF 27.  The Magistrate Judge heard Tang's second motion for bail review on August

10  27 and 28, 2020.  ECF 34, 37.  Over the government's objection, the Magistrate Judge ordered Tang

11  released to the third party custodian upon the posting of a $750,000 property bond secured by the equity

12  in the third party custodian's primary residence and other conditions including, among other things:

13  electronic home monitoring at the third party custodian's residence, various travel restrictions, a twenty-

14  four hour curfew, and only telephonic or video contact with officials of the PRC in the presence of

15  defense counsel.  ECF 37.  The United States' motions for a stay of and for the revocation of the

16  Magistrate Judge's release order were denied by this Court. ECF 51, 67.

17    On October 23, 2020, Tang filed a motion to modify the conditions of release.  ECF 72.

18  Claiming that heightened tensions between the U.S. and China and alleged threats in the public media

19  have created personal safety concerns for the third party custodian, his family, and herself, Tang

20  requested that she be allowed to move from the third party custodian's residence into a nearby

21  apartment.  Tang further proposed that all of the remaining conditions of release remain in effect,

22  including the third party custodian and his wife remaining as sureties.  The United States opposed

23  Tang's motion.  ECF 83.

24    On November 6, 2020, the Magistrate Judge heard Tang's motion to modify her pretrial release

25  conditions.  ECF 87.  The Magistrate Judge denied Tang's motion, ultimately concluding that allowing

26  Tang to move into her own apartment would not realistically alleviate the claimed safety concerns. ECF

27  87; 90.  Tang sought review before the District Court on November 10, 2020.  ECF 91.

28

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
APPEAL

### III.      ARGUMENT

#### A.      Legal Standard for Appeal of Pretrial Modification Denial

A district court conducts a *de novo* review of a magistrate judge's bail ruling. *See United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990). The district court is required to "review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id*. at 1193. If the performance of the district court's function "makes it necessary or desirable for the district judge to hold additional evidentiary hearings, it may do so, and its power to do so is not limited to occasions when evidence is offered that was not presented to the magistrate." *Id*. at 1193.

Pursuant to the Bail Reform Act of 1984, if, after a detention hearing the court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the safety of any other person and the community, such judicial officer *shall order* the detention of the person before trial." 18 U.S.C. § 3142(e)(1) (emphasis added). The decision whether to detain a defendant as a flight risk pending trial is made by a preponderance of the evidence. *United States v. Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985).  The government bears the burden of proving risk of flight. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). In determining whether conditions exist to guarantee the defendant's attendance and assure the safety of others and the community, the court is instructed to consider: (1) "the nature and circumstance of the offense charged;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the defendant;" and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(1)–(4).

#### B.      Media attention and alleged threats

Tang was released to the third party custodian on or about September 10, 2020.  It is not surprising that Tang's case has generated significant attention in American and Chinese-language media. As the Court will recall, Tang was not the only Chinese scholar charged with visa fraud and/or lying to the FBI between June 2020 and August 2020.  Nor is it surprising, given the nature of the allegations, that people use social media to express opinions about Tang, her alleged conduct, and the fact that she remains out of custody pursuant to the Court's release order.  Additionally, in light of the third party

1    custodian's voluntary insertion of himself in this matter, irrespective of his intentions, it is also not

2    surprising that the media and, by extension the public, is interested in his role as the third party

3    custodian.

4         Moreover, during the August 27-28 hearings, the Court engaged in an extensive colloquy with

5    the third party custodian to ensure that he understood the duties and responsibilities involved.  The third

6    party custodian assured the Court that he was willing to accept the responsibility and to have Tang

7    reside in his family residence.  The third party custodian was also aware that his name and the city

8    where he lived would also become matters of public record and that there could be media attention in the

9    case.  The Magistrate Judge even referred to the August 27-28 colloquy when addressing the third party

10   custodian at the November 6 modification hearing.  November 6, 2020 hearing transcript at 11; ECF 90.

11        The government does not mean to suggest that the third party custodian somehow deserves to be

12   singled out or threatened with harm because of his role.  As the Magistrate Judge stated, "sir, no one will

13   fault you at some point if you say this is not what I bargained for. I believe in our system, but this is not

14   at all what I bargained for. And if you want to reconsider Dr. Tang living with you or posting a surety,

15   then you have an absolute, absolute right to do so, and then I will take it from there." November 6, 2020

16   transcript at 11-12; ECF 90.

17        Furthermore, while the language contained within the Exhibit A's Chinese social media posts is

18   troubling, there is nothing to suggest that there is now or was then any imminent threat to Tang, the third

19   party custodian, or anyone associated with the defense team.  In fact, all of the posts are dated over a

20   month ago.  Despite Tang's claims that these posts are pervasive and that several thousand individuals

21   "follow" the authors, beyond an initial contact with law enforcement at the time of Tang's release,

22   entirely missing from the pleadings in this case is any suggestion that Tang or the third party custodian

23   have reported these allegedly continuing events to law enforcement.  Notwithstanding Tang's assertions

24   at the November 6 hearing that by filing a release modification motion she necessarily reported the

25   threats to law enforcement, local law enforcement in the city where she resides, which is outside this

26   District, is in the best position to handle any imminent threats.  Beyond the small sample of social media

27   posts found in Exhibit A, Tang provides no additional or more recent concrete examples of threats

28   against the third party custodian, his family, or herself.

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
APPEAL
4

1    Importantly, Tang's request to live in a separate residence a short distance away from the third

2    party custodian, if granted, will not solve the continuing media attention or public interest in this case.

3    Until Tang's case is finally resolved, the media will continue to report on events that it sees as inter-

4    related and members of the public may continue to express opinions, however distasteful, in social

5    media.  As the Court knows, Tang is not the only alleged member of the Chinese military that is charged

6    in federal court.  Nor will Tang living in a separate residence necessarily ameliorate the allegedly

7    threatening on-line behavior toward the third party custodian, especially considering that his stated

8    intention is to remain as the surety.  Because the social media posts are based entirely on the third party

9    custodian's role, to suggest otherwise is wholly speculative.  The Magistrate Judge recognized as much

10   during the November 6 hearing noting that: "threats against Mr. Cui because he's willing to be a third-

11   party custodian, as long as he's still the custodian, I don't see how that threat is gone." November 6, 2020

12   transcript at 11; ECF 90.

13       **C.      Ending third party custodianship increases Tang's flight risk**

14   From the outset, the government has maintained that Tang is a flight risk under 18 U.S.C.

15   § 3142(e)(1) and that the Court's unusual release order was insufficient to mitigate that risk.  It bears

16   repeating that she has no ties to the United States and could leave the United States at any time without

17   sacrificing anything even under the Court's current release order.  Tang's entire family is now in China

18   and she has no significant relationship with any person in the United States.  She has no job and is no

19   longer researching/working at UC Davis.  Tang's flight to and approximately thirty-day residential stay

20   at the Chinese Consulate in San Francisco following her contact with the FBI is not indicative of

21   innocent behavior.  Moreover, that the Chinese Consulate stood ready to help Tang in her attempt to

22   avoid prosecution by the United States cannot be ignored.  That Tang may not face a significant prison

23   sentence for her conduct does not lessen the seriousness of the offense, nor does it make her any less of

24   a flight risk.

25   Notwithstanding his pledge to remain as the surety and to continue supervising the defendant,

26   allowing Tang to reside outside the third party custodian's residence is tantamount to ending the

27   custodianship, and the overall tone of Exhibit B strongly suggests that the third party custodian wants to

28   be relieved of these duties altogether.  However, implicit in the Court's reasoning when it initially

GOVERNMENT'S OPPOSITION TO DEFENDANT'S          5
APPEAL

1 | granted release over the government's objection was the notion that by residing in his home with his

2 | family, Tang would essentially be supervised by the third party custodian on a more or less continuous

3 | basis.  Although the current release order does not specifically require the third party custodian to be

4 | home all day, the Magistrate Judge confirmed his reasoning during the November 6 hearing, stating "but

5 | as I've said, my comfort level -- this was unheard of in many ways, but my comfort level was to have

6 | Dr. Tang in the home with a third-party custodian keeping an eye on her and a curfew, and having her in

7 | a separate apartment doesn't do that."  November 6, 2020 transcript at 12; ECF 90.

8 |  Without this condition, Tang would be unsupervised for the most of the day except for those

9 | brief periods when the third party custodian would check in on her.  Without supervision, Tang's ability

10 | to flee would be greatly increased.  Nothing prevents Tang from leaving the apartment during these

11 | unmonitored periods despite the Court's twenty-four hour curfew order.  Electronic monitoring is not a

12 | panacea.  As the Magistrate Judge noted during the August 27, 2020 hearing, "our electronic

13 | monitoring, by the way, is not as good as you'd like to see in the movies, and it's not as if she steps out

14 | your front door and alarms go off and officers are there in thirty seconds." August 27, 2020 transcript at

15 | 15; ECF 39.  Pretrial Services would have even less of an opportunity to respond without the third party

16 | custodian's supervision, and the proposed apartment is located outside the Eastern District of California.

17 |  Moreover, the Court would not have any assurance that Tang was actually complying with its

18 | other conditions of release, namely not making contact with Chinese authorities outside the presence of

19 | defense counsel.  The Magistrate Judge, recognizing this very issue, stated "there's also prohibitions on

20 | other people visiting her, her going to the embassy, and all of those are suddenly gone when she's on her

21 | own in an apartment. We all know minds start doing different things when you're alone in an apartment

22 | and there's not somebody right there."  November 6, 2020 transcript at 19-20; ECF 90.

23 |  That, according to the third party custodian, Tang has followed all of the Court's instructions and

24 | been a respectful houseguest while residing with the third party custodian is not remarkable.  She has

25 | little choice but to comply or face being returned to the Sacramento County Jail.  To that extent, Tang's

26 | compliance in the very short time since her release is of dubious value in assessing her future

27 | compliance should she be allowed to reside on her own with essentially no supervision.  Tang's proposal

28 | is not one of gradual easing of release conditions over time, rather, it is an abrupt change in her living

GOVERNMENT'S OPPOSITION TO DEFENDANT'S
APPEAL

6

1  arrangements without a sufficient basis of compliance or any real assurance that she won't flee the

2  jurisdiction of the Court.  As the Magistrate Judge noted in reference to his original release order "…this

3  was a very close call with a lot of concerns…"  November 6, 2020 hearing at 8; ECF 90.

### IV.    CONCLUSION

5  For all of the above reasons, the Court should deny Tang's request to modify the conditions of

6  release.  Tang remains a flight risk even under the Court's current release order.  Modification of the

7  release conditions will not have the desired effect of protecting the third party custodian from continued

8  media attention and alleged on-line threats.  The proposed modification only increases Tang's ability to

9  flee the United States if she so chooses.

Dated:  November 18, 2020

McGREGOR W. SCOTT
United States Attorney

By:  /s/ HEIKO P. COPPOLA
HEIKO P. COPPOLA
Assistant United States Attorney