Malcolm Segal, SBN 075481
Emily E. Doringer, SBN 208727
**SEGAL & ASSOCIATES, PC**
400 Capitol Mall, Suite 2550
Sacramento, CA 95814
Telephone: (916) 441-0886
Facsimile: (916) 475-1231
msegal@segal-pc.com

Thomas A. Johnson, SBN 119203
**Law Office of Thomas A. Johnson**
400 Capitol Mall, Suite 2560
Sacramento, CA 95814
Telephone: (916) 442-4022
taj@tomjohnsonlaw.com

Patrick Wong, SBN 241740
**Patrick Wong, Esq.**
145 El Camino Real
Menlo Park, CA 94025-5234
Telephone: (650) 391-5366
Facsimile: (650) 352-3562
patrick@wong.law

Attorneys for Defendant
JUAN TANG

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TANG JUAN,<br>aka Juan Tang,<br><br>Defendant. | Case No: 2:20-CR-00134 JAM<br><br>**DEFENDANT JUAN TANG'S REPLY TO GOVERNMENT'S OPPOSITION TO APPEAL FOR REVIEW OF ORDER DENYING MOTION TO MODIFY PRETRIAL RELEASE CONDITIONS**<br><br>Date: TBD<br>Time: TBD<br>Crtrm: 6, 14th Floor<br>Judge: Hon. John A. Mendez |

Defendant's Reply to Government's Opposition to Appeal for Review Re: Modifying Conditions of Release

**I.     Introduction**

The government opposes the defendant's request that she be permitted to live in close proximity to the Third-Party Custodian (but not in his personal residence) under the same conditions of release previously imposed and under his continued supervision.  The request was and is made to alleviate the real concern the Custodian has as to his safety and that of others in his residence because of specific published threats to kill him and harm others <u>because Dr. Tang is living in his residence</u>.  The government's Opposition claims that the "tone" of the Third-Party Custodian's Declaration signals his desire to end his supervision of the Defendant but conveniently ignores the Custodian's Declaration under oath that he is most willing to continue to supervise the Defendant <u>and</u> that he will continue to post the $750,000 in equity in his home as security for her bond.  Similarly, the government stunningly continues to claim that the published "threats" are mere opinions, asserts that the move to a separate apartment will not provide additional safety for the Custodian or the Defendant, but does not advise the Court whether it has conducted any investigation as to the person making the death threats and instigating others to act.

The Custodian, while desiring to see the case through and continue to supervise the Defendant during that process, has candidly indicated that he may be forced to relinquish that role out of personal safety concerns for himself and others as they visit his home during the holiday season about to commence.  The government, having failed to prevail in prior hearings and on appeal to this Court seeking the Defendant's detention, is content that she may have to be returned to custody because of the Custodian's safety concerns based on her residence in his home.

The prosecution's arguments are contrary to the intent of the Bail Reform Act and are unsupported by facts or sound reasoning sufficient to support its claim that

that a modest change in the multiple prevailing conditions of release presents a new and significant risk of flight, and the defendant's request should be granted.

The facts and the law here are well known to this Court and the defense therefore submits this matter for decision upon the following summary of its position.

## II.     Argument

The government's argument against permitting the defendant to reside in a leased apartment in proximity to and under the close supervision of the Third-Party Custodian, a request made in order to relieve his concerns about the physical safety of people living in or visiting his residence while the Defendant is a resident there, relies on no stated facts or further investigation.  Instead the opposition is based entirely on an unfounded opinion that the defendant will find a way to flee this country, without a passport or other form of identification, and without the ability to converse in English, in order to avoid defending against an offense with a likely guidelines sentence that would add only weeks or a few months to the time she served in the Sacramento County Jail awaiting release.  Stated another way, the prosecution asserts that the defendant, a well-educated scientist, is likely to risk a substantial period of detention at the Jail, while awaiting trial months away, to avoid possible post-trial incarceration for several months in a BOP camp facility, followed inevitably by deportation to her home country.  That logic underlying the opposition fails under any reasonable analysis and ignores the other multiple conditions of release, including the well accepted use of electronic monitoring, supervision by Pretrial Services, and supervision by the Third-Party Custodian.  The argument that the Third-Party Custodian will abdicate his obligation to continue to supervise the Defendant ignores the fact that he has posted and will continue to post the substantial equity in his own home as security for her release on bond.

Similarly, while the prosecution readily discounts published threats by individuals promoting the killing of the Third-Party Custodian, made solely because the defendant is residing in his home, as well as the threat of other physical and

property harm, it fails to state whether it has investigated the individuals making the threats despite knowing the culprits' online identities, and possessing copies of the posts it has had in hand for several weeks.  While the United States Attorney prosecutes cases in this District based on similar online and public threats by individuals, it has not informed the Court and the parties, publicly or under seal, as to whether it has done a professional assessment of the risk to the Third-Party Custodian or persons in or visiting his household.  The basis for the government's inaction apparently being that the threats are a month old, and no one has yet been hurt, and the stories about hostage taking of American scientists in China have not yet been acted on.  The refusal to investigate the threats or even acknowledge them, while the government continues here to raise the cases of other scientists who have been charged in unrelated cases (an argument rejected by this Court) heightens the concern, it certainly does not alleviate it.

In contrast, the Third-Party Custodian has sworn in the moving papers to his personal fears about the safety of visitors in his home while Dr. Tang resides there because her living there is the stated reason for the threats.  There is no basis to doubt his credibility or good faith, nor has the prosecution even attempted to do so.  It is fundamentally unfair to ask him to remain on as Third-Party Custodian if he feels unsafe in his own home.  Unless this Court determines to modify the conditions of release to permit the defendant to reside in home confinement in a separate apartment, supervised by the Third-Party Custodian,  with electronic monitoring, and with the other conditions of release previously imposed fully intact, the Custodian will be faced with the extraordinarily difficult choice of whether he can welcome his own family and friends into his home this weekend or must immediately relinquish his role as Third-Party Custodian, leaving the defendant to be returned to custody or seek other relief from the Court as the Court examines the conditions of her release.

/ / /

/ / /

### III. Conclusion

The Third-Party Custodian has voluntarily provided service to the court and the parties by agreeing to supervise the defendant while she is released from custody until the court can provide her with a trial under circumstances where the length of time between arrest, charging, and trial is adversely affected by an epidemic and not the fault of those involved in the judicial system.  The defendant's conduct has been exemplary while on release.  The Third-Party Custodian has fulfilled his responsibilities and done even more.  This motion and appeal were not made for convenience, but rather in response to a demonstrable threat of violence to the Third-Party Custodian by persons unwilling to accept the fact that he stepped forward as an act of fairness and out of a sense of justice and not because of any political views.  For that same reason, he risked his home and financial assets to secure the bond.

The threats are based on the Defendant's residence in the Custodian's home. A change in that additional condition, not required by law and entirely a matter of discretion in individual cases, does not substantially alter the status quo. In the face of threats which followed the Custodian's extraordinary act of good will, he should not be asked to fear for his personal safety and that of others visiting his home or be forced to make the choice of withdrawing from his role to restore a sense of security for those in his home.  Nor should the defendant, still presumed innocent, be returned to jail at the height of the Covid-19 epidemic, under circumstances where the combined conditions of her release, with the modest change in her residence, provide reasonable assurance of her presence for further proceedings before this Court.

Dated: November 18, 2020.                **SEGAL & ASSOCIATES, PC**

                                          By:   /s/ Malcolm Segal
                                                MALCOLM SEGAL
                                                EMILY E. DORINGER
                                                Counsel for Defendant

-5-
Defendant's Reply to Government's Opposition to Appeal for Review Re: Modifying Conditions of Release

**LAW OFFICE of THOMAS A. JOHNSON**

By: /s/ Thomas A. Johnson
     THOMAS A. JOHNSON
     Counsel for Defendant