Malcolm Segal, SBN 075481
Emily E. Doringer, SBN 208727
**SEGAL & ASSOCIATES, PC**
400 Capitol Mall, Suite 2550
Sacramento, CA  95814
Telephone: (916) 441-0886
Facsimile: (916) 475-1231
msegal@segal-pc.com
edoringer@segal-pc.com

Thomas A. Johnson, SBN 119203
**Law Office of Thomas A. Johnson**
400 Capitol Mall, Suite 2560
Sacramento, CA 95814
Telephone: (916) 442-4022
taj@tomjohnsonlaw.com

Patrick Wong, SBN 241740
**Patrick Wong, Esq.**
145 El Camino Real
Menlo Park, CA 94025-5234
Telephone: (650) 391-5366
Facsimile: (650) 352-3562
patrick@wong.law

Attorneys for Defendant
JUAN TANG

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>v.<br><br>TANG JUAN,<br>aka Juan Tang,<br>             Defendant.<br>_____ | Case No. 2:20-CR-00134 JAM<br><br>**DEFENDANT'S OPPOSITION TO UNITED STATES' MOTION TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT** |

1

## TABLE OF CONTENTS

Page(s)

2

3    I.    Introduction .................................................................................................1

4    II.   The Government's Motion to Exclude Time ...........................................2

5    III.  Argument .....................................................................................................4

6
       A.    The Statutory Factors do Not Weigh in Favor of
7            Exclusion in This Instance .................................................................6

8            1.  The Government Overstates the Weight to be
                 Afforded the "Impossibility" Factor and has Not
9                Shown that a Failure to Exclude Time Will
                 Automatically Make Future Proceedings Impossible
10               Under 18 USC §3161(h)(7)(B)(i) ................................................7

11
             2.  The Government Overstates Concerns Regarding
12               Trial Preparation Under 18 USC §3161(h)(7)(B)(iv) ............. 10

13
       B.    Other Additional Factors Weigh Against Exclusion in
14           This Instance .......................................................................... 11

15   IV.   Conclusion ........................................................................................... 13

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Cases**                                                              Page(s)

*Barker v. Wingo*, 407 U.S. 514 (1972) ................................................4
*In re Approval of Judicial Emergency Declared in E. Dist. of Cal.*,
   956 F.3d 1175 (9th Cir. 2020) ............................................... 2, 7
*Klopfer v. State of N.C.*, 386 U.S. 213 (1967) ...................................4
*Singer v. United States*, 380 U.S. 24 (1965) .....................................9
*United States v. Clymer*, 25 F.3d 824 (9th Cir. 1994) .........................9
*United States v. Cohn* (ED NY 2020)........................................... 9-10
*United States v. Harris*, 460 F. Supp. 3d 973 (ED CA 2020) .............. 4, 6-9, 11
*United States v. Lloyd*, 125 F.3d 1263 (9th Cir. 1997) .......................4
*United States v. Nance*, 666 F.2d 353 (9th Cir. 1982) ........................4
*United States v. Pollock*, 726 F.2d 1456 (9th Cir. 1984) .............................. 4, 12
*United States v. Sheikh*, 2020 U.S. Dist.
   LEXIS 188189 (ED CA 2020).....................................................8
*United States v. Smith*, 2020 U.S. Dist.
   LEXIS 190656 at 9 (ED CA 2020)...........................................5
*United States v. Souza*, 749 F.3d 74 (1st Cir. 2014)....................... 12
*Zedner v. United States*, 547 U.S. 489 (2006) .................................5


**Statutes**

18 U.S.C. §1001(a)(2) ..............................................................1
18 U.S.C. §1546(a) .................................................................1
18 USC §3161(c)......................................................................4
18 USC §3161(h)(1) .................................................................4
18 USC §3161(h)(2) .................................................................4
18 USC §3161(h)(3) .................................................................4
18 USC §3161(h)(4) .................................................................4
18 USC §3161(h)(5) .................................................................4
18 USC §3161(h)(6) .................................................................4
18 USC §3161(h)(7)(A) .......................................................... 3-7
18 USC §3161(h)(7)(B) ......................................................... 4, 13
18 USC §3161(h)(7)(B)(i) .................................................. 5, 7, 10
18 USC §3161(h)(7)(B)(ii) ...................................................... 5, 7
18 USC §3161(h)(7)(B)(iii) .................................................... 5, 7
18 USC §3161(h)(7)(B)(iv) ................................................ 5, 7, 10
18 USC §3161(h)(7)(C) ...........................................................5
18 U.S.C. §3174.....................................................................2
18 U.S.C. §3174(b) .................................................................7
Federal Rules Criminal Procedure 23(a) ......................................9
Federal Rules Criminal Procedure 23(a)(2) ..................................9

1

## Misc.

2

U.S. Const. Amend. V ........................................................................4
U.S. Const. Amend. VI ......................................................................4
U.S.D.C. General Order 611 ........................................................ 5, 7
U.S.D.C. General Order 612, ¶5 ................................................. 5, 7
U.S.D.C. General Order 617, ¶6 ................................................. 5, 7

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## I.    INTRODUCTION

2    Dr. Juan Tang is a citizen of the People's Republic of China ("China") and

3   an academic and oncology researcher with a PhD in Cellular Biology.  Just over a

4   year ago, in December 2019, she left her home and country for the opportunity to

5   work in a University of California, Davis grant program focused on cancer

6   research, traveling with her husband, young daughter and mother.  As part of the

7   process through which she ultimately came to Davis, Dr. Tang applied for and

8   was granted a visa for entrance into the United States.  As she was still

9   completing the prerequisite tests necessary for her to even begin working in the

10  grant research program, federal law enforcement officers arrived at her rented

11  apartment in Davis on June 20, 2020 to execute a search warrant.  They seized

12  her telephone, her laptop and other electric media on which some of her previous

13  research work and other materials were stored.

14    While she was not arrested after an interview by the agents, she was later

15  taken into federal custody on July 23, 2020, based upon a Complaint filed by the

16  FBI in the Eastern District of California on June 26, 2020, charging her with

17  making a False Statement on her visa application.  She made her initial

18  appearance on the Complaint on July 27, 2020 and was detained.  By that time,

19  her husband and mother, in the United States on visitor visas and her daughter as

20  a visiting minor in the company of a parent, had returned to China.  The

21  defendant was indicted on August 6, 2020.  The Indictment alleges violations of:

22  (1) 18 U.S.C. §1546(a) (the making of a false statement on her visa application)

23  and (2) 18 U.S.C. §1001(a)(2) (the making of a false statement to the FBI about

24  that same question on her visa application.)

25    While Dr. Tang's initial motion for release was denied, a subsequent

26  renewed motion for release was granted after hearings before a Magistrate Judge

27  on successive days; the pretrial release determination was based on the

28  availability of a qualified Third-Party Custodian with no prior connection to the

-1-

1  defendant and none to the case who, acting out of his concern that she be treated

2  fairly by our system of justice, was willing to post a bond secured by his own

3  home and to permit the defendant to reside there.  The government sought a stay

4  and revocation in the District Court.  Both requests were denied.  After the posting

5  and proof of the recording of the security for the $750,000 bond, the defendant

6  was released on September 10, 2020.  The Defendant sought modification of the

7  Release Order permitting her to reside in a leased apartment in proximity to the

8  Third-Party Custodian's residence, under his continued supervision and the same

9  conditions of release, but the modification of the release terms was denied by the

10  Magistrate Judge and by this Court on November 30, 2020.

11      A week later, at a status conference before this Court on December 8,

12  2020, conducted via video with the assistance of a Mandarin-language

13  interpreter, the defendant requested that the case be set for trial in late January or

14  early February.  The government took the position that the case should not be set

15  in view of the Covid-19 virus and because it had not completed discovery and had

16  an unidentified expert witness then unable to travel to Sacramento from Australia.

17  The Court nonetheless set a trial for February 8, 2021, a date within the time

18  limits prescribed by the Speedy Trial Act and set a Trial Confirmation Hearing for

19  January 12, 2021.

20      ## II.    THE GOVERNMENT'S MOTION TO EXCLUDE TIME

21      Following trial setting, the government moved to exclude time for the two-

22  month period between the December 8, 2020 and the pending trial date on

23  February 8, 2020.  In support of its motion, the government relies almost

24  exclusively on the Court's previous General Orders that halted the summoning of

25  jurors for service in civil or criminal trials in the Eastern District and on the Court's

26  declaration of a judicial emergency under 18 U.S.C. § 3174, approved by the

27  Ninth Circuit on April 16, 2020.  *In re Approval of Judicial Emergency Declared in*

28  *E. Dist. of Cal.*, 956 F.3d 1175 (9th Cir. 2020).  In addition, the government claims

that it has provided voluminous discovery, that it intends to provide additional discovery, and expresses a generally stated need for additional time for trial preparation.  During the three weeks since the motion to exclude time was filed, no additional discovery has been forthcoming and the unnamed person in Australia has not been identified or any expert credentials disclosed, nor has any reason been provided why that expert is needed or what he or she will add to the government's case.

The government's argument, even considering the present restrictions in place in this District to slow the impact of the Covid-19 virus, fails to present a careful and case specific evaluation of all relevant factors.  By their own explicit terms, the Court's General Orders cannot form the basis of a time exclusion; the Speedy Trial Act and the Orders themselves require a careful consideration of any number of factors.  This Court has previously so held.  The government provides an incomplete and unconvincing analysis of those factors that does not justify a finding that time should be excluded or that such an exclusion will serve any ends of justice that "outweigh the best interest of the public and the defendant in a speedy trial."  18 USC §3161(h)(7)(A).

Specifically, the government has overstated some factors while ignoring others, such as the unusual circumstances of this case, the heightened prejudice further delay creates for this defendant, and the potential availability of alternative procedures, all of which weigh in favor of the defendant's right to claim a speedy trial and against the requested exclusion of time.  Similarly, the government has chosen to ignore the defendant's stated willingness to waive a jury trial in favor of a court trial and to agree that the trial be conducted via video or in such other manner as would avoid any potential risks or the logistical difficulties a jury trial would entail.  Moreover, the government's assertion that the time between its filing of its Motion to Exclude Time and the Court's hearing of the motion at Trial Confirmation, should be excluded under the Speedy Trial Act, because it has filed

-3-

1  a motion, is particularly meretricious considering the facts before the Court and
2  the purpose of the Act itself.

3  ### III.    ARGUMENT

4  A defendant has a right to a speedy trial under both statutory and
5  constitutional safeguards. 18 USC §3161(c); U.S.Const. Amend. V, VI.  The
6  speedy trial right is a core principle, fundamental to our system of justice,
7  amounting to "one of the most basic rights preserved by our Constitution."
8  *Klopfer v. State of N.C.*, 386 U.S. 213, 226 (1967).  These provisions reflect both
9  "the strong public interest in speedy justice" as well as a deep "concern about a
10 number of problems…. that vex an individual who is forced to await trial for long
11 periods of time."  *United States v. Harris*, 460 F. Supp. 3d 973, 975 (ED CA
12 2020), citing *United States v. Pollock*, 726 F.2d 1456, 1459-60 (9th Cir. 1984).
13 "These problems include: 'disruption of family life, loss of employment, anxiety,
14 suspicion, and public obloquy."  *Id*.  Of course, the individual's interest in prompt
15 adjudication is not the only interest served.  Society at large has its own separate
16 and distinct interest in providing fair, expedient procedures, and therefore "the
17 right to a speedy trial belongs not only to the defendant, but to society as well."
18 *United States v. Lloyd*, 125 F.3d 1263, 1268 (9th Cir. 1997), *see also Barker v.*
19 *Wingo*, 407 U.S. 514, 519 (1972).

20 The time limits set forth in the Speedy Trial Act require "the dismissal of the
21 indictment against any defendant who is not brought to trial within seventy days."
22 *United States v. Nance*, 666 F.2d 353, 355 (9th Cir. 1982).  The Act includes
23 "narrow, automatic exclusions" of time for specific reasons, none of which are
24 applicable here.  *Id*.; 18 USC §3161(h)(1)-(6).  The Act also compels courts to
25 consider all relevant factors before determining that an exclusion of time under
26 the Act serves ends of justice that "outweigh the best interest of the public and the
27 defendant in a speedy trial."  18 USC §3161(h)(7)(A)-(B).
28 / / /

Several factors are specifically enumerated, but a court's consideration of a request to exclude time must account for all such salient factors as may arise on each individual case-by-case basis.  18 USC §3161(h)(7)(B)(i)-(iv).  Thus, the Act's provisions "[give] the district court discretion—within limits and subject to specific procedures—to accommodate limited delays for case-specific needs." *Zedner v. United States*, 547 U.S. 489, 499 (2006) (emphasis added).  As the court noted in *Zedner*, the Act explicitly directs that no exclusions of time under §3161(h)(7)(A) shall be granted due to general court congestion, or the government's failure to diligently prepare or to obtain available witnesses.  18 USC §3161(h)(7)(C).  This Court has stated, in the context of another case, that: "Because 3161(h)(7)(A) requires this balancing to be case-specific, the Court cannot, and does not, find that considerations surrounding Covid-19's impact on public safety and the Court's operations will, in every case, outweigh the best interest of the defendant and the public in a speedy trial."  *United States v. Smith*, 2020 U.S. Dist. LEXIS 190656 at 9 (ED CA 2020).

The General Orders of the District Court in response to modified operations in response to the Covid-19 pandemic do not alter in any way this mandated statutory process; they simply reflect the Court's understanding that the current modifications and restrictions are but one factor that weighs in favor of a time exclusion.  However, additional findings after consideration of all salient factors are still required by law and are contemplated by the General Orders themselves.  *See* General Order 612 at ¶5 (indicating that in criminal cases time may be excluded with reference to General Order 611 "with additional findings to support the exclusion in the Judge's discretion"), General Oder 617 at ¶6 (permitting continuances with time exclusions based on General Order 611, the declared judicial emergency, and Ninth Circuit's April 16, 2020 order and also "with additional findings to support the exclusion in the Judge's discretion."

/ / /

Thus, while consideration of present public health concerns is permitted under the General Orders, they comprise only one of any number of relevant factors.  They cannot by themselves suffice to show that a time exclusion is appropriate in any given case.  Rather, "courts must conduct far more deliberate inquiries into whether an ends-of-justice-continuance is justified by the circumstances surrounding a particular case." *Harris*, 460 F. Supp. at 976; *see also Pollock*, 726 F.2d at 1461 (the ends of justice exclusion is "not meant to be a general exclusion" and such continuances must "be based on specific underlying factual circumstances.)

In this instance, any arguable ends of justice served by the government's requested continuance do not "outweigh the best interest of the public and defendant in a speedy trial." 18 USC §3161(h)(7)(A).  The government's analysis places too much emphasis on too few factors and fails entirely to consider others.  For example, the government's motion does not address a court trial, the obvious alternative to a jury trial, although that possibility was discussed on the record in this matter on two occasions before the government's motion was filed.  Considering the relative weight of the enumerated statutory factors and upon the mandatory analysis of the additional, case-specific factors, the government's request to exclude time should be denied.

## A.   The Statutory Factors do Not Weigh in Favor of Exclusion in This Instance.

In determining whether to exclude time, the Act lists four non-exhaustive factors for individualized analysis: (1) whether the determination not to exclude time would likely make continuation of the proceeding impossible; (2) whether the case is unusually complex (concededly, this case is not); (3) considerations regarding preindictment delays (not procedurally relevant here); and (4) whether the denial of a continuance would deny defendant the right to counsel, or would unreasonably deny either party continuity of counsel or the reasonable time

1   necessary to prepare with due diligence.  18 USC §3161(h)(7)(B)(i)-(iv).  The

2   government acknowledges the inapplicability of the second and third factors.  It

3   relies on the General Orders as to the first factor, and as to the last presents a

4   factually loose and unpersuasive argument regarding the need to prepare a case

5   it has previously claimed is strong and based on photographic evidence.  Taken

6   as a whole, the statutory factors here do not indicate that the interests of justice

7   outweigh the countervailing interests in a speedy trial.

8   **1. The Government Overstates the Weight to be Afforded the**
9   **"Impossibility" Factor and has Not Shown that a Failure to**
    **Exclude Time Will Automatically Make Future Proceedings**
10  **Impossible Under 18 USC §3161(h)(7)(B)(i).**

11      The government asserts that the failure to exclude time and grant a

12  continuance will make a trial many weeks away impossible, because of the Covid-

13  19 related General Orders affecting jury summoning and selection in all trials.

14  Under §3161(h)(7)(B)(i), one factor the court must consider is the impossibility of

15  continued proceedings if an ends-of-justice continuance is denied.  While the

16  government asserts that the District's General Orders and the declared District

17  emergency approved by the Ninth Circuit are factors that arguably weigh in favor

18  of continuance in this case, they only do so to the extent they generically weigh in

19  favor of continuance in every case.  *See* General Order 612 at ¶5; General Oder

20  617 at ¶6; *In re Approval of Judicial Emergency Declared in E. Dist. of Cal*., 956

21  F.3d 1175 (9th Cir. 2020).  Further, the declaration of a judicial emergency triggers

22  suspension of certain time limits under the Act but has no impact on the Act's

23  requirement that exclusions of time under §3161(h)(7)(A) are to be ordered only

24  where a consideration of all factors necessitates a finding that the ends of justice

25  served by a time exclusion outweigh the public and the defendant's interests in a

26  speedy trial.  18 USC §3174(b).

27      As noted in *Harris*, "though worthy of mandatory consideration," the

28  possibility of non-prosecution "is not the end-all-be-all in determining whether and

-7-

ends-of-justice continuance is appropriate.  *Harris*, 460 F. Supp. 3d at 978; *see also United States v. Sheikh*, 2020 U.S. Dist. LEXIS 188189 (ED CA 2020) ("[T]he coronavirus alone does not give the court the liberty to simply exclude time.")  The government asserts that because this factor was found to "weigh heavily" in *Harris*, the same result should be reached here. DKT #101 at 5:22-23.  However, the *Harris* case itself reveals the analysis there was conducted at a different point in time, under different assumptions, and on different facts.

The *Harris* decision reflects a weighing of the statutory factors as of May 19, 2020.  It noted the unlikelihood of jury trials through at least September 2020, and highlighted that as of that time, re-indictment of a dismissed defendant could prove difficult, as there was uncertainty regarding the ability of the government to present the case to a regularly convened grand jury.  *Harris*, 460 F. Supp. 3d 973, 978.  Clearly, the concern expressed in *Harris* regarding grand jury proceedings has been alleviated; the instant case provides just one of many examples of this District finding mechanisms to accommodate grand jury proceedings, with the incumbent quorum requirements, even amidst the reduced operations precipitated by Covid-19.  Stated another way, this Court has been able to assemble grand jury quorums in Sacramento and Fresno and the government has made liberal use of their presence and availability to file new cases, a very substantial number of them since the instant motion was filed.[1]

As we now near the year-end of 2020, jury trials did not resume in this District during this calendar year and it is not clear when they will.  Other courts have been able to find a way to conduct trials, and this District's committee meets regularly to try to seek solutions to the growing problem.  However, unlike many

---

[1] This case was Indicted in August 2020, when the problems inherent in conducting a jury trial were evident. Yet the government presumably determined to put a witness before a grand jury convened in this courthouse rather than employing an equally rational alternative of expelling the defendant and precluding her readmission into the United States—and, did so in a case where the sentencing guidelines call for a short sentence (with some in custody time already served), or possibly only probation.

other cases filed in this District, this case is non-complex and will likely take a very modest amount of time to try.  Thus, selecting a trial date for this case was possible and reasonable, and the government's desire to exclude time to provide it with a more facile path for a motion to continue the case at a later date is both unnecessary and will not serve the ends-of-justice.

The government's motion relies heavily on the fact that on other occasions, exclusions of time were upheld in the face of other emergencies.  DKT #101 at 4:15-26.  However, those cases at best offer minimal discussion regarding exclusions of time for very limited and specific amounts of time, due to catastrophic events at discreet times and geographical locations.  The present circumstances do not lend themselves to the same analysis.  The government clearly assumes the continued restraints on the District's operations are a factor weighing in favor of the requested time exclusion, as they were found to be in *Harris*.  However, at a certain point, the opposite necessarily becomes true.  The statutory "ends of justice" exclusion was "intended by congress to be 'rarely used,'" and is decidedly "'not a general exclusion for every delay*." United States v. Clymer*, 25 F.3d 824, 828 (9th Cir. 1994).

Apart from the fact that the Covic-19 restrictions alone cannot form the basis of an ends-of-justice exclusion and that delays without discernable end dates implicate the public and individual rights to a speedy trial, the government has not addressed the availability of alternative procedures.  The Federal Rules of Criminal Procedure allow for nonjury trial proceedings.  Fed. R. Crim. Pro. 23(a).  This alternative was offered by the defense and is an effective resolution of the issues presented in the government's motion, but the government has not yet indicated whether it will consent to trial before the Court. Fed. R. Crim. Pro. 23(a)(2).  Even if it does not, that does not deprive the Court of the power to find that alternative as a method of providing the defendant and the public with a speedy trial. *Singer v. United States*, 380 U.S. 24, 37-38 (1965); *see also United*

*States v. Cohn* (ED NY 2020) (In a well-reasoned opinion, the District Court dealt with the constraints caused by the Covid-19 virus in the context of the specific issues and facts of the case before it and overruled the government's objection to a Court trial.  See, attached Order, Exhibit 1.)   Here, the existence of a practical solution to the argument that a jury trial would be unreasonably difficult significantly lessens the weight of the government's arguments under §3161(h)(7)(B)(i).

### 2.   The Government Overstates Concerns Regarding Trial Preparation Under 18 USC §3161(h)(7)(B)(iv).

The parties agree this case does not present complex issues of law or fact. The government notes that defense counsel has received discovery, but that production, excluding that portion downloaded from the defendant's own computer, is a relatively modest amount of material.  The government has not said whether any or substantial amounts of additional discovery will be furnished to counsel (although requests for additional materials have been made), just that the right to such discovery may be disputed.  Significantly, no motion practice has yet been initiated with respect to discovery disputes.  The most salient fact here is that the defendant and her counsel, who are in the best position to assess their own trial readiness, weighing the desire for discovery against that for a prompt trial, have requested that the matter proceed to trial.  Moreover, the government presents no facts on which to base any determination that it has not had sufficient time to prepare.  There is mention of the fact that expert witnesses have been considered and that perhaps one will be called to testify, which possibly could require travel.  DKT #101 at 6:21-23.  But those hypothetical musings regarding trial preparation tasks that arguably could have already been accomplished, and that might not even be necessary, should not be given any weight in favor of an ends-of-justice continuance under §3161(h)(7)(B)(iv).

/ / /

-10-

**B.   Other Additional Factors Weigh Against Exclusion in This Instance.**

In addressing other, additional factors to be weighed by the court, the government fails to show that these factors weigh in favor of a finding that the ends of justice served by exclusion of time outweigh the interests in a speedy trial.  The government concludes summarily that Dr. Tang's release status, the timing of her assertion of the right to a speedy trial, and her lack of criminal history do not weigh against excluding time.  DKT #101 at 6:11-14.

Under the additional factor analysis conducted in *Harris*, Dr. Tang's lack of criminal history, including lack of violence, weighs against granting the requested exclusion of time; it also suggests that the likelihood of her recidivism is low to nonexistent.  She also invoked her right to a speedy trial early in the proceedings—after her release status had been fully litigated and within a short time after receiving the government's supplemental discovery.  *Harris*, 460 F. Supp. 3d at 980 (listing additional factors for consideration).

As to detention status, while the defendant is not detained in custody, the conditions of her release should be considered as a factor weighing against granting the requested exclusion of time.  Her release is conditioned upon the continuous supervision by the Third-Party Custodian in his residence and an electronic monitor to ensure that she remains on the premises.  She is awaiting trial in the Custodian's home, in a country where she had never been prior to arriving a year ago, most of which she has spent in custody or in the residence and, as the government must concede, under publicly made physical threats from persons in on-line publications.  Her family, including her spouse and young child, are far away from her.  Her ability to communicate with others is limited and further hampered by her lack of fluency in the English language.  Certainly, the accordant stress placed on her and the Third-Party Custodian is an additional factor here that should also be afforded considerable weight in the analysis of whether time should be excluded in the interest of justice.

1
2
3
4
5
6
7
8
9
10
11

Dr. Tang is an accomplished scientist and cancer researcher; the present charges represent an attack on her personal and professional reputation and integrity.  Press coverage, including widely circulated photos, and government filings have unfairly insinuated her culpability in something beyond the charges against her.  Claims that she is a component part of a dispute between governments, that she is part of a broader scheme by another government to practice espionage, and that her alleged conduct was intended to damage the American economy have been made.  Even though entirely untrue, her ability to receive a fair trial before a jury, during a period when jurors' expressed concerns about their personal health are common (thus narrowing the available jury pool) should factor into the analysis here.

12
13
14
15
16
17
18
19
20
21
22
23

Similarly, as a researcher in a foreign country under strict release conditions, she is unable to conduct the research or studies in her field to which she has devoted her academic and professional life.  Not only is her entire personal life effectively on hold while she awaits trial, but her professional life is also similarly completely curtailed.  She has requested a prompt trial, not to take advantage of a possible dismissal for the failure to comply with the Speedy Trial Act, but rather to have this matter fully, fairly, and promptly litigated.  The right to a speedy trial exists in part to "minimize anxiety and concern of the accused." *United States v. Souza*, 749 F.3d 74 (1st Cir. 2014).  In addition, given the continuous, extensive public interest in the media concerning this matter, the public's interest in a speedy trial should also be taken into account, and considering that interest, weighs against the requested time exclusion.

24
25
26
27
28

Under the circumstances unique to this case, the defendant faces the precise difficulties the Speedy Trial Act addresses—"disruption of family life, loss of employment, anxiety, suspicion, and public obloquy—that vex an individual who is forced to await trial for long periods of time."  *Pollock*, 726 F.2d at 1460. These individualized, particularized factors are the sort of case specific

-12-

considerations that carry substantial weight under §3161(h)(7)(B).  They, on balance, indicate that the ends of justice served by the requested exclusion of time are outweighed by the public and the defendant's interest in a speedy trial. The requested exclusion of time should be denied.

### IV.    CONCLUSION

Dr. Tang has invoked her speedy trial rights and wishes to proceed to trial; while to that end she has suggested the possible alternative of a non-jury trial, she simply desires a trial.  The government's request to exclude time, setting the stage for a future motion to continue the trial date, effectively ignores the most important factors and relies instead on the general restrictions in place in the District.  However, under the required particularized analysis of all relevant factors, that generalized claim is outweighed by considerations favoring the defendant's and the public's right to a prompt trial of the case.  The government's request for an exclusion under the Section 3161(h)(7) should be denied.

Dated: December 28, 2020           **SEGAL & ASSOCIATES, PC**


                                   By:    /s/ Malcolm Segal_____
                                          MALCOLM SEGAL
                                          EMILY E. DORINGER
                                          Counsel for Defendant


                                   **LAW OFFICE of THOMAS A. JOHNSON**


                                   By:    /s/ Thomas A. Johnson_____
                                          THOMAS A. JOHNSON
                                          Counsel for Defendant

# EXHIBIT 1

 Caution
As of: December 28, 2020 4:57 PM Z

# United States v. Cohn

United States District Court for the Eastern District of New York

August 26, 2020, Decided; August 26, 2020, Filed

19-CR-097 (GRB)

**Reporter**

2020 U.S. Dist. LEXIS 155287 *; 2020 WL 5050945

EDNY, Brooklyn, NY.

UNITED STATES OF AMERICA, -against- MICHAEL COHN, Defendant.

**Judges:** Gary R. Brown, United States District Judge.

## Core Terms

jury trial, non jury trial, speedy trial, bench trial, circumstances, pandemic, parties, factors, cases, impartial, public interest, courtroom, charges, delays, waive, constitutional right, proceedings, articulate, conditions, indictment, jurors, masks, space, conducting, distancing, witnesses, pretrial, rights, criminal prosecution, challenges

**Opinion by:** Gary R. Brown

## Opinion

**MEMORANDUM AND ORDER**

**GARY R. BROWN, United States District Judge:**

We are living in an effectively unprecedented time. At this writing, the world continues to experience the effects of COVID-19, which has caused a historic pandemic of a kind not seen in more than century.[1] Unless and until medical research yields a successful vaccine or effective treatment, practical tools, like wearing masks, maintaining personal distance and limiting the

**Counsel:** [*1] For Michael Cohn, Defendant: Randi L. Chavis, LEAD ATTORNEY, Federal Defenders of New York, Inc., Central Islip, NY; Jake Alec Nussbaum, Katten Muchin Rosenman LLP, New York, NY; Michael Max Rosensaft, Katten Muchin Rosenman LLP, New York, NY; Scott A. Resnik, Katten Muchin Rosenman LLP, New York, NY; Vikas Khanna, New York, NY.

For USA, Plaintiff: Artie McConnell, LEAD ATTORNEY, US Attorney's Office EDNY, Brooklyn, NY; Lauren Howard Elbert, LEAD ATTORNEY, United States Attorney's Office,

---

[1] The scope and gravity of the current public health emergency can most readily compare to the so-called Spanish Influenza pandemic of 1918, which claimed the lives of tens of millions worldwide. To date, COVID-19 has resulted in tens of millions of cases and more than 800,000 deaths.

size, frequency and length of public gatherings, remain the only viable means to control the spread of this terrible disease. As a result, at this writing, despite significant effort, research [*2] and investment by the Court, this district has not held a jury trial since March of this year, and in-person proceedings have been limited, although the Court has been gradually expanding its operations.

This backdrop provides the context for a dispute in the instant criminal prosecution, in which securities fraud-related charges have been pending against the defendant for more than a year. At the Court's suggestion, the parties considered whether a bench trial could provide an appropriate avenue for resolution of the charges given the complexities posed by a potential jury trial in the current circumstances. After careful consideration with counsel, the defendant agreed to waive his constitutional right to a trial by jury and consented to a bench trial.[2] DE 93, 96. The Government, on the other hand, has declined to consent to a nonjury trial, insisting instead on a jury trial when that becomes a viable alternative for this case. DE 92, 95.

Before the Court is the defendant's application to proceed with a bench trial notwithstanding the Government's objection. DE 93. While the Federal Rules of Criminal Procedure require the Government's consent, in extraordinary situations, the Court [*3] is empowered to conduct a bench trial upon the defendant's waiver even over the Government's objection when required by the interests of justice. Upon careful consideration, the Court finds that the unusual, if not unique, circumstances presented by this particular case dictate that a bench trial

be held notwithstanding the Government's objection. The facts and circumstances considered within the legal framework discussed herein include (a) the length of time during which the charges have been pending, which in this case is more than a year; (b) the uncertainty of providing a jury trial in this particular case within an ascertainable time frame; (c) the complexity of this case — involving weeks of testimony and hundreds of thousands of pages of documents — which will serve to further complicate a jury trial under present circumstances; (d) the defendant's age and health profile, which not only render a trial more difficult but may bear upon his right to testify in his own defense; (e) the marked public interest in this case and the delays in its resolution, which implicates the *public's* right to a speedy trial; and (f) evidentiary issues already identified by the Court raising the [*4] specter of possible juror confusion.

Upon consideration of the facts and circumstances, as discussed below, the Court will grant the defendant's application to hold a bench trial in the absence of the Government's consent.

## BACKGROUND

### Procedural History

This prosecution was commenced by the filing of a sealed indictment on or about February 26, 2019, charging defendant, a former employee of the Securities and Exchange Commission, with obstruction of justice and unauthorized disclosure of confidential information. The defendant was arrested on February 28, 2019 and released on a bond. Speedy trial time was excluded until April 10, 2019 to permit the

---

[2] Prior to the commencement of a bench trial, the defendant will be required to execute a written waiver as well as to articulate a waiver in open court.

parties to engage in plea negotiations. At an appearance before Judge Bianco on April 10, 2019, speedy trial time was again extended until June 10, 2019, and later until July, September and then October 2019, based on representations made to the Court that settlement negotiations appeared likely to resolve some or all of the charges. Throughout this period, defendant's name was kept as a "John Doe" on the docket at the request of the parties.

On October 17, 2019, a superseding indictment was filed which added a count of "obtaining information [*5] from a Government computer" under the Computer Fraud and Abuse Act, 18 U.S.C. §1030, but remained a largely formulaic instrument. However, a press release issued by the Government several days later provided more background on the allegations, and made the matter public.[3] The press release advised that defendant allegedly left the employ of the SEC to join GPB Capital Holdings, LLC, a private equity group, as its Managing Director and Chief Compliance Officer, purportedly taking with him information about an investigation into GPB improperly retrieved from a Government computer. In that press release, Government officials advised the public that the charges "reflect the Office of Inspector General's commitment to investigate individuals who obstruct SEC enforcement activities" and "demonstrate the FBI's commitment to protect the securities industry."

On October 23, 2019, Judge Bianco entered a speedy trial exclusion to permit the filing and resolution of pretrial motions and set a trial date

for March 2, 2020. Vigorous litigation followed involving, among other things, sensitive data and hundreds of thousands of pages of discovery supplied by the Government and obtained from third parties, and the [*6] trial date was eventually continued for a time without date due to substantive issues in the case.

On February 21, 2020, Judge Bianco held oral argument on defendant's motion to dismiss Count Two of the superseding indictment, relating to the purported violation of the Computer Fraud and Abuse Act. Defendant argued, in sum and substance, that as an employee of the SEC, his credentials permitted access to the subject computer databases. In a bench decision, Judge Bianco explored the Second Circuit's decision in *United States v. Valle*, 807 F.3d 508 (2d Cir. 2015), cautioning the prosecution (which declined to preview its evidence in response to the motion) that, in his considered view, "a person exceeds authorized access in violation of that provision only when he obtains or alters information that he doesn't have authorization to access for any purpose, and that is the holding of *Valle*." DE 64 at 28. He denied the Rule 12 dismissal motion made by the defendant, but cautioned that "the government better evaluate its proof" in light of the ruling, and that "waiting for a Rule 29 motion makes no sense" as "[i]t's only potentially going to confuse a jury . . ." *Id.* at 30. Judge Bianco also rejected a motion for a bill of particulars regarding the obstruction count, [*7] finding that the indictment, combined with discovery provided, appeared to give defendant adequate notice of the nature of the obstruction. *See id. at 35-38.* The parties then discussed a June trial date, though Judge Bianco advised the parties that he anticipated transferring the case to another Judge.

---

[3] "Managing Director and Chief Compliance Officer of Private Equity Firm Indicted for Obstruction of Justice," available at https://www.justice.gov/usao-edny/pr/managing-director-and-chief-compliance-officer-private-equity-firm-indicted-obstruction.

Speedy trial was again excluded through June 15, 2020 and the case was reassigned to the undersigned on March 2, 2020. Shortly thereafter, the COVID-19 pandemic struck, wreaking devastation across the New York area and elsewhere. While the parties and the Court endeavored to maintain the June trial date, this proved impossible. On April 28, 2020, counsel for defendant filed a joint letter on behalf of the parties asking for an adjournment of the trial from June 15 to September 8, 2020 as a result of the pandemic. This request was made "to protect the health and safety of the parties, potential jurors, and this Court," and noted that the defendant "suffers from certain health conditions that put him at a greater risk for complications from the virus." DE 79.

On July 15, 2020, the Government again superseded the indictment, now subject to several pending motions, adding a count of theft of public property, **[*8]** presumably based on the same facts. The Court, with the invaluable assistance of Magistrate Judge Locke, endeavored to keep the case on track for an early September jury trial. At subsequent status conferences, counsel further articulated the need for the defendant to wear a mask throughout the proceeding due to his age and health conditions and raised concerns about the appearance of the defendant to the jury as a result. At a July 27, 2020 arraignment on the second superseding indictment, the Court proposed that the parties consider a bench trial and directed counsel to file a written response.

By letter dated August 10, 2020, the Government stated the following:

> Upon due consideration of the relevant facts and circumstances, including the ongoing pandemic and the defendant's individual circumstances, and pursuant to Rule 23(a)(2) of the Federal Rules of

Criminal Procedure, the government does not consent to a non-jury trial in this matter. DE 92. No further explanation or authority was offered. By contrast, the defendant filed a letter stating that

> In light of the extraordinary circumstances presented by the COVID-19 pandemic and Mr. Cohn's desire to have a speedy trial pursuant to his rights under the Sixth Amendment to the United States Constitution, Mr. Cohn has decided to waive his **[*9]** right to a jury trial and consent to a bench trial in the format offered by the Court.

DE 93 at 1. Furthermore, in that letter, counsel for defendant urged the Court to hold a nonjury trial notwithstanding the Government's objection and set forth authority for its position. *Id.* at 1-3. Upon the Court's direction, the Government filed a responsive brief, and defendant filed a reply thereto. DE 95, 96.

*The Challenges Presented by COVID-19 in the Context of a Criminal Jury Trial*

The advent of the pandemic has presented challenges to nearly every aspect of our society. A court attempting to protect fundamental Constitutional guarantees while continuing to manage the crush of business arising from a crowded docket faces unique problems. The judges of this Court, as well as its administration and staff, have made Herculean efforts to grapple with these issues. The undersigned has witnessed, first-hand, the remarkable energy and resources that have been poured into these problems and gained some understanding of the vast complexities presented. The Court has conferred with experts in epidemiology and HVAC requirements, reviewed and examined scientific

Case 2:20-cr-00134-JAM   Document 103   Filed 12/28/20   Page 23 of 32

Page 5 of 14
2020 U.S. Dist. LEXIS 155287, *9

and government reports, monitored developing research, **[*10]** considered procedures adopted by and reports prepared by courts across the country, and has implemented policies and practices to help minimize risk to court personnel, attorneys, parties, witnesses and the public.[4]

Some aspects of the pandemic risks have been managed through adopting and deploying the tools used by businesses and other governmental organizations: strict adoption of face coverings and social distancing, temperature screening, individual reporting requirements, hand sanitizing, enhanced cleaning schedules, examination and management of HVAC ventilation systems, appropriate deployment of audio and video technologies,[5] etc. These efforts, costly in terms of time, energy and money, have helped the Court administer a broad range of proceedings, and some can help facilitate a safe trial.

Jury trials, particularly in criminal cases, present singular obstacles: effective credibility evaluation (and perhaps the Confrontation Clause) requires that witnesses testify without traditional masks; and the sheer number of individuals, often from far-flung locations, involved at jury selection and trial,[6] make the problem of conducting a trial with reasonable safeguards exquisitely difficult.

Trial **[*11]** requisites are, in some instances, contraindicated by current knowledge of the disease and the mechanisms by which it spreads, which has been developing and changing over the past months. Experts advise that two principal mechanisms for the transmission of the disease involve large droplets (which fall to the ground relatively quickly) and smaller aerosol particulates (which may float for hours) which are emitted by infected individuals, particularly when speaking. These risks can be substantially reduced by wearing face coverings and, to a lesser extent, plexiglass face shields. Current thinking suggests that the number of individuals involved in a gathering and the length of the interaction serve as multipliers of infection risk, while interpersonal distance between individuals and the use of personal protective equipment can help reduce that risk. Thus, safeguards appropriate for more common interactions — like a relatively quick retail transaction — may prove inadequate for a lengthy criminal trial. And testimony by witnesses without masks for hours at a time — the primary activity at a trial — presents unique challenges.

One such problem is space limitations. The Court has spent **[*12]** considerable time

---

[4] For avoidance of doubt, everything contained in this document represents solely the view of the undersigned, and should not be considered the opinion of the district. The undersigned anticipates, based on current work and information, that the district may be in a position to conduct jury proceedings in other cases quite soon, particularly in cases involving fewer participants and exhibits, shorter time frames and, most especially, a defendant without underlying health concerns. But, again, in *this* case, under *these* circumstances, the timeframe for commencing and completing a jury trial remains quite uncertain.

[5] The Court advised the parties that the Central Islip Courthouse has high-quality, built-in video technology which would allow for multiple real-time video links between two different courtrooms. This system may be deployed to deal with certain issues, including public access or, perhaps, testimony by high-risk individuals. The Court may opt to provide public access through audio broadcast. In any event, the Court will not, as suggested by the Government on this motion, be "[r]equiring the government to present all testimony in this complicated, document-intensive case through videoconferencing technology." DE 95 at 3.

[6] Simply by way of example, and not exhaustively, depending on the case, the individuals involved in a trial proceeding could encompass the following: jurors, alternates and potential jurors, attorneys and paralegals, parties and case agents, witnesses, a judge, magistrate judge, law clerks and courtroom staff, deputy marshals and court security officers, maintenance and technical staff, court reporters and interpreters.

considering courtroom space utilization and allocations for social distancing during testimonial proceedings, and conferred with other judges concerning experience with other proceedings, such as grand jury selection. When compared to many indoor spaces, courtrooms could be considered large, if not gargantuan. But the space requirements dictated by social distancing prove brutally demanding. The Central Islip Courthouse features generously-sized facilities, including fairly large standard courtrooms and a grand ceremonial courtroom. However, several online social distancing calculators[7] suggest that, discounting any space consumed by immovable fixtures, generalized estimates of safe occupancy range from 16 to 20 individuals for a standard courtroom and 23 to 30 individuals for the ceremonial courtroom. Thus, accommodating a short trial involving only a single defendant, a 12-person jury with few alternates, small legal teams and a minimal court staff presents few difficulties. However, with a longer trial like this one, involving, necessarily, more alternate jurors and larger legal teams, the situation becomes far more difficult.[8]

Creating even this level of **[*13]** safe occupancy requires rethinking of the use of space in the courtroom, with, for example, jurors seated in the gallery, and either moving the witness stand based upon HVAC airflow or having witnesses testifying from the juror box.

Additional time must be factored into proceedings to allow for longer breaks to allow surface cleaning between witnesses. And all of these estimates necessarily involve providing legally-required public access through an alternative means, such as an overflow video courtroom or a public audio feed.

None of this is meant to suggest that, in certain cases, a jury trial cannot be held. One can reasonably estimate, based on current work and information, that the district may be in a position to conduct jury proceedings in other cases quite soon, particularly in cases involving fewer participants and exhibits, shorter time frames and, most especially, a defendant without underlying health concerns. But, again, in this case, under these circumstances, the timeframe for commencing and completing a jury trial remains quite uncertain.

## DISCUSSION

### Defendant's Proffered Rationale for a Nonjury Trial

On this motion, defendant seeks a nonjury trial over the Government's **[*14]** objection due to the "extraordinary circumstances presented by the COVID-19 pandemic" as well as "Mr. Cohn's desire to have a speedy trial pursuant to his rights under the Sixth Amendment to the United States Constitution." DE 93 at 1. Defendant's invocation of "extraordinary circumstances presented by the COVID-19 pandemic" raises several issues which, though not fully articulated in the limited briefing of this application, are fair grounds for consideration. In this regard, the procedural context of this motion is important: it was not the defendant, but the Court, that raised the

---

[7] See, e.g., https://covid19.colorado.gov/safer-at-home/social-distancing-calculator-for-indoor-and-outdoor-events; https://covid.trendyminds.com/capacity/. These calculators provide estimates of a generalized nature; of course, a criminal trial in court presents more particularized demands and constraints.

[8] Adding other elements, such as an incarcerated defendant (requiring security personnel), parties and witnesses requiring interpreters and/or a prosecution involving more than one defendant, may render a jury trial untenable.

question of a nonjury trial with the parties. Thus, this is not a case in which the defendant is attempting to invoke a "right to select his own tribunal or the right to a speedy and public trial by a fair and impartial judge," as such a right has been firmly rejected. *United States v. Sun Myung Moon*, 718 F.2d 1210, 1217 (2d Cir. 1983). Here, the Court introduced the possibility of a nonjury trial as one method of dealing with the severe constraints imposed by the pandemic, and the defendant responded by agreeing, through counsel, to waive his right to a jury trial.

*The Defendant's Waiver of the* Sixth Amendment *Right to a Jury Trial, and the Role of the Government and the Court Therein*

As the Supreme Court recently reiterated, "[t]he [*15] Sixth Amendment promises that '[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury . . .'" *Ramos v. Louisiana*, 140 S. Ct. 1390, 1395, 206 L. Ed. 2d 583 (2020). "Among the guarantees that the Amendment provides to a person charged with the commission of a criminal offense, and to him alone, is the "right to a speedy and public trial, by an impartial jury." *Gannett Co. v. DePasquale*, 443 U.S. 368, 379, 99 S. Ct. 2898, 61 L. Ed. 2d 608 (1979). Trial by jury has been established by the Constitution as the normal and preferable mode of disposing of issues of fact in criminal cases. . . . The Constitution recognizes an adversary system as the proper method of determining guilt." *Singer v. United States*, 380 U.S. 24, 35, 85 S. Ct. 783, 13 L. Ed. 2d 630 (1965). Undoubtedly, "[a] jury trial is the most just form of adjudication in criminal prosecutions." *United States v. Lewis*, 638 F. Supp. 573 (W.D. Mich. 1986). At the same time, "[o]ur society has long recognized that

bench trials provide a fair and impartial mechanism for adjudication of criminal prosecutions." *Id.* (*citing* *Adams v. United States*, 317 U.S. 269, 279-80, 63 S. Ct. 236, 87 L. Ed. 268 (1942)).

In *Singer*, the Court noted that "a defendant can, as was held in [*Patton v. United States*, 281 U.S. 276, 50 S. Ct. 253, 74 L. Ed. 854 (1930)], in some instances waive his right to a trial by jury." *Singer*, 380 U.S. at 34; *see also Sun Myung Moon*, 718 F.2d at 1217 ("the right to trial by jury is a benefit granted an accused, which a defendant has the power to waive"). The question examined in *Singer* was whether "the effectiveness of this waiver can be conditioned upon the consent [*16] of the prosecuting attorney and the trial judge." *Singer*, 380 U.S. at 34. The requirement of consent on the part of the prosecution is embodied in Rule 23(a) of the Federal Rules of Criminal Procedure which provides that "[c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court and the consent of the government." *Singer*, 380 U.S. at 24. The Second Circuit has observed that:

the Supreme Court has stated that because of "confidence in the integrity of the federal prosecutor, Rule 23(a) does not require that the Government articulate its reasons for demanding a jury trial at the time it refuses to consent to a defendant's proffered waiver." Conclusive as that statement might appear, it does not end the matter. For the Supreme Court has also held that even though one has no right to a government benefit, such benefit may not be denied and when granted may not be conditioned or later revoked for a reason that infringes an individual's constitutional rights, especially First Amendment freedoms.

*Sun Myung Moon, 718 F.2d at 1217-18*; *compare with* DE 95 at 3 (containing the Government's argument that it has lodged a "dispositive objection" to a nonjury trial).

Indeed, the *Singer* decision upheld the procedure set forth in Rule 23(a), but noted that there "might be some circumstances **[*17]** where a defendant's reasons for wanting to be tried by a judge alone are so compelling that the Government's insistence on trial by jury would result in the denial to a defendant of an impartial trial." *Singer, 380 U.S. at 37*. These could include "situations where 'passion, prejudice * * * public feeling' or some other factor may render impossible or unlikely an impartial trial by jury." *Singer, 380 U.S. at 37-38*; *see also United States v. Caramadre, 2012 U.S. Dist. LEXIS 144280, 2012 WL 4762189 (D.R. I. 2012)* ("the government's ability to withhold consent is not absolute"); *United States v. Schipani, 44 F.R.D. 461, 463 (E.D.N.Y. 1968)* ("As the Supreme Court recently indicated in the *Singer* case, however, there may be 'some circumstances' in which the government's insistence on a jury trial would be unreasonable").

To be sure, courts have rarely overruled Government objections to nonjury trials, thus there is scattered guidance as to the application of this exception. *United States. v. Panteleakis, 422 F. Supp. 247, 248 (D.R.I. 1976)* ("There is a paucity of decisional law interpreting *Singer*"). The *Singer* formula of "situations in which passion, prejudice, public feeling or some other factor *may* render impossible or unlikely an impartial trial by jury," provides a generalized framework for such determinations. And, because Rule 23(a) requires court approval of defendant's waiver even with Government consent, cases approving consensual bench trial requests **[*18]** also

prove instructive as to situations where a bench trial may be appropriate.

Distilling the extant caselaw, it appears that in reviewing a defendant's waiver of a jury trial, courts may consider four factors: First, whether a governmental objection is made for an improper purpose, *see, e.g. Sun Myung Moon, 718 F.2d at 1217-18*. Second, whether the government's insistence on a jury trial unfairly interferes with the defendant's exercise of a separate constitutional right. *See, e.g., Lewis, 638 F. Supp. at 576-77* (ordering a bench trial over Government objection where jury trial violated defendant's religious beliefs); *cf. Simmons v. United States, 390 U.S. 377, 394, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968)* ("we find we find it intolerable that one constitutional right should have to be surrendered in order to assert another"). Third, whether the government's insistence on a jury trial implicates the *public's* right to a speedy trial. *See Zedner v. United States, 547 U.S. 489, 501, 126 S. Ct. 1976, 164 L. Ed. 2d 749 (2006)*. Fourth, whether case-specific factors, such as the nature of the evidence or the predominance of legal issues over factual issues, would render obtaining an impartial jury trial difficult or unworkable. *See, e.g. United States v. Dupree, 767 F. App'x 181, 183 (2d Cir. 2019)* (consent bench trial on stipulated facts); *United States v. Sialeu, 524 F. App'x 734, 736 (2d Cir. 2013)* ("a jury might view Sialeu's psychiatric condition unfavorably"); *United States v. Wellington, 417 F.3d 284, 286 (2d Cir. 2005)* (consent bench trial on stipulated facts); *United States v. Lauck, 905 F.2d 15 (2d Cir. 1990)* (consent bench **[*19]** trial held in trial involving improper sexual contact charges against VA mental patient defendant who "d[id] not contest the criminality of his actions" while the court made determinations regarding application of statutory elements); *Panteleakis,*

422 F. Supp at 250 (case-specific issues would have exposed jurors to a quantum of inadmissible evidence resulting in unfair prejudice; bench trial held over Government objection); Schipani, 44 F.R.D. at 463 (evidence of prior incarceration and organized crime involvement weighed in favor of bench trial over Government's objection).

These factors are examined below.

*Factor 1: The Government's Motives in Objecting to a Nonjury Trial*

In response to the defendant's application to proceed with a bench trial over its objection, the government initially and properly asserted that it "is not required to 'articulate its reasons for demanding a jury trial at the time it refuses to consent to a defendant's proffered waiver.'" DE 95 at 1-2 (quoting Singer, 380 U.S. at 37). The government nevertheless proceeded to articulate, at least in part, its rationale, as follows:

> The government's preference is to try felony criminal cases before a jury . . . Indeed, there can be no claim that the government is somehow singling out the defendant **[*20]** by declining to consent to a nonjury trial; the government is unaware of any case in recent memory in which the government has consented to a nonjury criminal trial in this district. . . . Research has revealed only one prior case,[9] in 1968, in which the government appears to have, at one point, consented to a nonjury trial in this district, though it subsequently sought

to withdraw that consent.

DE 95 at 1-2. Presumably, the "government" referred to in this passage is the United States Attorney for this judicial district, as there are countless cases nationwide in which the government has consented to bench trials, *see, e.g.,* Sialeu, 524 F. App'x at 736 (consent bench trial in S.D.N.Y.), and no national Department of Justice policy is implicated by this procedure. The problem is that, even so limiting this pronouncement, it is simply untrue.

Defense counsel provided the results of a "quick search" yielding *thirteen* Second Circuit opinions reported on Westlaw in which the United States Attorney for this district consented to bench trials in criminal prosecutions. *See* DE 96 at 1 (*citing* United States v. Sobers, 792 Fed. App'x 904 (2d Cir. 2020); United States v. Dupree, 767 Fed. Appx. 181 (2d Cir. 2019); United States v. Stewart, 2003 WL 21734681 (2d Cir. 2003); United States v. Male Juvenile, 121 F.3d 34 (2d Cir. 1997); United States v. Cefalu, 85 F.3d 964 (2d Cir. 1996); United States v. Calvert, 100 F.3d 941 (2d Cir. 1996); United States v. Romano, 938 F.2d 1569 (2d Cir. 1991); United States v. Lauck, 905 F.2d 15 (2d Cir. 1990); United States v. Marin-Buitrago, 734 F.2d 889 (2d Cir. 1984); United States v. Pagan, 714 F.2d 225 (2d Cir. 1983); United States v. Helgesen, 669 F.2d 69 (2d Cir. 1982); United States v. Fayer, 523 F.2d 661 (2d Cir. 1975); and United States v. Freeman, 498 F.2d 569 (2d Cir. 1974)). Notably, two of these cases were reported **[*21]** *in the last two years*. Through independent research, the Court has identified two additional examples of consent to nonjury trials by the United States Attorney for this district. *See* United States v. Wellington, 417 F.3d 284, 286 (2d Cir. 2005); *United States v.*

---

[9] The one prior case referenced, United States v. Schipani, 44 F.R.D. 461 (E.D.N.Y. 1968), is, notably, a case in which the Government consented to a bench trial, but later withdrew its consent regarding a retrial and the Court held a bench trial over the Government's objection.

*Ruiz-Estrella*, 362 F. Supp. 660, 661 (E.D.N.Y. 1973). And there are almost certainly more. Thus, the Government's fails in its attempt to justify its position through a purported practice of consistently withholding consent to nonjury trials.

Substantively, however, this is of small moment. The government's argument serves only to counter a charge that its objection stems from some improper motive. The law is clear that the Government is not required to articulate a reason for withholding its consent to a nonjury trial. Because this is the Government's right, no negative inference will be drawn from its invocation. At the same time, nothing prevented the Government from providing the Court with further, more accurate information about its rationale, and such arguments have been considered in rejecting motions such as this one. *Sun Myung Moon*, 718 F.2d at 1218 ("it appears that the public prosecutor elected, as was her right and based upon the reasons she gave, to have this case tried in the constitutionally preferred manner"). Ultimately, though, the defendant has not lodged an accusation **[*22]** of improper purpose, and this Court has no reason to question the presumption of "confidence in the integrity of the federal prosecutor." *Singer*, 380 U.S. at 37.

Contrary to the Government's assertions here, though, prosecutorial motive is not the only basis for overruling its objection, which is not, as suggested, "dispositive": the *Singer* exception has been applied to factors other than prosecutorial misconduct. The Court will examine those other factors.

*Factor Two: Conflicting Constitutional Rights*

Courts have considered whether a government

objection to nonjury trial results in an unfair infringement on the exercise of constitutional rights irrespective of the government's motivation in lodging such an objection. Indeed, in *Singer*, the Supreme Court anticipated situations in which "trial by jury would result in the denial to a defendant of an impartial trial" without reference to the Government's motivation in objecting to a nonjury proceeding. 380 U.S. at 37. In *Lewis*, 638 F. Supp. at 579, the district court directed that it would conduct a nonjury trial over the Government's objection based upon a showing of a religious belief prohibiting participation in jury trials. In reaching this conclusion, the court expressly disavowed any suggestion **[*23]** that "the government has withheld its consent to defendants' waiver on the basis of impermissible or unethical considerations." *Id.* Thus, the question arises whether conducting a jury trial here would conflict with the exercise of other rights by the defendant.

The first such consideration proffered by the defendant is his constitutional right to a speedy trial. It is well established that a defendant's desire for a speedy trial, standing alone, cannot provide a basis for overruling a Government objection under Rule 23(a). *Singer*, 380 U.S. at 38 (rejecting defendant's demand for nonjury trial where "petitioner gave no reason for wanting to forgo jury trial other than to save time"). Of course, while defendant's stated preference for a speedy trial cannot be the exclusive reason for granting the motion, it remains a factor to be considered.

Of far greater concern is defendant's right to testify in his own defense, and the Hobson's Choice that would be presented to defendant should he opt to testify under present

conditions.[10] It is axiomatic that, while a defendant maintains his right against self-incrimination, "[d]efendants have the right to a fair trial, which necessarily includes the right to testify on their own [*24] behalf." *United States v. Quattrone*, 441 F.3d 153 (2d Cir. 2006) (*citing Rock v. Arkansas*, 483 U.S. 44, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987)). It is this Court's view that all testifying witnesses, in order to be subject to proper cross-examination, will have to remove medical face masks while testifying. Based on present knowledge, current circumstances of the pandemic combined with this defendant's health profile presents an unacceptable risk. Taken together, these factors, at this time, could effectively rob the defendant of a meaningful opportunity, if he chose to do so, to testify on his own behalf.

Thus, conditions arising from the pandemic effectively pit this defendant's right to a jury trial against his right to testify at that trial. Such conflict presents a problem of constitutional dimension. *Simmons v. United States*, 390 U.S. 377, 394, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968) ("we find it intolerable that one constitutional right should have to be surrendered in order to assert another"). A nonjury trial permits far more flexibility to accommodate these concerns. By way of example, the Court's video system could be employed to permit the defendant to testify remotely, if he so chose, without concerns of jury prejudice that could arise from such a procedure.

---

[10] Given the potentially deadly consequences of COVID-19 to an individual with underlying health conditions, "Hobson's choice" appears to be the correct designation here. *S.E.C. v. Arias*, No. CV 12-2937 (ADS) (GRB), 2012 U.S. Dist. LEXIS 147509, 2012 WL 4849151, at *4 (E.D.N.Y. Sept. 14, 2012), *adopted by*, 2012 U.S. Dist. LEXIS 146712, 2012 WL 4849346 (E.D.N.Y. Oct. 11, 2012) (discussing distinction between Hobson's Choice and a Morton's Fork).

This factor weighs heavily in favor of conducting a nonjury trial over the Government's objection. [*25]

*Factor Three: The Speedy Trial Act and the Public Interest*

From its inception, the Supreme Court made clear that the *Singer* exception to the government consent requisite of Rule 23(a) does not apply to a defendant's demand for a speedy trial, without more. But in considering the applicability of *Singer* to trial delays, the Court must consider developing jurisprudence concerning the Speedy Trial Act of 1974, 18 U.S.C. §§ 3161-3174, through which Congress expanded upon the right of the accused under the Sixth Amendment "to a speedy and public trial." U.S. Const. Amend. VI.

In *Zedner v. United States*, 547 U.S. 489, 126 S. Ct. 1976, 164 L. Ed. 2d 749 (2006), the Court examined, and ultimately vacated, the conviction of a defendant who had "signed a blanket, prospective waiver of his rights under the [Speedy Trial] Act." *Id.* at 492. In reaching this conclusion, the Court held:

> The purposes of the Act . . . cut against exclusion on the grounds of mere consent or waiver. If the Act were designed solely to protect a defendant's right to a speedy trial, it would make sense to allow a defendant to waive the application of the Act. But the Act was designed with the public interest firmly in mind. *See, e.g.*, § 3161(h)(8)(A) (to exclude delay resulting from a continuance-even one "granted . . . at the request of the defendant"-the district court must find "that the ends [*26] of justice served . . . outweigh the best interest of the public and the defendant in a speedy trial" . . .

Case 2:20-cr-00134-JAM   Document 103   Filed 12/28/20   Page 30 of 32

Page 12 of 14
2020 U.S. Dist. LEXIS 155287, *26

As both the 1974 House and Senate Reports illustrate, the Act was designed not just to benefit defendants but also to serve the public interest by, among other things, reducing defendants' opportunity to commit crimes while on pretrial release and preventing extended pretrial delay from impairing the deterrent effect of punishment. *See* S.Rep. No. 93-1021, pp. 6-8S.Rep. No. 93-1021, pp. 6-8 (citing "bail problems," offenses committed during pretrial release, and the "seriously undermined ... deterrent value of the criminal process" as "the debilitating effect[s] of court delay upon our criminal justice system"); H.R.Rep. No. 93-1508, p. 8, U.S.Code Cong. & Admin.News 1974, pp. 7401, 7402 ("The purpose of this bill is to assist in reducing crime and the danger of recidivism by requiring speedy trials . . ."). The Senate Report accompanying the 1979 amendments to the Act put an even finer point on it: "[T]he Act seeks to protect and promote speedy trial interests that go beyond the rights of the defendant; although the Sixth Amendment recognizes a societal interest in prompt dispositions, it primarily **[\*27]** safeguards the defendant's speedy trial right-which may or may not be in accord with society's." S.Rep. No. 96-212, p. 29S.Rep. No. 96-212, p. 29; see also id., at 6; H.R.Rep. No. 96-390, p. 3 (1979), U.S.Code Cong. & Admin.News 1979, 805, 807. Because defendants may be content to remain on pretrial release, and indeed may welcome delay, it is unsurprising that Congress refrained from empowering defendants to make prospective waivers of the Act's application. *See* S.Rep. No. 96-212S.Rep. No. 96-212, at 29 ("Because of the Act's emphasis on that societal right, a defendant ought not be permitted to waive rights that are not his or hers alone to

relinquish").

Zedner, 547 U.S. at 500-02. In considering the delays that would necessarily arise from conducting a jury trial in light of the circumstances of this case, current knowledge of the dangers of the pandemic and the defendant's health risks, this Court is compelled to balance the public's right to speedy trial of this matter against the Government's preference for a jury trial.

Weight accorded to the public's speedy trial rights here are heightened by the intense public interest in this case and its resolution. One would expect that the allegations here — charges that **[\*28]** a government official recruited by a firm under investigation by the SEC to work as its compliance officer illegally acquired and transmitted sensitive investigative information to that firm — would naturally generate significant public attention. This interest was stoked — nearly eight months after the commencement of the prosecution — by release of information by the government showcasing this prosecution as a cornerstone effort to protect the investing public and safeguard confidential investigative data. As a result, and not surprisingly, this case has attracted domestic and international press attention. *See, e.g.*, Tokar, "Private-Equity Firm Compliance Chief Indicted for Sharing Materials From SEC Investigation," *Wall Street Journal*, Oct. 23, 2019. The public interest in this case not only extends to its facts and subject matter, but also to the delays in bringing it to a conclusion, the effect of COVID-19 on those delays, and the efforts by the Court and the parties to manage these issues. *See, e.g.*, Wester, J. "'Close to Normal'?: Jury Trials Set for Autumn in NYC Federal Courts Face Bids to Adjourn or Move to Video," *New York Law Journal*, Aug. 19, 2020

(discussing instant **[\*29]** motion); Shepard, Smith, Edwards & Kantas LLP, "Trial of EX-GPB Capital Holdings CCO Michael Cohn is Delayed Over COVID-19 Concerns," May 20, 2020 (available at https://www.investorlawyers.com/blog/ex-gpb-capital-holidngs-cco-trail-delayed/); Stone, Jeff, "Trial Delayed for Former SEC Watchdog Accused of Abusing Computer Access," May 1, 2020 (available at https://www.cyberscoop.com/sec-computer-hacking-trial-delayed/). This intense press attention concerning the trial and, perhaps more unusually, delays in its resolution, are emblematic of the public interest in this case, and reinforce the importance of the public interest in a speedy trial of this matter, which has now been pending for a year and a half.

In its response, the Government asserts "that conducting a trial without a jury poses many of the same safety risks as a jury trial." DE 95 at 3. While true, the argument misses the mark: the increased number of individuals involved in jury selection and trial, and the invariably longer amount of time consumed in a jury trial, greatly increase both the disease transmission risk and the space and resources required. While not insurmountable, the challenges of conducting a trial at **[\*30]** the present time multiply when factoring in a jury proceeding. This is particularly true of a case projected to take several weeks if tried before a jury and described by the prosecutors as a "complicated, document-intensive case." *Id.* In its papers, "the government acknowledges that the current COVID-19 pandemic poses unique logistical challenges that may delay jury trials, including in this case," but claims that "the defendant has not articulated any compelling individual circumstances that differentiate him from the many other defendants whose cases remain pending." *Id.* at 2.

But, as demonstrated herein, this case has a number of distinctive characteristics — including its inherent complexity and length, and the defendant's age and health, that make a jury trial in this case more difficult than in many other matters under present circumstances. While the Court has, and will continue, to grapple with these problems, at this writing, it remains unclear when a jury trial could commence in this particular case, and even if started, whether that trial would be afflicted by inordinate delay. As such, the public interest in a speedy trial would be far better served by a nonjury trial, which could **[\*31]** commence sooner, and be more certain of successful conclusion under present circumstances.[11]

Thus, this factor weighs in favor of overruling the Government's objection for a nonjury trial.

### Factor Four: Other Case-Specific Factors

Litigation in this matter has already identified a potential source of inadmissible evidence to which jurors would be exposed arising from an intertwined legal issue. In denying the defendant's motion to dismiss the computer access charge in this case, Judge Bianco ruled that, in his view, the Government may have misconstrued the holding of *Valle*, cautioned that "the government better evaluate its proof" in light of the ruling, and added that "waiting for a Rule 29 motion makes no sense" as "[i]t's only potentially going to confuse a jury . . . ." DE 64 at 29-30. Nothing on this record

---

[11] For avoidance of doubt, this decision should not be construed as a holding that there has been a violation of the Speedy Trial Act. To date, it appears that time has been properly excluded under the Act. However, given the uncertainty of commencing a jury trial in this case, the public's right to a Speedy Trial is sufficiently implicated as one of several considerations mitigating in favor of commencing a nonjury trial over the Government's objection.

suggests that the government has conducted such an evaluation, or has changed its position in the prosecution. To the contrary, the Government has added yet another legal theory: theft of public property, which is subject to pending motions. Thus, the Court already determined that the government's case could well expose a jury to inadmissible and confusing evidence.

Defense counsel has also **[*32]** raised another source of potential prejudice for a jury at this time: defendant's health conditions —which the government has not contested — requires that he be masked throughout the proceeding, posing some danger of jury prejudice.[12] To be sure, this risk would be ameliorated by the fact that all trial participants — other than the testifying witness — will be wearing masks.

Standing alone, these two factors would not require a jury trial, as it seems likely that any prejudice could be resolved through corrective instructions. Nevertheless, the potential for jury prejudice from these factors weighs in favor of a nonjury trial, and must be considered in conjunction with the remaining factors.

## CONCLUSION

Taken together, and balancing the various interests, the Court finds that the Government's interest in objecting to a jury trial is far outweighed by the factors enumerated and discussed above. As such, that objection is overruled, and this matter will, upon completion of a written jury trial waiver after appropriate inquiry of the defendant in open court, be set for a nonjury trial before the undersigned. The parties are directed to appear before the undersigned in person on September **[*33]** 8, 2020, so that these matters can be completed and all pretrial issues may be resolved. A nonjury trial will commence shortly thereafter.

Dated: Central Islip, New York

August 26, 2020

/s/ Gary R. Brown

Gary R. Brown

United States District Judge

---

**End of Document**

---

[12] Defense counsel raised this to request a curative jury instruction.

Emily Doringer