PHILLIP A. TALBERT
Acting United States Attorney
HEIKO P. COPPOLA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

DAVID LIM
Trial Attorney
US Department of Justice
National Security Division
Washington, DC

Attorneys for Plaintiff
United States of America

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TANG JUAN,<br>(aka Juan Tang)<br><br>Defendant. | CASE NO. 2:20-CR-000134 JAM<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY<br><br>DATE: April 19, 2021<br>TIME: 2:00 p.m.<br>COURT: Hon. Allison Claire |

## I.     INTRODUCTION

On March 22, 2021, defendant Tang Juan ("Tang") filed motion to compel the United States to provide discovery. ECF 118. Because the materials sought do not fall within the bounds of either Federal Rule of Criminal Procedure 16 and/or *Brady v. Maryland* and its progeny, the Court should deny Tang's motion.

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     Factual History

1.     The Charges

Tang applied for a United States Non-Immigrant J-1Visa ("NIV") on or about October 28, 2019,

which was issued on or about November 5, 2019.  According to the Department of State website, a J-l visa is a non-immigrant document "for individuals approved to participate in work-and study-based exchange visitor programs."  Department of State records reflect that Tang intended to conduct cancer treatment-method research at the University of California, Davis ("UCD").  On or about December 27, 2019, Tang entered the United States through San Francisco International Airport.

On Tang's visa application, under the Additional Work/Education/Training section, Tang answered "no" when responding to the question: "have you ever served in the military?"  Similarly, Tang also responded in the negative to questions related to communist party membership and whether she had any special chemical or biological experience.  The FBI's investigation determined Tang's answers to these questions were false.

Specifically, with respect to Tang's military service, the FBI discovered through an internet search a photograph of Tang wearing a People's Liberation Army – Air Force ("PLAAF") uniform bearing the insignia of the Civilian Cadre, attached to a Chinese news article about a forum in Xi'an, China published on or about April 14, 2019. Tang was listed as one of four experts invited to the forum and was further introduced in the article, wearing what appeared to be a military uniform, and listing her employment as an associate researcher at Air Force Military Medical University, Molecular Medicine Translation Center.  Members of the PLAAF Civilian Cadre are considered active duty military members.  Additional open source internet searches revealed other articles about Tang and listed her affiliation with Air Force Military Medical University/Fourth Military Medical University and China People's Liberation Air Force Military Medical University, Molecular Medicine Translation Center.

On June 20, 2020, FBI agents interviewed Tang at her residence in Davis, California prior to the execution of a search warrant.  Tang appeared to be moving out of her residence when the FBI made contact. Tang was not taken into custody during the interview nor was she restrained in any fashion. Tang voluntarily provided her passport to the agents for identification purposes.  Although they had a search warrant and could have seized the passport at that time, the agents did not do so.  The interview was not recorded.

During the interview, Tang admitted to personally preparing and submitting the NIV application but denied serving in the Chinese military and adamantly denied being a member of the Civilian Cadre.

Tang claimed that wearing a military uniform was required for attendance at FMMU because it was a military school.  Tang further stated that she didn't know the meaning of the insignia on the PLAAF uniform and claimed that the majority of students at FMMU had the same insignia and ribbons.  Tang was advised that it was a crime to lie to an FBI agent.  Upon completion of the interview, FBI agents executed the search warrant at Tang's residence, seizing electronic media and her Chinese passport.  Agents found Tang's J-1 visa within her Chinese passport.

During a later review of the electronic media evidence seized from Tang's residence, agents discovered a myriad of different photographs of Tang wearing military uniforms.   Agents also found a video depicting a presentation conducted by Tang in which she is wearing what appears to be the same PLAAF military uniform found in their open source search, and she begins the presentation with a salute.  The video presentation was recorded within days of Tang's entrance into the United States on the J-1 visa.

Agents also found evidence of Tang's affiliation with the Chinese Communist Party. This consisted of an application to apply for government benefits in which Tang stated that she was a member of the Communist Party.  Agents discovered Chinese military documents that detailed Tang's research related to antidotes for biological agents.  Further review and analysis of Tang's electronic media revealed her initial military enlistment date and a letter dated in May 2020 to the China Scholarship Council and PRC Consulate General personnel indicating that her research in the United States was concluded and requesting to return to China to resume her military duties.

Following execution of the search warrant, FBI agents learned that Tang, along with her mother and daughter, had fled to the Chinese consulate in San Francisco.  Tang remained in the Chinese consulate for approximately a month prior to her eventual arrest.  In the evening hours of July 23, 2020, at approximately 9:45 p.m., FBI agents arrested Tang and later transported her to Sacramento pursuant to a criminal complaint for violation of 18 U.S.C. § 1546(a).

2.      Discovery

Since Tang's indictment, the United States has produced well over 2000 pages of discovery that included: law enforcement reports, notes, photographs, documents, videos, and a scholarly treatise entitled "The PLA as an Organization V2.0" related to the structure of Chinese People's Liberation

Army.  The United States provided defense counsel with an electronic copy of Tang's devices following their seizure by the FBI pursuant to a search warrant.  Included within the discovery provided were the search warrant affidavit and the criminal complaint, both of which provide sufficient details as to Tang's Chinese military membership. Consistent with its continuing obligations, the production of discovery in this matter is on-going, with the United States providing unredacted versions of documents and reports, requesting that the State Department designate an appropriate witness to testify at trial regarding the NIV process and the materiality of Tang's false statement on her via application, as well as making available for Tang's review discovery from two similar pending cases in the Central and Northern Districts of California (i.e. *United States v. Guan Lei* , C.D. Cal. Case No. 8:20-cr-00127-MWF and *United States v. Chen Song*,  N.D. Cal. Case No.  3:21-CR-011 WHA) to ameliorate any potential *Brady/Giglio* concerns.  Like Tang, Song Chen is alleged to be a member of the PLA civilian cadre.

The United States and Tang's counsel have informally discussed Tang's discovery letter dated November 12, 2020, the bulk of which contains requests for materials outside the ambit of Fed.R.Crim.P. 16 ("Rule 16") and/or *Brady* and its progeny.  Moreover, the United States has worked diligently to un-redact portions of the discovery provided by the FBI and other federal agencies.  Furthermore, the United States expects to make discovery from two additional pending out-of-district cases available (i.e. *United States v. Zhao Kaikai,* S.D. In. Case No. 1:20-cr-187-JRS-TAB and *United States v. Wang Xin*, N.D.Cal. Case No. CR 20-251 JD).

The United States anticipates providing discovery related to expert testimony in compliance with the Federal Rules of Evidence, well in advance of the current July 12, 2021 jury trial date.  The State Department is in receipt of the government's request for a witness to testify as to the materiality of Tang's false statement on her J-1 visa application and the application process.  The United States will also provide discovery pursuant to the *Jencks* Act prior to trial.

## B.   Procedural History

This Court issued a sealed criminal complaint and arrest warrant in the above-entitled case on June 26, 2020 alleging visa fraud in violation of 18 U.S.C. § 1546.  ECF 1.  Tang was arrested pursuant to the complaint on July 23, 2020.  Tang was ordered detained as a flight risk during her first appearance before the Court on July 27, 2020.  ECF 6.  The Court heard and denied Tang's motion for bail review

on July 31, 2020.  ECF 15.  A grand jury returned a two-count indictment charging Tang with visa fraud and making false statements to the FBI in violation of 18 U.S.C. §§ 1001 and 1546 on August 6, 2020.  ECF 18.

On August 24, 2020, Tang filed a second motion for bail review alleging a change in circumstances and re-addressing factual explanations discussed in prior filings by the United States.  ECF 27.  U.S. Magistrate Judge Newman heard Tang's second motion for bail review and ordered Tang's release subject to certain conditions over the government's objection.  ECF 34, 37.   The District Judge denied the United States' motion to stay release and its subsequent motion to revoke Judge Newman's pretrial release order.  ECF 51, 67.

On October 23, 2020, Tang filed another motion to modify the conditions of release, which the United States opposed, and the magistrate judge denied.  ECF 72, 83, 87, 90.  The District Judge subsequently affirmed the Magistrate Judge's denial of Tang's appeal.  ECF 91, 99.

On December 8, 2020, because Tang demanded a speedy trial, the Court set a jury trial date for February 8, 2021.  ECF 100.  The United States moved to exclude time, which was subsequently granted in a written order by the Court on January 5, 2021.  ECF 101, 109.  In its order, the Court also set a status conference for April 6, 2021 and a new jury trial date for July 12, 2021.  ECF 109.

### C.    Tang's Discovery Motion

On March 22, 2021, Tang filed separate motions to compel discovery and for a bill of particulars. ECF 117, 118.  A hearing on these motions is presently scheduled for April 19, 2021.  ECF 117, 118.

In her motion to compel and pursuant to Rule 16 and *Brady*, Tang claims she is entitled to discovery from a broad range of federal agencies, including but not limited to the State Department, the Defense Department,  and the US intelligence community (USIC), among others.  Because the bulk of the materials sought are outside the scope of either Rule 16 or *Brady* and its progeny, the Court should deny Tang's motion.  Because the United States has and continues to comply with its obligations under Rule 16 and *Brady*, the Court should deny the remainder of Tang's request for discovery.

### III.   ARGUMENT

**A.   Applicable Law**

       1.      Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*

Under Rule 16(a)(1)(E), a criminal defendant is entitled to discovery of materials "within the possession, custody, or control of the government," which are "material to preparing the [defendant's] defense." Fed. R. Crim. P. 16(a)(1)(E).  Defendants are entitled only to those materials that are relevant to the defendants' response to the government's case-in-chief.  *United States v. Armstrong*, 517 U.S. 456, 462 (1996) ("[W]e conclude that in the context of Rule 16 'the defendant's defense' means the defendant's response to the Government's case in chief."); *accord United States v. Chon*, 210 F.3d 990, 995 (9th Cir. 2000) (quoting *Armstrong*, 517 U.S. at 462).[1]  To obtain discovery under Rule 16, a defendant must make a *prima facie* showing of materiality.  *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990) (citing *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir. 1984); *United States v. Cadet*, 727 F.2d 1453, 1468 (9th Cir. 1984)). "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the defense." *Mandel*, 914 F.2d at 1219 (citing *Little*, 753 F.2d at 1445; *Cadet*, 727 F.2d at 1466–68); *see United States v. Liquid Sugars, Inc.*, 158 F.R.D. 466, 471 (E.D. Cal. 1994) ("[R]equests which are designed to generally cast for impeachment material . . . are not material. Such requests are instead simply speculative inquiries without basis in fact to believe that the information acquired will be significantly helpful.").  As the Ninth Circuit noted in *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013) Rule 16 is "broader than *Brady* because  "[i]nformation that is not exculpatory or impeaching may still be relevant to developing a possible defense."

Moreover, as the Ninth Circuit noted in *United States v. Cano*, 934 F.3d 1002, 1023 (9th Cir. 2019) (internal citations omitted) "under both *Brady* and Rule 16, the government 'has no obligation to produce information which it does not possess or of which it is unaware.' It has an obligation to turn

---

     [1]  At the time of *Armstrong* and *Chon*, that provision was numbered 16(a)(1)(C). Rule 16 was renumbered in 2002.

over only material, exculpatory or otherwise helpful to the defense, that it has in its possession."  The

*Cano* court went on to note that, "[b]ecause prosecutors are in a 'unique position to obtain information

known to other agents of the government," they have an obligation to "disclos[e] what [they] do[ ] not

know but could have learned.' *Carriger v. Stewart*, 132 F.3d 463, 480 (9th Cir. 1997) (en banc); *see also*

*Kyles v. Whitley*, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (describing how the

"individual prosecutor has a duty to learn of any favorable evidence known to [those] acting on the

government's behalf").

> 2.    Materials held by other federal agencies

        In the Ninth Circuit, disclosure of information held by other federal agencies under Rule 16 is

typically dependent on whether the prosecution has both "knowledge of and access to" those materials.

*United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989).  Generally, the "prosecutor will be deemed

to have knowledge of and access to anything in the possession, custody or control of any federal agency

participating in the same investigation of the defendant."  *Id*.  The Ninth Circuit, construing

"government" broadly, noted in *Bryan* that "we agree that a federal prosecutor need not comb the files

of every federal agency which might have documents regarding the defendant in order to fulfill his or

her obligations under [Rule 16].  *Id*.  The Ninth Circuit clarified *Bryan's* holding in *United States v.*

*Santiago*, 46 F.3d 885, 894 (9th Cir. 1995) pointing out that *Bryan* rejected a purely mechanical

application of agency investigative involvement, and held that the critical distinction was whether the

government had knowledge of and access to the requested materials in the context of the United States

Attorney and the Bureau of Prisons (both of which subordinate agencies of the Department of Justice).

Utilizing this standard, the Ninth Circuit has concluded that "the prosecution is deemed to be in

possession of agency files where the agency involved is charged with administration of the statute

allegedly violated and the agency consulted with the prosecutor in the steps leading to prosecution.

*United States v. Wood*, 57 F.3d 733, 737 (9th Cir.1995) (Food and Drug Administration files found

to be in government's possession for purposes of prosecution under the Federal Food, Drug and

Cosmetic Act).

> **B.    Tang fails to demonstrate materiality for the information sought**

        As a preliminary matter, Tang's discovery requests are overbroad and do not meet the materiality

standard mandating production by the United States.  In essence, Tang's overbroad definition of "government" would conceivably require the prosecution to go on a fishing expedition across numerous federal agencies that did not participate in the FBI's investigation.  In support of her assertion that she is entitled to the materials sought, Tang engages in grand speculation as to potential involvement of the various agencies and as to what materials those agencies might possess.

Tang's discovery requests contain no categories of exculpatory discovery in defending against a prosecution for visa fraud or false statements in violation of 18 U.S.C. § 1546(a) and 18 U.S.C. § 1001. Properly framed, defendant's motion to compel discovery fails to demonstrate materiality within the meaning of Rule 16.  "It is not enough to show that the discovery has 'some abstract logical relationship to the issues in the case.'"  *United States v. Dossman*, 2006 WL 2927484, *2 (E.D. Cal. 2006) (quoting *United States v. Ross*, 511 F.2d 757, 762–63 (5th Cir. 1975), *cert denied*, 423 U.S. 836 (1975)). Moreover, "[n]either a general description of the information sought nor conclusory allegations of materiality suffice."  *Dossman*, 2006 WL 2927484, at *2 (quoting *United States v. Santiago*, 46 F.3d 885, 894 (9th Cir. 1995)).

Like the defendant in *Dossman*, here, Tang "must prove materiality before becoming entitled to the evidence under Rule 16; [she] cannot just guess at what the evidence might show and contend that it may be material if [her] guess is correct."  *Dossman*, 2006 WL 2927484, at *2.  Defendant's current requests consist of "conclusory allegations that fail to establish that the information [she] seeks is material."  *Id.*

Ultimately, Tang is fundamentally dissatisfied that the FBI's investigation was premised on independent research using open-source tools, information, and resources.  However, Tang's dissatisfaction with the FBI's investigation and speculation that there must be "official government information" as to the current charges held by other federal agencies not involved in the investigation does not absolve her of making the required prima facie materiality showing.  Other than conclusory statements that the discovery sought is relevant and material to preparing her defense and blanketly invoking *Brady* and its progeny, Tang provides no factual basis to support her assertions.

1.    Discovery Items 1-7

Tang casts a broad net with respect to Items 1-7 generally requesting "any and all" reports,

analyses, photographs, or documents tending to support the prosecution's contention that she was a member of the Chinese military from, "including but not limited to" the Department of Justice (DOJ), the Federal Bureau of Investigation (FBI), the Department of Defense (DOD), the Department of State (DOS), the Central Intelligence Agency (CIA), the Defense Intelligence Agency (DIA) , and US Customs and Border Protection (CBP).

The United States has provided those materials to which it as access and that are available from DOJ and FBI.  DOD, CIA, DIA, CBP, DOS and other unnamed federal agencies, did not participate in the investigation or subsequent charging of the defendant.  To that extent, any information that might be possessed by these agencies related to Items 1-7 cannot reasonably be described as being within "the knowledge of or access to" the prosecution team, and under the holdings of *Bryan*, *Santiago*, and *Cano*, the government is not obligated to make any further inquiry of these agencies for discovery purposes. Nor does *Brady* or its progeny require further inquiry.

Further the facts of *United States v. Wood*, 57 F.3d 733 (9th Cir.1995) are distinguishable from the present case. Even though the FBI consulted with a DOS representative as to the materiality of Tang's misrepresentation of her military status on her J-1 visa application and later obtained documents that have been provided to Tang, the prosecution should not be required to comb through DOS files for all of the information sought in Items 1-7.  The same is true of CBP, which has only provided a limited number of documents in this case.  Unlike the FDA in *Wood*, neither DOS nor CBP sought Tang's prosecution and their roles in this case have been relatively limited.   Moreover, in *Wood*, the prosecution was actually aware of and disclosed the existence of the certain documents on the record which were not provided.  Such is not the case here.  Without conceding, the most Tang might be entitled to is evidence related to the impeachment of the particular witness DOS designates for trial testimony as to the J-1 visa process and the materiality of her false statement regarding her military service.  More to the point, absent a showing of materiality, it would be highly unusual for this Court to order the government to produce the training materials and records of a consular agent when it does not do so for law enforcement agents that regularly testify before it.  Although the FBI consulted a DOS DSS agent during the preliminary stages of its investigation, that agent will not be a witness at trial.  To that extent, the government is not obligated to provide any further discovery other than which has been

provided.

Additionally, Tang's attempts to bootstrap other federal agencies into the prosecution team on the basis of National Security Division AAG John Demers' statements to the press about these cases are equally without merit.  It is not surprising that AAG Demers would comment on the four charged cases in the same press release given their similarities and vow continued investigation.  Likewise, the mission statement of DOJ's National Security Division wherein it discusses the necessity of interagency coordination, does not automatically convert the remaining agencies into participants in this investigation.   Indeed Tang presents no authority that suggests otherwise.  Furthermore, Tang conflates arguments made during the course of detention hearings (which are focused on risk of flight) with what the government's evidence might be at trial.  As Tang recognizes, notwithstanding their similarities, these cases were not charged as conspiracies.

   2.  Discovery Items 8-21

The Court should also deny Tang's motion to compel discovery as to discovery items 8-21.

- Items 8, 9 and 20:  The United States has already provided Tang's statements and the documents intended to be utilized in its case in chief as demanded by items 8 and 9. The United States has previously provided the handwritten notes of the supervisory special agent who translated during Tang's interview on June 20, 2020 pursuant to Item 20.

- Item 10:  The United States construes Item 10 to be a request for information related to forensic or scientific examinations, which have not been conducted in this case.

- Items 11 and 19:  The United States anticipates further discussions with Dr. James Mulvenon and/or Mr. Dennis Blasko.  Both individuals were acknowledged in the treatise "The PLA as an Organization V2.0" which was previously provided in discovery.  Both individuals have been publicly noticed as expert witnesses in *United States v. Song Chen* (N.D. Cal. Case No.  3:21-CR-011 WHA) who, like Tang, is alleged to be a PLA civilian cadre member.  Should the United States call one or both individuals as an expert at trial, the United States expects that both will testify consistently with the reports prepared in the *Song* case and can be found in Volume 8 of the NDCA's discovery production which has been made available to Tang.  Moreover, should the United States call one or both

individuals as an expert at trial, the United States will provide reports specific to this case when available and will comply with the requirements Federal Rules of Evidence related to expert testimony.  Additionally, the United States expects to call the FBI special agent who provided contemporaneous translations during Tang's interview and the FBI linguist whose translations of documents found in Tang's possession were previously provided. The United States will provide information consistent with the Federal Rules of Evidence for these individuals.  Because Tang has not identified why the additional information she seeks are material or exculpatory, the United States is not obligated to produce them and she is welcome to cross-examine each witnesses as to their training and experience at trial.

- Item 12:  The United States has provided numerous items within its possession that relate to Tang's military status.  Some of these items were taken from Tang's electronic media and the FBI's research, including, but are not limited to: photographs of Tang wearing PLA and PLAAF uniforms, a video depicting Tang wearing a PLAAF uniform and saluting before given a presentation, various documents in Tang's possession that indicate her military membership, and the scholarly treatise about the PLA  discussed above.  The United States has also provided information taken from the Chinese Ministry of Defense website which indicates that civilian cadre members are considered active military members.  The United States reserves the right to provide additional evidence about Tang's military status as it becomes available.

- Items 14, 15, and 21:  At the prosecution's request, a representative of the U.S. State Department Visa Office ("State Department") reviewed Tang's memorandum to compel the production of discovery.  Based on the prosecution's request, the State Department produced certain documents, which the prosecution will produce to Tang's counsel. Moreover, the State Department is in receipt of the prosecution's request to designate a witness to testify as to the materiality of Tang's false statements at trial, currently scheduled for July 12, 2021.  In response, the State Department has represented to the prosecutors that they will indeed designate such witness shortly.  Moreover, because

Tang has not identified why the materials outlined in these items are either material or exculpatory, she is welcome to cross-examine the State Department's designated representative as to these issue at trial.  The United States does not presently intend to call at trial the Diplomatic Security Special Agent referred to in either the criminal complaint or search warrant affidavit.

- Item 16:  The United States has provided unredacted versions of the bulk of the law enforcement reports specifically requested by Tang.  Pursuant to discussions between Counsel for the parties and because the information pertinent to Tang was already unredacted, the request for a fully unredacted version of Bates range 987-1082 has been withdrawn.

- Item17:  As it has done with the *Guan* and *Song* cases, the United States expects to make discovery from *United States v. Wang Xin* (N.D. Cal. Case No. CR 20-251 JD) available for Tang's review, upon the Northern District of California's securing an appropriate protective order.  However, based on the undersigned's conversations with both the assigned AUSA in San Francisco and CBP counsel, it does not appear that Wang made any statements related to Tang during his interview.

- Item 18:  An unredacted version of Tang's CV is available in the electronic copy of discovery from her devices provided at the beginning of this litigation.

## IV.      CONCLUSION

Because Tang does not meet the materiality threshold under Rule 16, she is not entitled the additional discovery she seeks and the United States is not obligated to make inquiries of the agencies that did not participate in the FBI's investigation.  Tang's motion for discovery should be denied.

Dated:  April 5, 2021

PHILLIP A. TALBERT
Acting United States Attorney


By:  /s/ HEIKO P. COPPOLA
HEIKO P. COPPOLA
Assistant United States Attorney