Malcolm Segal, SBN 075481
Emily E. Doringer, SBN 208727
**SEGAL & ASSOCIATES, PC**
400 Capitol Mall, Suite 2550
Sacramento, CA  95814
Telephone: (916) 441-0886
Facsimile: (916) 475-1231
msegal@segal-pc.com

Thomas A. Johnson, SBN 119203
**Law Office of Thomas A. Johnson**
400 Capitol Mall, Suite 2560
Sacramento, CA 95814
Telephone: (916) 442-4022
taj@tomjohnsonlaw.com

Patrick Wong, SBN 241740
**Patrick Wong, Esq.**
145 El Camino Real
Menlo Park, CA 94025-5234
Telephone: (650) 391-5366
patrick@wong.law

Attorneys for Defendant
JUAN TANG

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TANG JUAN,<br>aka Juan Tang,<br><br>Defendant. | Case No: 2:20-CR-00134 JAM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT JUAN TANG'S MOTION TO SUPPRESS EVIDENCE**<br><br>Date:   TBD<br>Time:   TBD<br>Crtrm:  6, 14th Floor<br>Judge:  Hon. Judge John A. Mendez |

1

## TABLE OF CONTENTS

Page(s)

2

3    I.    Introduction................................................................1

4    II.   Factual Background ..................................................2

5    III.  Argument ...................................................................4

6          A.    The Affidavit Fails to Establish Probable Cause by Relying on
                 Unverified, Open-Source Information............................4

7
          B.    The Warrant Authorized an Overbroad General Search and
8                Seizure of All of Dr. Tang's Electronic Devices and Media ......... 10

9    IV.   Conclusion............................................................ 15

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memo Points & Authorities ISO Defendant Juan Tang's Motion to Suppress Evidence

# TABLE OF AUTHORITIES

**Cases**                                                                    Page(s)

*Andreson v. Maryland*, 427 U.S. 463 (1976) ................................................... 14

*Brinegar v. United States*, 338 U.S 160 (1949) ................................................. 4

*Coolidge v. New Hampshire*, 402 U.S. 443 (1971) ........................................... 10

*Doe v. Broderick*, 225 F.3d 440 (4th Cir. 2000) ............................................... 10

*Franks v. Delaware*, 438 U.S. 154 (1978) ........................................................ 8

*Illinois v. Gates*, 462 U.S. 213 (1983) ........................................................ 2, 4, 9

*In re Cunnius*, 770 F. Supp. 2d 1138 (W.D. Wash. 2011) ................................. 13

*Millender v. County of Los Angeles*, 620 F.3d 1016 (9th Cir. 2010) ................ 10

*Miranda v. Arizona*, 384 U.S. 436 (1966) ......................................................... 1

*Payton v. New York*, 445 U.S. 573 (1980) ....................................................... 10

*Segura v. United States*, 468 U.S. 796 (1984) ................................................... 4

*United States v. Alvarez*, 358 F.3d 1194 (9th Cir. 2004) .................................... 8

*United States v. Clark*, 31 F.3d 831 (9th Cir. 1994) ........................................... 8

*United States v. Gifford*, 727 F.3d 92 (1st Cir. 2013) ......................................... 9

*United States v. Glover*, 755 F.3d 811 (7th Cir. 2014) ........................................ 9

*United States v. Kow*, 58 F.3d 423 (9th Cir. 1995) ........................................... 13

*United States v. Leon*, 468 U.S. 897 (1984) .................................................... 2, 9

*United States v. Luong*, 470 F.3d 898 (9th Cir. 2006) ........................................ 9

*Unites States v. Perkins*, 850 F.3d 1109 (9th Cir. 2017) .................................... 8

*United States v. Spilotro*, 800 F.2d 959 (9th Cir. 1986) .................................... 11

*United States v. Tamura*, 694 F.2d 591 (9th Cir. 1982) .................................... 13

Memo Points & Authorities ISO Defendant Juan Tang's Motion to Suppress Evidence

1

## TABLE OF AUTHORITIES

2

**Cases**                                                              Page(s)

3

*United States v. Walser*, 275 F.3d 981 (10th Cir. 2001) ................................... 14

4

*United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996) ..................................... 9

5

*United States v. Whitney*, 633 F2d 902 (1984) ...........................................2, 10

6

*Warden v. Hayden*, 387 U.S. 294 (1967) .......................................................... 10

7

8

**Statutes**

9

18 U.S.C §1546(a) ....................................................................................................5

10

11

**Misc.**

12

U.S. Constitution, Amendment Four........................................................... 4, 10

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Memo Points & Authorities ISO Defendant Juan Tang's Motion to Suppress Evidence

1

## I.    INTRODUCTION

2    On June 20, 2020, FBI agents executed a search warrant at Dr. Tang's 800

3  square foot apartment residence in Davis, California.  The warrant, obtained

4  earlier that day with telephonic approval, was supported by a single affidavit by an

5  FBI Agent.  Prior to the execution of the warrant, two FBI agents, including the

6  affiant, Agent Dilland, gained entrance into the apartment, leaving the other

7  agents in a concealed location and ready to conduct the search.  The two agents

8  identified themselves, secured Dr. Tang's passport, and interrogated her about

9  her background and work in China, her visa application, and her role, if any, in the

10  Chinese military, without advising her of her rights, and after directing her mother

11  and young child to sit on a bare mattress in the corner of the room.[1]  The agents

12  did not reveal that they had a search warrant until after they had concluded the

13  interrogation.

14    Then, additional agents dressed in street clothes entered the apartment at

15  around 4:45 pm and began systematically photographing and searching the

16  approximately 800 square feet apartment.  Dr. Tang, her mother, and her young

17  daughter were instructed to step outside and stay outside while the search was

18  conducted, during which the agents took approximately 120 photographs.

19    In addition to the passport, which the two agents had already taken "for

20  identification," the seizure team took Dr. Tang's laptop, cell phone and external

21  drives.  Since it was not described in the warrant, the agents asked Dr. Tang's

22  mother to consent to the seizure of her cell phone but, since it was the family's

23  only means of communication, the family demurred and the agents left it.

24    Other than referencing an investigation the FBI was conducting of another

25  scientist from China, the affidavit in support of the warrant presented the

26

_____

[1] Dr. Tang has filed a companion motion to suppress statements made during this
27  interrogation as the agents failed to advise her of her constitutional rights as required by
*Miranda v. Arizona*, 384 U.S. 436, 467 (1966).

28

Memo of Points & Authorities ISO of Defendant Juan Tang's Suppress Evidence

Magistrate Judge with only unverified, open-source information obtained from the internet and failed to demonstrate why that information was reliable and should be credited.  There was no probable cause for the authority granted to search for evidence of visa fraud because the affiant failed to provide reliable facts demonstrating that the offense occurred or that evidence of that offense would be found at Dr. Tang's residence.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Moreover, the affidavit also failed to set forth probable cause to believe that evidence of any crime would be located on Dr. Tang's electronic devices and media.  *United States v. Whitney*, 633 F2d 902, 907 (1984).  And the search and seizure of any and all of Dr. Tang's electronic devices and media was unreasonably and unconstitutionally overbroad since it was based on surmise and a wholly unrealistic and unwarranted opinion, unrelated to demonstrable reality. These many deficiencies are so apparent that reliance on the warrant was objectively unreasonable.  *United States v. Leon*, 468 U.S. 897, 922-23 (1984).

## II.    FACTUAL BACKGROUND

As stated in companion motions, Dr. Juan Tang is an oncology researcher with a PhD in Cellular Biology.  A citizen of the Peoples Republic of China, she applied for and was granted a visa for entrance into the United States to work in a grant program focused on cancer research at the University of California, Davis. Dr. Tang, her husband, her mother, and her young daughter, arrived in the United States in December of 2019.  Dr. Tang rented a small, 800 square foot student apartment residence in Davis, where she lived with her mother and daughter and from which she was moving at the time of the search because her work in the oncology study was derailed by the closure of the lab because of the COVID-19 pandemic.

Based on their inquiries about an entirely different Chinese scientist in the San Francisco FBI office, the Sacramento office opened an investigation into Dr. Tang on June 19, 2020, the day before they sought a search warrant for her

1  apartment and all of her electronic devices.  The assigned agent conducted open-

2  source internet research regarding Dr. Tang and her alleged connection with the

3  Chinese military that day, while agents observed the apartment and outside

4  photographs were taken.  On June 20, 2020, the Agent applied for a search

5  warrant seeking authorization to search Dr. Tang's apartment in Davis, California.

6  Declaration of Malcolm Segal ("Segal Decl."), Exhibit 1.  The search warrant was

7  executed the same day, approximately five hours after it was issued via

8  telephone.

9      The affidavit alleges that Dr. Tang made a false statement on her Non-

10  Immigrant Visa application in answering a question as to whether the applicant

11  had "ever served in the military."  The Special Agent affiant relying on similarities

12  to the San Francisco <u>investigation</u> concerning a Chinese researcher and internet

13  research open to and accessed by the public at large (open-source internet

14  materials), averred that there was probable cause to believe that the Defendant

15  was a member of the Chinese military.  That conclusion was based on a

16  photograph found online purportedly showing the Defendant in a uniform which

17  he reviewed against open-source internet materials, which he alleged

18  demonstrated that Dr. Tang was a member of a "civilian cadre," from which in

19  turn, relying only on additional open-source internet materials dating back to

20  2009, he concluded that civilian cadre members are active military personnel in

21  the Chinese People's Liberation Army (PLA).  He did not verify the internet

22  sources, verify the authors, verify the website, or otherwise use the vast

23  resources of the FBI to establish their legitimacy or continued validity and

24  accuracy.  In short, the agent did the very thing law enforcement and government

25  agencies advise against by relying on unverified and potentially outdated internet

26  materials and offered up an opinion as to what he might find on electronic

27  devices, if any were found at the premises to be searched, without making any

28  effort to justify that speculation.

1   **III.   ARGUMENT**

2        The Fourth Amendment to the United States Constitution prohibits

3   unreasonable searches and seizures.  Where a Fourth Amendment violation

4   occurs and evidence is derived from an unreasonable search or seizure, the

5   remedy is the exclusion of the evidence from trial.  The "exclusionary rule reaches

6   not only primary evidence obtained as a direct result of an illegal search or

7   seizure, but also evidence later discovered and found to be derivative of an

8   illegality or 'fruit of the poisonous tree.'"  *Segura v. United States*, 468 U.S. 796,

9   804 (1984).

10        Here, the search warrant affidavit fails to establish probable cause by

11   relying on unverified, open-source materials obtained from the internet; fails to

12   establish that such materials are reasonably trustworthy and should be credited;

13   and is overbroad as it relates to the search and seizure of "digital evidence" from

14   Dr. Tang's residence.  As such, all evidence seized pursuant to the June 20, 2020

15   search warrant, as well as all derivative evidence, must be suppressed.

16        **A.    The Affidavit Fails to Establish Probable Cause by Relying on**

17        **Unverified, Open-Source Information.**

18        The determination that a warrant affidavit establishes probable cause is to

19   be made based on the totality of the circumstances, and probable cause exists

20   where the sum of those circumstances reveals a "fair probability" that criminal

21   activity has occurred, and evidence will be found at a particular location.  *Illinois v.*

22   *Gates*, 462 U.S. 213, 238 (1983).  At the very least, "more than bare suspicion" by

23   the agent is necessary to establish probable cause.  *Brinegar v. United States*,

24   338 U.S 160, 175-176 (1949) ("Probable cause exists where the facts and

25   circumstances within [the officers'] knowledge <u>and of which they had reasonably</u>

26   <u>trustworthy information</u> are sufficient in themselves to warrant a man of

27   reasonable caution in the belief that an offense has been or is being committed.").

28   (Emphasis added.)

Here, the affidavit in support of the warrant application alleges a violation of Title 18, United States Code, 1546(a), Fraud and Misuse of Visas, Permits and Other Documents, which states in pertinent part, "Whoever knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained."  Essentially, the affidavit alleges that Dr. Tang lied on her J-1 visa application when she answered "NO" to the question "Have you ever served in the military?"

Only approximately three pages of the 15-page affidavit concern the visa fraud allegation itself and much of that is dedicated to the arrest and background of a Chinese researcher who was arrested in the bay area on June 7, 2020 on charges related to visa fraud.  According to the affidavit, the FBI conducted further inquiries following that arrest and discovered Dr. Tang had a similar background and visa application.  The affiant's conclusion is apparently based upon those alleged similarities between Dr. Tang and that Chinese researcher[2] and the

_____

[2] The Government has persistently tried to tie together several cases in which Chinese researchers have been arrested, suggesting a concerted and organized effort by the Chinese government to "infiltrate and exploit academic institutions."  (7/23/2020 U.S. Attorney Press Release, "RESEARCHERS CHARGED WITH VISA FRAUD AFTER LYING ABOUT THEIR WORK FOR CHINA'S PEOPLE'S LIBERATION ARMY" https://www.justice.gov/usao-edca/pr/researchers-charged-visa-fraud-after-lying-about-their-work-china-s-people-s-liberation).  However, the Government has yet to provide any evidence connecting these cases or supporting any allegations of concerted action

1  unverified, open-source internet research conducted the day before obtaining the
2  search warrant.

3        The internet is no doubt a powerful tool, providing access to information on
4  nearly every subject imaginable.  But it is a flawed tool at best.  As the recent
5  surge in online disinformation and "fake news" has clearly demonstrated, simply
6  because information is accessible on the internet does not mean that information
7  should be accepted as fact.[3]  Careful evaluation of the information discovered as
8  well as the sources and authors of that information is key to ensuring materials
9  found through open-source internet research are accurate and trustworthy.  Even
10  the United States Department of Justice, and the FBI itself – working with its law
11  enforcement and private partners - cautions citizens about the myriad ways in
12  which criminals cleverly use the internet to mislead and victimize innocent
13  Americans.  (See Office of Public Affairs April 22, 2020 statement,
14  https://www.justice.gov/opa/pr/department-justice-announces-disruption-
15  hundreds-online-covid-19-related-scams.)  That deception and ability to change
16  reality is not limited to criminals, the internet is the source for an enormous
17  amount of information, some helpful but others subject to manipulation and
18  changes by interested parties and those with contrary opinions.  Informed adults
19  in modern society approach the internet with much deserved skepticism unless
20  the content is verified.  That did not occur in this instance.

21        There are no facts stated here to suggest a fair probability that criminal
22  activity occurred because all the FBI agent did, according to the affidavit, was

23

24  or an organized conspiracy. It has often acknowledged that it has no such evidence and
   that the mention of those cases together is only to draw attention to the issue.
25

26  [3] For example, misinformation regarding election security was so prolific during the 2020
   election season that the Cybersecurity & Infrastructure Security Agency debunked nearly
27  two dozen spurious claims and provided credible resources.
   (https://www.cisa.gov/rumorcontrol).

28

Memo of Points & Authorities ISO of Defendant Juan Tang's Suppress Evidence

1   conduct a few open-source searches regarding Dr. Tang and the Chinese

2   military.  As the subsequent discovery makes clear, the searches informing the

3   agent's conclusions were conducted on June 19, 2020.  Segal Decl., Exhibit 2

4   (FD-1057 summarizing open-source searches.)  As a preliminary matter, it is

5   important to note that the affiant, who does not speak or read Chinese, used an

6   online translation tool to review some of the results of his research.  The affiant

7   provided no information about the translation tool used or its reliability.  (Segal

8   Decl., Exhibit 1 at paragraph 11(a).)  This too renders the affiant's claims and

9   findings suspect, particularly because the FBI has language specialists at hand to

10   assist in such translations.

11        Through these open-source searches, the affiant found and translated an

12   article describing a forum and listing Dr. Tang as an expert invited to the forum.

13   The article apparently listed Dr. Tang's employment as an associate researcher at

14   the Air Force Military Medical University and included a single picture of Dr. Tang

15   in what the affiant concluded was a military uniform.  Relying again on additional

16   open-source materials, which the affiant failed to even identify ("A description of

17   an insignia matching her uniform picture was found online"), the affiant alleges

18   that the insignia on the uniform represents the Civilian Cadres of the Chinese

19   People's Liberation Army.  And then relying on yet another webpage, <u>dating back</u>

20   <u>eleven years to July 14, 2009</u>, the affiant alleges that the Civilian Cadres of the

21   Chinese People's Liberation Army are active military personnel.  (Segal Decl.,

22   Exhibit 1 at paragraphs 11(a)-(b).)  From this limited research, the affiant

23   concluded that Dr. Tang was "currently serving in the [People's Liberation Army

24   Air Force], which contradicts her claim on her visa application of never having

25   served in the military."  (Segal Decl., Exhibit 1 at paragraph 11(c).)

26     The affidavit does not show even the meagerest effort undertaken to verify or

27   corroborate the identity and credentials of the authors of the materials on which

28   he relied, the legitimacy of the websites he accessed, or determine if the FBI itself

1   had previously used or credited their content.  Moreover, he presented objectively

2   stale information about the core information which he asserted supported his

3   claim that civilians serving in a cadre in 2009 were active members of the military

4   and that the same situation prevailed in 2020, eleven years later.  He failed to

5   provide the Magistrate Judge with any reason why the internet open-source

6   information he accessed, but did not attempt to verify, should be credited.[4]

7          The situation is analogous to an affidavit relying on an informant or an

8   unverified, anonymous tip.  "In determining probable cause, the magistrate should

9   consider an informant's veracity, reliability and basis of knowledge to resolve the

10  'common-sense, practical question whether there is probable cause to believe

11  that contraband or evidence is located in a particular place.'  The totality of the

12  circumstances approach 'permits a balanced assessment of the relative weights

13  of all the various indicia of reliability (and unreliability)' surrounding informants'

14  tips." *United States v. Alvarez*, 358 F.3d 1194, 1203 (9th Cir. 2004) (citations

15  omitted).  Where the affidavit does not provide any information about an

16  informant's reliability and/or where the law enforcement officer does not attempt

17  any meaningful corroboration of the informant's information, the affidavit did not

18  support the issuance of a search warrant.  *See United States v. Clark*, 31 F.3d

19  831 (9th Cir. 1994) (allegations of an unknown informant that the defendant was

20  associated with a known marijuana cultivator was insufficient to establish

21  _____

22  [4] These failures cannot be cured, if they have been, by any later efforts such as by
     contacting the authors, determining whether these materials had been relied upon by

23  official government sources, whether the information was consistent with official
     government sources, or vetting the authors.  Nor can the government argue that it had

24  the missing information but chose not to produce it because the failure to include such
     information in the affidavit would constitute an omission of material fact and necessitate

25  a *Franks* hearing.  Deliberate or reckless omissions can constitute false statements for
     the purposes of a *Franks* inquiry.  *See Franks v. Delaware*, 438 U.S. 154 (1978); *United*

26  *States v. Perkins*, 850 F.3d 1109, 1119 (9th Cir. 2017) (concluding that officer omitted

27  material information when proffering his conclusion about an image based on an
     incomplete and misleading description of the image).

28

Memo of Points & Authorities ISO of Defendant Juan Tang's Suppress Evidence

1  probable cause); *United States v. Weaver*, 99 F.3d 1372 (6th Cir. 1996)

2  (information provided did not support the issuance of a search warrant where the

3  government did not corroborate the informant's statement in any way and did not

4  provided any information about the informant's reliability beyond boilerplate

5  language about being reliable in the past); *United States v. Glover*, 755 F.3d 811

6  (7th Cir. 2014) (the failure of the search warrant application to reveal any

7  information about the informant rendered it devoid of probable cause); *United*

8  *States v. Gifford*, 727 F.3d 92 (1st Cir. 2013) (affirming decision to grant the

9  motion to suppress upheld where the officer provided no information supporting

10 the flat claim that the informant was reliable and no information about the

11 informant's basis of knowledge).  An unverified, anonymous tip is insufficient to

12 create a reasonable belief that probable cause existed.  *See United States v.*

13 *Luong*, 470 F.3d 898, 903 (9th Cir. 2006).

14        Likewise, unverified materials discovered through open-source research,

15 apparently conducted in a single day, and translated using an unidentified and

16 unverified translation tool in a setting where the meaning of answers to questions

17 on a government visa form are at issue, are insufficient to create a reasonable

18 belief that probable cause existed.  The affiant failed to demonstrate that the

19 online materials he discovered were reasonably trustworthy or give any reason for

20 crediting the sources he relied on.  Without any indicia of the veracity and

21 reliability of the sources the affiant reviewed, his bare allegation that Dr. Tang has

22 a current connection with the Chinese military and therefore lied on her visa

23 application is nothing better than mere suspicion.  As such, there was no

24 substantial basis for the probable cause finding, and the affidavit is so devoid of

25 facts in support of probable cause that reliance on the warrant is objectively

26 unreasonable.  *Gates*, 462 U.S. at 238-39; *Leon*, 468 U.S. at 922-23.  For that

27 reason, any evidence seized during the June 20, 2020 search and any derivative

28 evidence should be excluded.

**B.     The Warrant Authorized an Overbroad General Search and Seizure of All of Dr. Tang's Electronic Devices and Media.**

By permitting the seizure of every conceivable type of electronic media, the June 20, 2020 search warrant was unconstitutionally overbroad and the modern equivalent of a general warrant.  "It is familiar history that indiscriminate searches and seizures conducted under the authority of general warrants were the immediate evils that motivated the framing and adoption of the Fourth Amendment."  *Payton v. New York*, 445 U.S. 573, 583 (1980); *see also Coolidge v. New Hampshire*, 402 U.S. 443, 467 (1971) (the "specific evil…abhorred by the colonists…is not that of intrusion per se, but of a general, exploratory rummaging in a person's belongings").  To prevent the abuse of such indiscriminate rummaging, the Fourth Amendment requires each warrant "particularly describ[e] the place to be searched, and the persons or things to be seized."  U.S. Constitution, Amendment Four.

A search warrant application must establish probable cause for the areas and things to be searched and the items to be seized and must provide a particularized showing in that regard.  Thus, "the scope of the warrant to search is dependent upon the scope of the showing of probable cause.  The command to search can never include more than is covered by the showing of probable cause to search."  *United States v. Whitney*, 633 F.2d 902, 907 (9th Cir. 1980).  An affidavit in support of a search warrant "must make it apparent, therefore, that there is some nexus between the items to be seized and the criminal activity being investigated."  *Doe v. Broderick*, 225 F.3d 440, 451 (4th Cir. 2000), citing *Warden v. Hayden*, 387 U.S. 294, 307 (1967).

Where the warrant is facially overbroad, the officer cannot reasonably rely on its validity.  *Millender v. County of Los Angeles*, 620 F.3d 1016, 1024-28 (9th Cir. 2010), rev'd on other grounds, 132 S. Ct. 1235 (2012).  The Ninth Circuit set out the following factors to determine if a warrant is sufficiently specific and

Memo of Points & Authorities ISO of Defendant Juan Tang's Suppress Evidence

precise: "(1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued." *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986) (citations omitted).

Here, the warrant's authorization and subsequent seizure of electronically stored data from Dr. Tang's home were not supported by probable cause and were consequently overbroad. The affidavit's conclusion that evidence would be found on computers and related storage devices kept at Dr. Tang's home was, like the probable cause for the warrant, based on speculation. There are no facts alleged in the supporting affidavit to establish a probability that Dr. Tang maintained any relevant records or documents on her home computers or related external storage media, including external hard drives and thumb drives. In fact, there are no facts alleged to establish that any relevant documents even existed.

Instead, the affiant generalizes that "immigration and employment records, including visa records, travel records, employment history, bank records, records of financial transactions, contracts for payment, employment, and financial agreements, checks and balance sheets, and accounting records are commonly stored at a subject's home in documentary and/or electronic form, including on computers and other electronic devices such as tablets or smart phones." (Segal Decl., Exhibit 1 at paragraph 23.) Dr. Tang was a granted a visa for entrance into the United States to work in a grant program focused on cancer research at the University of California, Davis. By design, this was a temporary position and without any facts to indicate otherwise, it was only speculative to assume that Dr. Tang would have brought extensive categories of personal records with her when she would eventually return to her home in China. Without facts to form the basis

-11-

for probable cause to believe her personal computers and devices were involved in any manner, the affidavit's conclusory language utterly fails to justify the comparatively substantial intrusion of privacy inherent in the seizure and search of all of her personal computers and electronic storage media.

More fundamentally, the search warrant authorization and seizure of "digital evidence" was patently overbroad.  While the warrant here specified categories of records for documentary evidence to be seized, including "visa and immigration records, identification documents, travel records, documents related to military service, bank records, records of financial transactions, contracts for payment, employment, and financial agreements, checks and balance sheets, and accounting records," descriptions for digital evidence were incredibly broad and failed to protect unrelated and private information.  For example, the search warrant identified:

> All computer equipment or digital devices that are
> capable of being used to commit or further the crimes
> referenced above, or to create, access, or store
> evidence, contraband, fruits, or instrumentalities of such
> crimes, including central processing units; laptop or
> notebook computers; personal digital assistants;
> wireless communication devices including paging
> devices and cellular telephones; peripheral input/output
> devices such as keyboards, printers, scanners, plotters,
> monitors, and drives intended for removable media;
> related communication devices such as modems,
> routers, cables, and connections; storage media; and
> security devices

(Segal Decl., Exhibit 1 at paragraph (b)(i).)

Other patently overbroad categories include all digital evidence of "the times the computer was used," and all "records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, bookmarked or favorite web pages, search terms that the user entered into any Internet search engine, and records of user-typed web

Memo of Points & Authorities ISO of Defendant Juan Tang's Suppress Evidence

addresses."  (Segal Decl., Exhibit 1 at paragraph (b)(viii) and (xii).)  The sixteen enumerated subcategories encompass all electronic devices, external storage material, files of any type, peripheral devices, programs, related documentation, network equipment, and forensic data on all electronic devices and media in Dr. Tang's apartment.  Moreover, while the warrant recognized that Dr. Tang did not live in the residence alone and that some of the electronic devices "may be predominately used, and perhaps owned by persons who are not suspected of a crime," the warrant still sought to seize any of those computers or storage media if it was "possible" they contained the materials described in the warrant.  (Segal Decl., Exhibit 1 at paragraph 29.)[5]  That the electronic devices and media "are capable of being used to commit or further the crimes referenced above, or to create, access, or store evidence, contraband, fruits, or instrumentalities of such crimes" fails to connect the electronic devices and related digital evidence to the alleged violation with sufficient particularity.

Such a blanket removal and search of computers, phones, and storage media for later examination, without probable cause, is "the kind of investigatory dragnet that the fourth amendment was designed to prevent."  *United States v. Tamura*, 694 F.2d 591, 595 (9th Cir. 1982); *see also United States v. Kow*, 58 F.3d 423, 427 (9th Cir. 1995); *In re Cunnius*, 770 F. Supp. 2d 1138, 1143 (W.D. Wash. 2011) (finding overbroad the government's request to seize all of defendant's digital devices without limitation).  The dangers of unauthorized and unreasonable intrusions on privacy are amplified in situations involving the search and seizure of computers.  "Because computers can hold so much information touching on many different areas of a person's life, there is a greater potential for

---

[5] Even the agents themselves knew that the language used was overbroad and that they could not rely on that assertion because they tried to have Dr. Tang's mother sign a consent to search and seize her telephone and abandoned the effort, leaving the phone behind, when she and Dr. Tang said that the phone was needed to manage transportation to the airport.

Memo of Points & Authorities ISO of Defendant Juan Tang's Suppress Evidence

1
2
3
4
5
6
7
8
9
10
11

the intermingling of documents and a consequent invasion of privacy when police execute a search for evidence on a computer."  *United States v. Walser*, 275 F.3d 981, 986 (10th Cir. 2001).  "Officers must be clear as to what it is they are seeking on the computer and conduct the search in a way that avoids searching files of types not identified in the warrant."  *Id.*  The particularity requirement serves an essential purpose, as it "makes general searches…impossible and prevents the seizure of one thing under a warrant describing another.  As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."  *Andreson v. Maryland*, 427 U.S. 463, 480 (1976).  Adherence to the particularity requirement prevents officers from engaging in the "exploratory rummaging in a person's belongings."  *Id.*

12
13
14
15
16
17
18
19
20
21
22
23

Here, the warrant affidavit contains no facts in support of the conclusion that many of these categories could have any evidentiary value and provides no basis for the wholesale search and seizure of all of Dr. Tang's electronic devices and media, as well as related forensic data.  Rather than applying the specific factual circumstances of Dr. Tang's case, the affidavit includes boilerplate, general descriptions of the difficulty of computer searches and the complexities of accessing and reviewing forensic evidence contained on electronic devices. (Segal Decl., Exhibit 1 at paragraphs 25-29.)  Moreover, the warrant contains no search protocol or parameters to ensure that the search only uncovers information for which it alleges probable cause.  The government failed to establish reasonable protocols or safeguards to segregate relevant from irrelevant information and mitigate the unreasonable intrusion.

24
25
26
27

The June 20, 2020 warrant, which authorized the seizure of every conceivable kind of electronic media, was patently overbroad.  As such, any evidence derived from the seizure and search of Dr. Tang's electronic devices and media must be suppressed.

28

/ / /

Memo of Points & Authorities ISO of Defendant Juan Tang's Suppress Evidence

## IV.    CONCLUSION

All items seized pursuant to the June 20, 2020 warrant to search Dr. Tang's apartment must be excluded for lack of probable cause.  Moreover, the warrant affidavit contains no facts establishing probable cause to believe documents or information relating to alleged criminal conduct would be found on computers, cell phones, and external storage media in Dr. Tang's student apartment and the warrant's authorization to search and seize essentially all of Dr. Tang's electronic devices and media is unreasonably and unconstitutionally overbroad.  All evidence obtained from Dr. Tang's laptop, cell phone, external hard drives, and flash drives, as well as any derivative evidence later discovered, must be excluded.

Dated: April 9, 2021              **SEGAL & ASSOCIATES, PC**


                          By:    /s/ Malcolm Segal
                                 MALCOLM SEGAL
                                 Counsel for Defendant

                          **LAW OFFICE of THOMAS A. JOHNSON**


                          By:    /s/ Thomas A. Johnson
                                 THOMAS A. JOHNSON
                                 Counsel for Defendant