PHILLIP A. TALBERT
Acting United States Attorney
HEIKO P. COPPOLA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

DAVID LIM
Trial Attorney
US Department of Justice
National Security Division
Washington, DC

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:20-CR-00134 JAM |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSTION TO DEFENDANTS RULE 12 MOTION TO DISMISS |
| v. | |
| TANG JUAN, (aka Juan Tang) | COURT: Hon. John A. Mendez |
| Defendant. | |

## I.   INTRODUCTION

On April 9, 2021, defendant Tang Juan ("Tang") filed a motion to dismiss the indictment pursuant to Fed.R.Crim.P. 12(b)(1) alleging that the question "have you served in the military?" found on the Non-Immigrant Visa application is fundamentally ambiguous and violates her due process rights. ECF 131. Because there is nothing fundamentally ambiguous about such a direct question the Court should deny the motion to dismiss.

## II.   FACTS AND PROCEDURAL HISTORY

### A.   Factual History

1.   The FBI's investigation

Tang applied for a United States Non-Immigrant J-1Visa ("NIV") on or about October 28, 2019, which was issued on or about November 5, 2019. According to the Department of State website, a J-l visa is a non-immigrant document "for individuals approved to participate in work-and study-based exchange visitor programs." Department of State records reflect that Tang intended to conduct cancer treatment-method research at the University of California, Davis ("UCD"). On or about December 27, 2019, Tang entered the United States through San Francisco International Airport.

On Tang's visa application, under the Additional Work/Education/Training section, Tang answered "no" when responding to the question: "have you ever served in the military?" Similarly, Tang also responded in the negative to questions related to communist party membership and whether she had any special chemical or biological experience. The FBI's investigation determined Tang's answers to these questions were false.

Specifically, with respect to Tang's military service, the FBI discovered through an internet search a photograph of Tang wearing a People's Liberation Army – Air Force ("PLAAF") uniform bearing the insignia of the Civilian Cadre, attached to a Chinese news article about a forum in Xi'an, China published on or about April 14, 2019. Tang was listed as one of four experts invited to the forum and was further introduced in the article, wearing what appeared to be a military uniform, and listing her employment as an associate researcher at Air Force Military Medical University, Molecular Medicine Translation Center. According to the Chinese Ministry of Defense Website, members of the PLAAF Civilian Cadre are considered active duty military members. Additional open source internet searches revealed other articles about Tang and listed her affiliation with Air Force Military Medical University/Fourth Military Medical University and China People's Liberation Air Force Military Medical University, Molecular Medicine Translation Center.

Based upon this information, his training and experience, his knowledge of Chinese military structure, and the similarities between Tang and the Wang Xin case that was investigated by the FBI and subsequently charged by the U.S. Attorney's Office in the Northern District of California, on June 20, 2020, FBI SA Steven Dilland applied for, and U.S. Magistrate Judge Kendall J. Newman issued, a search warrant for Tang's apartment in Davis, California. The search warrant authorized the FBI to search Tang's residence and electronic devices for evidence related to visa fraud in violation of 18

U.S.C. § 1546(a).

    2.    Search warrant execution

Upon completion of an interview with Tang on June 20, 2020, FBI agents executed the search warrant at her residence, seizing electronic media and her Chinese passport. Agents found Tang's J-1 visa within her Chinese passport. During a later review of the electronic media evidence seized from Tang's residence, agents discovered a myriad of different photographs of Tang wearing military uniforms. Agents also found a video depicting a presentation conducted by Tang in which she is wearing what appears to be the PLAAF military uniform found in their open source search, and she begins the presentation with a salute. The video presentation was recorded within days of Tang's entrance into the United States on the J-1 visa.

Agents also found evidence of Tang's affiliation with the Chinese Communist Party. This consisted of an application to apply for government benefits in which Tang stated that she was a member of the Communist Party. Agents discovered Chinese military documents that detailed Tang's research related to antidotes for biological agents. Further review and analysis of Tang's electronic media revealed her initial military enlistment date and a letter dated in May 2020 to the China Scholarship Council and PRC Consulate General personnel indicating that her research in the United States was concluded and requesting to return to China to resume her military duties.

Following execution of the search warrant, FBI agents learned that Tang, along with her mother and daughter, had fled to the Chinese consulate in San Francisco. Tang remained in the Chinese consulate for approximately a month prior to her eventual arrest. In the evening hours of July 23, 2020, at approximately 9:45 p.m., FBI agents arrested Tang and later transported her to Sacramento pursuant to a criminal complaint for violation of 18 U.S.C. § 1546(a).

**B.**    **Procedural History**

This Court issued a sealed criminal complaint and arrest warrant in the above-entitled case on June 26, 2020 alleging visa fraud in violation of 18 U.S.C. § 1546. ECF 1. Tang was arrested pursuant to the complaint on July 23, 2020. Tang was ordered detained as a flight risk during her first appearance before the Court on July 27, 2020. ECF 6. The Court heard and denied Tang's motion for bail review on July 31, 2020. ECF 15. A grand jury returned a two-count indictment charging Tang with visa fraud

and making false statements to the FBI in violation of 18 U.S.C. §§ 1001 and 1546 on August 6, 2020. ECF 18.

On August 24, 2020, Tang filed a second motion for bail review alleging a change in circumstances and re-addressing factual explanations discussed in prior filings by the United States. ECF 27.  U.S. Magistrate Judge Newman heard Tang's second motion for bail review and ordered Tang's release subject to certain conditions over the government's objection.  ECF 34, 37.  The District Judge denied the United States' motion to stay release and its subsequent motion to revoke Judge Newman's pretrial release order.  ECF 51, 67.

On October 23, 2020, Tang filed another motion to modify the conditions of release, which the United States opposed, and the magistrate judge denied.  ECF 72, 83, 87, 90.  The District Judge subsequently affirmed the Magistrate Judge's denial of Tang's appeal.  ECF 91, 99.

On December 8, 2020, because Tang demanded a speedy trial, the Court set a jury trial date for February 8, 2021.  ECF 100.  The United States moved to exclude time, which was subsequently granted in a written order by the Court on January 5, 2021.  ECF 101, 109.  In its order, the Court also set a status conference for April 6, 2021 and a new jury trial date for July 12, 2021.  ECF 109.

Tang has subsequently filed motions: (1) to compel discovery; (2) for a bill of particulars; (3) to suppress evidence discovered as a result of the search warrant; (4) to dismiss pursuant to Fed.R.Crim.P. 12; and (5) to suppress her statements.  ECF 117, 118, 129 130, and131. U.S. Magistrate Judge Allison Claire heard argument for Tang's motions for a bill of particulars and to compel discovery on April 19, 2021 and took those matters under submission. ECF 132.

### C. Tang's Rule 12(b)(1) Dismissal Motion

On April 9, 2021, Tang filed a motion to dismiss the indictment pursuant to Fed.R.Crim.P. 12(b)(1).  Tang alleges that the question "have you served in the military" is fundamentally ambiguous, violative of her due process rights, and requires dismissal of the indictment.  The question posed on the J-1 visa application, however, is not fundamentally ambiguous, as it seeks a yes or no answer to her prior military service. The Court should deny Tang's motion to dismiss.

### III.     ARGUMENT

#### A.     Applicable Law

1.     Fed.R.Crim.P. 12(b)(1)

Fed.R.Crim.P. 12(b)(1) provides that "a party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."

Generally, a pretrial motion such a defense that is based solely on questions of law are "capable of determination" by the Court. *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (citations omitted). "A district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *United States v. Jones*, 542 F.2d 661, 664 (6th Cir. 1976). "As the ultimate finder of fact is concerned with the general issue of guilt, a motion requiring factual determinations may be decided before trial if 'trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.'" *Short,* 785 F.2d at 1448, *citing United States v. Covington*, 395 US 57, 60 (1969). If the pretrial claim is "substantially founded upon and intertwined with" evidence concerning the alleged offense, the motion falls within the province of the ultimate finder of fact and must be deferred. *Id. citing United States v. Williams*, 644 F.2d 950, 952–53 (2d Cir. 1981).

2.     Ambiguity and False Statements

"A question is fundamentally ambiguous when 'men of ordinary intelligence' cannot arrive at a mutual understanding of its meaning." *United States v. Culliton*, 328 F.3d 1074, 1078 (9th Cir. 2003) (citation omitted). The answer to a fundamentally ambiguous question "may not, as matter of law, form the basis of a prosecution for perjury or false statement." *Id.* However, "the existence of some ambiguity in a falsely answered question will not shield the [defendant] from a perjury or false statement prosecution." *Id.* Moreover, the Court must evaluate questions in context, because "a question is not fundamentally ambiguous simply because the questioner and respondent might have different interpretations." *Id.* at 1079. Finally, "it is for the jury to decide in such cases which construction the defendant placed on a question. *Id.* at 1078; *see also United States v. Bonacorsa,* 528 F.2d 1218, 1221 (2d Cir.1976) ("Absent fundamental ambiguity or impreciseness in the questioning, the meaning and

truthfulness of [defendant's] answer was for the jury.").

### B.  Service in "the Military" Is Not Fundamentally Ambiguous

Tang asserts that the question "have you served in the military?" on the J-1 visa application is fundamentally ambiguous for the following reasons: (1) multiple potential interpretations of military service; (2) cultural and language differences; (3) judicial difficulties determining the meaning of military service in an immigration case; and (4) the location of the question in the visa application. Tang's assertions are meritless.[1]

First, the question about military service posed by the J-1 visa application is neither complicated nor fundamentally ambiguous. Any person of reasonable intellect (and Tang holds a Ph.D.) would answer "yes" to that question if they had previously been in any branch of the military or were presently serving in it. In short, "military service" is self-explanatory which is likely why the J-1 visa application does not define it further.

That "military service" might include active or reserve component personnel and/or members of the Army, Navy, Air Force or Marine Corps, whether engaged in actual combat or support operations does not make the term ambiguous. It is abundantly clear that the question "have you served in the military?" is purposely broad and designed to capture those serving in any military capacity. No further delineation of the term is required. Furthermore, Tang's suggestion that the various descriptions as to the role of the Army and Marine Corps somehow lend credence to the alleged ambiguity notion misses the mark. As this Court knows, not every soldier or marine is actively engaged in ground combat and that many fill various supporting roles. One's specific job within as particular military service does not define membership with the service. By way of example, the U.S. military has active-duty doctors, nurses, lawyers, and scientific researchers. No one would ever suggest that individuals holding these non-combat jobs are not serving in the military. Notably, as discussed in other pleadings, China's own Ministry of Defense website characterizes Tang's Civilian Cadre membership as "active military" and in the evidence found on her electronic media, Tang herself requested to return to China from the US to

---

[1] It is worth noting that Tang's pretrial litigation demands two fundamentally inapposite items: (1) a bill of particulars motion regarding the meaning of "military service" (ECF 118) and (2) this motion for dismissal for ambiguity pursuant to Rule 12(b)(1). This irony was not lost on the US Magistrate Judge who heard Tang's discovery and bill of particulars motions.

complete her military duties.

Second, although cultural and language differences certainly exist, had Tang been genuinely confused as to the question, she could have asked the consular officer who interviewed her at the U.S. Embassy for further clarification. The consular officer noted on the interview form that Tang was proficient in the English language. Whether Tang was truly confused by the military service questions, whether she might have misinterpreted or misunderstood the meaning of "military service" or her state of mind are all questions that should be presented to the jury. While context is a consideration when evaluating ambiguity, it is important to note that nowhere does Tang claim that she was actually confused or that she attempted any research to discern the applicable definition of military service.

Third, Tang cites *Gallarde v. I.N.S.*, 486 F.3d 1136 (9th Cir. 2007) for the proposition that even the Ninth Circuit struggles with the meaning of military service. Tang's reliance on *Gallarde* is misplaced. *Gallarde* is a statutory construction case dealing with the different consequences for future citizenship between compulsory and voluntary military service under the Immigration and Nationality Act. As Tang correctly notes, this case has no real application to the issues of her case. More to the point, the Ninth Circuit expressed no confusion about the meaning of the term "military service" nor did it hold the term to be ambiguous in context.

Fourth, Tang's suggestion that the placement of the military service question in the J-1 visa application somehow amplifies its alleged ambiguity is not persuasive. Tang's analysis, which is unsupported by any authority, suggests that she might have misunderstood that military service included her membership in the Civilian Cadre because the question is co-located with questions about extremism and she was a cancer researcher and not an "armed combatant." Moreover, as Tang well knows, the government's evidence is not premised solely on her employment at Fourth Military Medical University, but also her membership in the PLAAF Civilian Cadre, which even the Chinese Ministry of Defense characterizes as active military membership.

### C. Due Process Notice Considerations

Tang concedes that neither 18 U.S.C. § 1546 nor 18 U.S.C. § 1001 are unconstitutionally vague on their face. However, without citation to authority and relying on her claims of fundamental ambiguity, Tang claims that these statues for due process purposes are impermissibly vague as applied

for failing to further define military service and that she "was deprived of adequate notice because she could not possibly know that her response would subject her to criminal liability." ECF 131-1 at 14. Notwithstanding this assertion, Tang was on notice that her application would be signed under penalty of perjury and that any false or misleading information in the application could subject her to criminal prosecution if she was in the United States. *See* ECF 131-1 at 91. Because the military service question was not fundamentally ambiguous and because Tang was on notice that false answers would subject her to criminal liability, there can be no due process violation.

## IV. CONCLUSION

For all of the foregoing reasons, the Court should deny Tang's motion to dismiss the Indictment.

Dated: April 30, 2021

PHILLIP A. TALBERT
Acting United States Attorney

/s/ HEIKO P. COPPOLA
HEIKO P. COPPOLA
Assistant United States Attorney