Malcolm Segal, SBN 075481
Emily E. Doringer, SBN 208727
**SEGAL & ASSOCIATES, PC**
400 Capitol Mall, Suite 2550
Sacramento, CA 95814
Telephone: (916) 441-0886
Facsimile: (916) 475-1231
msegal@segal-pc.com

Thomas A. Johnson, SBN 119203
**Law Office of Thomas A. Johnson**
400 Capitol Mall, Suite 2560
Sacramento, CA 95814
Telephone: (916) 442-4022
taj@tomjohnsonlaw.com

Patrick Wong, SBN 241740
**Patrick Wong, Esq.**
145 El Camino Real
Menlo Park, CA 94025-5234
Telephone: (650) 391-5366
patrick@wong.law

Attorneys for Defendant
JUAN TANG

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>v.<br><br>TANG JUAN,<br>aka Juan Tang,<br><br>            Defendant. | Case No: 2:20-CR-00134 JAM<br><br>**DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION TO MOTION TO SUPPRESS EVIDENCE**<br><br>Date:  TBD<br>Time:  TBD<br>Crtrm: 6, 14th Floor<br>Judge: Hon. Judge John A. Mendez |

-1-
Defendant's Reply to Government's Opposition to Motion to Suppress Evidence

## I.  Introduction

The Defendant, Juan Tang, moved to suppress all evidence seized pursuant to a search warrant executed at her apartment, as part of an investigation concerning her application, as a Citizen of China, for a non-immigrant visa to work in an oncology research program in the United States at UC Davis.  The motion is based on the failure of the affiant to demonstrate probable cause for the search and on the warrant's overbreadth.

In opposition, and to avoid the deficiencies in probable cause, the government appears to argue that the Magistrate Judge could rely on the FBI agent's training and assignment to an intelligence intellectual property squad.  It also implicitly argues that the agent was successful in finding what he was looking for, *i.e.*, evidence tending to demonstrate that Dr. Tang was "serving in the military" when she applied for a visa.

To the contrary, and absent any supporting facts, the affidavit failed to establish a basis for a Judge to rely on specific relevant training in the agent's background.  Nor did the affidavit present reliable sources and verified facts to support the claim of probable cause, and instead relied on unverified and inherently unreliable open-source internet searches and inherently questionable language translation methods.

Moreover, when the scope of the warrant itself is overbroad, any success in finding the materials which the affiant was seeking does not justify the initial failure to show a nexus to the alleged criminal conduct under investigation.  Here, with manifestly insufficient probable cause, the deficiencies in this overbroad warrant are so apparent there can be no good faith reliance.

**A.    The Affidavit Fails to State Essential Facts Based on Reliable Information Sufficient to Establish Probable Cause.**

The government spends time in the opposition discussing an unrelated investigation, but when called upon to present specific facts to support the broad search warrant, it relies on the unspecified qualifications of the affiant and on

unverified information obtained in internet searches.  Neither withstands analysis because the affidavit failed to show the agent's qualifications and did not provide anything to show the reliability or even the basis of the knowledge allegedly underlying the affidavit's assertions.  *See Illinois v. Gates*, 462 U.S. 213, 230 (1983).

At the outset, the government's reliance on the affidavit's discussion of an unrelated investigation as the first step in establishing probable cause is unconvincing.  Why the FBI decided to investigate Dr. Tang is of little moment because, in the absence of any allegation of conspiratorial conduct, the warrant had to be specific as to her conduct and no one else's.  Without some connection to the case under investigation, the reason why the FBI sought the warrant is simply irrelevant to the probable cause determination.

The government's attempt to overcome the lack of probable cause based on the affiant's training and experience must similarly fail because the affiant's only reference to his background and training is to note that he received some training -- for less than 6 months, and over 10 years ago.  (Dkt #129 Tang's Motion to Suppress Evid., Exh. 1 at 1:8-9).  The government suggests the affiant's generalized training and purported knowledge of Chinese military structure renders him qualified to opine on whether Dr. Tang had correctly completed her visa application.  In fact, while reporting the results of his unverified open-source searches, the affiant claims an "understanding of the PLA's military structure," but offers no explanation of that structure or even hints as to the basis of his knowledge and training in that field.  (Dkt #129 Tang's Motion to Suppress Evid., Exh. 1 at 3:8-9).  Similarly, he points to a description of the Chinese military on a Chinese government website he accessed through the internet and specifically discusses its content but an examination of the website, based on the reference in the affidavit, reveals that it is entirely written in Chinese, a language he does not speak or write.[1]  Instead, as will be discussed

---

[1] When the case agent went to Dr. Tang's apartment, he brought an agent with him to translate questions and answers in Chinese.  *See*, FD 302, Exhibit 7, Motion to Suppress Statements (Dkt #130).

elsewhere, he relied on computer automated translations of the materials.

Notwithstanding the affidavit's failure to provide any legally significant detail regarding the affiant's training and experience, the government contends affiant is "uniquely qualified to draw the conclusions contained in the search warrant affidavit." (Dkt #136 at 6:14-16).  This is apparently because the affiant is part of an FBI "counterintelligence squad" that specializes in ferreting out matters of national security and intellectual property theft and such investigative work is wholly in line with the FBI's counterintelligence responsibilities. (Dkt #129 Tang's Motion to Suppress Evid., Exh. 1 at 1:8-10).  That, of course, begs the point.  The warrant did not seek evidence relating to intellectual property theft, and appropriately so because Dr. Tang never had access to the research program's intellectual property.  But just being on a squad that investigates matters of counterintelligence does not provide probable cause to broadly search computers and other electronic devices belonging to someone from a specific country, nor does it provide the basis for bold statements concerning what would be found if those devices were searched.

Apart from providing no substantial information as to the affiant's actual training and relevant background, the affidavit also contains no information to support the bare conclusions he makes as to Dr. Tang's professional affiliation with the Fourth Medical Military University in Xi'an, China, <u>a fact she herself had included on her J-1 non-immigrant visa application almost a year prior to the warrant application</u>. In fact, she not only listed her formal affiliation, she also supplied her email address -- which clearly shows a professional association with FMMU.  Using a photograph the affiant says "appears to depict" the defendant in a uniform, it relies on a "description…found online" which indicates the uniform is associated with "Civilian Cadres" of the PLA.  (Dkt #129 Tang's Motion to Suppress Evid., Exh. 1 at 3:2-4). Again, no source material is described, or verified from a reliable and credible source and/or accurate translations.  The fundamental point that there are professionals associated with the military, particularly since they are civilians in nature, does not

add to the probable cause in the manner the affidavit claims.  Without a clearly stated factual foundation, based on reliable and credible sources, the affidavit's bare assertions – when derived from unverified internet research and called into question by the conflicting evidence appearing on the visa application itself – do not amount to probable cause.

Instead, the government skirts past the affidavit's deficiencies regarding the open-source searches, skipping a sound analysis.  At its core, the affidavit relies only on articles and information gathered through the open-source internet searches.  Given the fact that the articles identified their authors and their related businesses, it can be vouched safe that contact could have been made with them to verify credibility and reliability.  None was made.  The articles and materials were not only unverified, to the extent that the online research included information on a Chinese government website or found in other articles, they were translated using an unnamed online translation tool, itself not verified as accurate.  Thus, the materials themselves, to the extent they contain factual statements, are nothing more than uncorroborated "rank hearsay" utterly lacking in probative value.  *Crews v. Monarch Fire Prot. Dist.*, 771 F.3d 1085, 1092 (8th Cir. 2014) (noting that news articles are not competent evidence of what is stated therein).  Because the sources are unknown and untested, the assertions contained therein amount to essentially the same caliber of information found incapable of establishing probable cause in *Illinois v. Gates*.

Furthermore, the affiant's reliance on an online translation tool is patently unreasonable and unreliable.  Online translation tools, while potentially useful in some contexts, are nowhere near sufficiently reliable to sustain a probable cause determination in this instance.  "That's why many experts—even Google itself--- caution against relying on the popular Google Translate for complex tasks." (https://www.propublica.org/article/google-says-google-translate-cant-replace-human-translators-immigration-officials-have-used-it-to-vet-refugees).  In fact, a

Google disclaimer regarding its translation tool expressly disclaims all warranties related to its translations, "INCLUDING ANY WARRANTIES OF ACCURACY, [or] RELIABILITY… ." *Id*.  The disclaimer also explicitly warns that "no automated translation is perfect nor is it intended to replace human translators." *Id*.  The affidavit does not identify what online translation tool was used, but it is clear that the exclusive use of automated translation tools is patently unreliable and unreasonable by generally accepted standards, and certainly by those governing search warrants.  Their use was clearly unnecessary because the agent's own reports show that Chinese language translators were available at the FBI, including the Supervising Special Agent who translated and asked questions in Mandarin Chinese during Dr. Tang's interrogation.

Based on the totality of the circumstances, the warrant affidavit fails to establish probable cause.  The information it contains is lacking in the indicia of veracity, reliability, and basis of knowledge required to support probable cause.  *Illinois v. Gates*, 462 U.S. 213, 230 (1983).  The reliance on unverified information from unstated and unverified sources does not meet the rigors of the Fourth Amendment's fundamental protections.  Similarly, the reliance on patently unreliable translation software is inherently unreasonable and amounts to a reckless disregard for accuracy.

The affidavit is so lacking in indicia of probable cause and recklessly based on inherently unreliable information that no good faith exception should apply.  *See United States v. Leon*, 468 U.S. 897 (1984).  All evidence derived from the warrant should therefore be suppressed.

/ / /

/ / /

/ / /

/ / /

/ / /

**B.      The Warrant's Authorization to Search an Undeniably Overbroad Array of Property for Clearly Overbroad Categories of Evidence Lacking a Necessary Nexus to the Alleged Offense Renders the Search of Computer Devices Unreasonable Under the Fourth Amendment.**

The warrant application was obtained as part of an investigation into alleged visa fraud by a specific person. The warrant authorizes the wholesale search and seizure of any type of computer, accessory, or potential electronic storage device. It authorizes the search for "evidence of the times [a] computer was used" with no limitation on the searchable time-period or the user, thus effectively authorizing the search of seized computers outside the relevant investigative period, and with no reasonable parameters. In addition, the warrant authorizes the wholesale search of documents with no established nexus to the crime under investigation, including all bank records, other records of financial transactions, contracts for payment, employment, financial agreements, checks and balance sheets, and accounting records. (Dkt #129 Tang's Motion to Suppress Evid., Exh.1 at 12-14).

The agent's affidavit set forth no factual allegations sufficient to justify such a broad intrusion into matters wholly unrelated to the investigation in both time and proximity. The Fourth Amendment's particularity requirement demands more in the context of a search for digital evidence. "The Fourth Amendment's specificity requirement prevents officers from engaging in general, exploratory searches by limiting their discretion and providing specific guidance as to what can and cannot be searched and seized." *United States v. Adjani*, 452 F.3d 1140, 1147 (9th Cir. 2006). "The contours of these protections in the context of computer searches pose difficult questions. Computers are simultaneously file cabinets (with millions of files) and locked desk drawers; they can be repositories of innocent and deeply personal information, but also of evidence of crimes. The former must be protected, the latter discovered." *Id*. at 1152.

The Ninth Circuit's particularity test is clearly set out in *United States v. Spilotro*, 800 F.2d 959 (9th Cir. 1986). The factors enumerated in *Spilotro* include "(1) whether probable cause exists to seize all items of a particular type described in the warrant; (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued." *Spilotro*, 800 F.2d at 963. Consideration of these factors here highlight the warrant's overbreadth.

First, in a case involving an alleged visa fraud, there was no factual nexus justifying the broad search and seizure of every type of electronic device, accessory, or storage media at the scene. Similarly, the warrant here did not limit its scope to communications and documents reasonably related to the visa application and information bearing on what was reported during the application process, and it failed to set out any objective standard for differentiating between what is to be seized and what is not. Instead, the warrant does what the agent wanted it to do, it authorizes the search of categories of evidence which are inherently broad and "authorize[s] wholesale seizure of entire categories of items not generally evidence of criminal activity and provide[s] no guidelines to distinguish items used lawfully from those the government had probable cause to seize." *Spilotro*, 800 F.2d at 964. Finally, it is clear the government could have provided a more particularized description of the type of evidence it sought in connection with the investigation of an allegedly false visa application because by the affiant's own statements, the FBI was involved in another supposedly like investigation in the Wang case, months before.

The sparse facts and unverified assertions here already lack sufficient reliability to establish probable cause. Beyond that, the warrant's broad authority to search categories of evidence for which no factual nexus to the investigation was established renders it facially overbroad. The warrant effectively authorizes an unreasonable "exploratory rummaging in a person's belongings" that the Fourth

Amendment is designed to protect against. *Andreson v. Maryland*, 427 U.S. 463, 480 (1976). Since the warrant was patently overbroad, suppression of any evidence derived from the seizure of defendant's electronic media is mandated.

## II.    Conclusion

The items seized pursuant to the warrant must be suppressed for lack of probable cause arising from the affidavit's lack of reliable, verified information. While perhaps the information could have been verified during the weeks preceding the application for the warrant, it was not. The warrant could have been more narrowly drawn or supported by more cogent information, but it was not, even though the FBI had investigated like cases before.

This was not intended to be an intelligence gathering effort but rather an attempt to gather evidence to support a criminal prosecution regarding a visa application. Suppression of evidence seized from defendant's electronic devices is mandated because the warrant's authorization is unconstitutionally overbroad. Finally, in the face of such a lack of probable cause and the clear overbreadth of the warrant, no reasonable agent could believe that he was acting in good faith.

Dated: May 5, 2021              **SEGAL & ASSOCIATES, PC**

                                      By:    /s/ Malcolm Segal_____
                                               MALCOLM SEGAL
                                               Counsel for Defendant

                                      **LAW OFFICE of THOMAS A. JOHNSON**

                                      By:    /s/ Thomas A. Johnson_____
                                             THOMAS A. JOHNSON
                                             Counsel for Defendant