Malcolm Segal, SBN 075481
Emily E. Doringer, SBN 208727
**SEGAL & ASSOCIATES, PC**
400 Capitol Mall, Suite 2550
Sacramento, CA  95814
Telephone: (916) 441-0886
msegal@segal-pc.com

Thomas A. Johnson, SBN 119203
**Law Office of Thomas A. Johnson**
400 Capitol Mall, Suite 2560
Sacramento, CA 95814
Telephone: (916) 442-4022
taj@tomjohnsonlaw.com

Patrick Wong, SBN 241740
**Patrick Wong, Esq.**
145 El Camino Real
Menlo Park, CA 94025-5234
Telephone: (650) 391-5366
patrick@wong.law

Attorneys for Defendant
JUAN TANG

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>TANG JUAN,<br>aka Juan Tang,<br><br>  Defendant. | Case No:  2:20-CR-0134 JAM<br><br>**DEFENDANT'S REPLY TO GOVERNMENT OPPOSITION TO MOTION TO SUPPRESS CUSTODIAL STATEMENTS TO LAW ENFORCEMENT**<br><br>Date:   TBD<br>Time:  TBD<br>Crtrm: 6, 14th Floor<br>Judge:  Hon. John A. Mendez |

-1-

Defendant's Reply to Government's Opposition to Motion to Suppress Custodial Statements

## I.     Introduction

The government alleges that while six FBI agents concealed themselves outside of Dr. Tang's apartment, waiting to serve a search warrant, two agents – only one of whom has supplied a declaration in support of the opposition and the only person in the room who did not speak Mandarin Chinese – the two agents conducted an entirely pleasant and voluntary interview of a Chinese citizen in a small room of a very small apartment as she was getting her family ready to move out during a global pandemic and take her elderly mother to the airport.  That is not what happened.

There is no doubt that the two masked agents conducted a lengthy, multi-hour interview, which was both an accusatory and detailed interrogation, carried out in two languages, after gaining entrance by showing their badges.  The decision to not provide *Miranda* warnings was deliberate and made with full knowledge that the subject of the interview would assume she had to agree to an interview.  The material issue subject to a clear factual dispute concerns the custodial nature of the interrogation.

While the known or admitted facts already establish that Dr. Tang was subjected to a custodial interrogation and that the failure to advise her of her right to remain silent (or any of her other rights to refuse entry, to consult counsel, to obtain her own translator, to end the interrogation at any point, etc.) violated her right against self-incrimination and her right to *Miranda* protection.  *Miranda v. Arizona*, 384 U.S. 436 (1966).  However, to the extent any material facts regarding the totality of the circumstances of the interrogation are disputed, a hearing is required to resolve those inconsistencies.  *United States v. Horwell,* 231 F.3d 615, 620 (9th Cir. 2000).

## II.     Argument

As a visiting foreign civilian scientist in the United States with her mother and daughter, abroad for the first time on temporary visas, the physical, cultural, linguistic, and practical context of the interrogation renders it coercive.  Dr. Tang's

-2-

Defendant's Reply to Government's Opposition to Motion to Suppress Custodial Statements

(and her family's) freedom was sufficiently deprived to render her statements involuntary and inadmissible. *Miranda*, 384 U.S. at 445. The case presents a clear example of why, "without proper safeguards, the process of in-custody interrogation of persons suspected or accused of a crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id*. at 467. Confronted in her home, Dr. Tang was both suspected and explicitly accused, in front of her mother and child, by armed agents who did not display firearms but were clearly carrying them, demanding her to identify herself and to question her regarding purportedly incriminating evidence. *United States v. Barnes*, 713 F.3d 1200, 1204 (9th Cir. 2013).

The circumstances presented were coercive to the point that her fundamental rights required that she be "warned prior to any questioning that [s]he has the right to remain silent, that anything [s]he says can be used against h[er] in a court of law, that [s]he has the right to the presence of an attorney, and that if [s]he cannot afford an attorney one will be appointed for h[er] prior to any questioning if [s]he so desires." *Miranda*, 384 U.S. at 479. She was not advised of those rights at any time during the nearly two-hour confrontation by agents. Although shockingly little substantive documentation of the extensive bilingual interrogation by multiple agents apparently exists, it is conceded she was not given *Miranda* warnings. Dkt. #137 at 9:26-27. The circumstances of the interrogation were custodial for the purposes of her fundamental rights against self-incrimination. Her statements, and any evidence derived therefrom, must be suppressed. *Murray v. United States*, 487 U.S. 533, 536-537 (1988).

A. **The Police Dominated Environment Was Inherently Restrictive and Coercive.**

As the head of the family unit, and the express target of the investigation, Dr. Tang was under a clear psychological pressure to speak to the authorities who capitalized on her mother's accession to their requests to allow them inside the home

to ostensibly speak to her.  It is easy to understand the psychological pressure felt by a visiting civilian scientist trying to move her family back overseas in the midst of a worsening global pandemic, when armed host government law enforcement agents arrive and enter the apartment to interrogate her with purported evidence in hand, in front of her mother and daughter.  *Barnes*, 713 F.3d at 1204.  There can be no doubt regarding the chaotic personal and cultural confusion such an experience entailed.  With limited understanding of English and no personal experience with law enforcement encounters in this country, anyone in defendant's position would reasonably feel compelled to engage with the agents rather than suffer unknown consequences, such as immediate arrest or other lengthier separation from her family members in her immediate, sole care.

There was an added pressure because the family's belongings were largely packed and inaccessible to them, and the apartment did not afford the usual comforts of a home.  As the most capable and responsible adult caring for her elderly mother and small daughter, there can be no question Dr. Tang reasonably understood her freedom was restricted.  When asked for her passport identification, and monitored by agents as she retrieved it, Dr. Tang handed it over.  It was never returned to her exclusive possession or control.  She was not allowed to go put it away; rather it was placed within view and reach of the agents sitting with Dr. Tang and between her and the front door, the apartment's only exit.  Any reasonable person in the same circumstance would not feel "free to leave or terminate the interrogation." *United States v. Craighead*, 539 F.3d 1073, 1085 (9th Cir. 2008).

For Fifth Amendment and *Miranda* purposes, a person not formally placed under arrest is still considered to be "in custody" when a reasonable person in the same position would have understood themselves to be restrained.  *Craighead*, 539 F.3d at 1087.  As the head of the family in the home, Dr. Tang was not only the obvious and stated target of the interrogation, but she was also the only person who could possibly interact with the agents.  Her movements were restricted, as were the

-4-
Defendant's Reply to Government's Opposition to Motion to Suppress Custodial Statements

movements of her mother and daughter. Touted as a friendly gesture of goodwill, presenting a toy to the family under such circumstances sent a clear message that Dr. Tang was to use it to placate her frightened child while she remained present and cooperated with the investigating agents. In addition, Dr. Tang was unable to communicate privately with her mother or daughter due to the presence of the agents. She was afforded no opportunity to speak with her family prior to being interrogated, to explain the confusing and distressing situation as best she could to them, nor was she advised of her right to do so. Similarly, not only was she not advised of her right to seek counsel or other assistance; she had no means to communicate privately with anyone while in the immediate presence of law enforcement agents monitoring her movements and actions and guarding her most important means of identification. *Id*; *see also United States v. Kim*, 292 F.3d 969 (9th Cir. 2002).

**B.     A Hearing is Required to Resolve Material Disputed Facts.**

"The determination of whether an in-home interrogation was custodial is necessarily fact intensive." *Craighead*, 539 F.3d at 1084. In its opposition, the government insists no contested facts exist warranting an evidentiary hearing, but the record reveals a multitude of significant factual disputes. The government has not assisted the Court in resolving the dispute because it has not submitted a declaration from the agent who conducted the interrogation in Chinese, who was the supervisor at the scene and who was directing the process as well as the other agents. Nor has the government presented the Court with a draft of the questions the agents intended to ask in what they posit to be a planned friendly interview – preceding the execution of a search warrant by a search team hidden outside – or a written plan for the interrogation in which they describe how it was to be a friendly encounter. The fact that the plans are absent, the interview notes sparse and the reported details of the interrogation and tactics virtually non-existent, raises the question as to what happened during the nearly two-hour encounter? Since it

Defendant's Reply to Government's Opposition to Motion to Suppress Custodial Statements

appears that the facts are in dispute, this is precisely the procedural stance which requires an evidentiary hearing. *United States v. Kyle*, 565 Fed.App. 672, 673 (9th Cir. 2014). Moreover, the facts are alleged "with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000).

### III.  Conclusion

Given the inherently coercive totality of circumstances, a person in Dr. Tang's position would reasonably feel restrained, and the interrogation was custodial in nature. Since Dr. Tang was never advised of her right to decline the interrogation and avail herself of the advice of counsel (a custodial confrontation planned by the team of agents when they sought a telephonic search warrant and before they executed it), Dr. Tang's statements and all derivative evidence must be suppressed. To the extent the government opposition disputes the facts in the moving papers and exhibits, a hearing is required.

Dated: May 5, 2021  **SEGAL & ASSOCIATES, PC**

By: /s/ Malcolm Segal
MALCOLM SEGAL
EMILY E. DORINGER
Counsel for Defendant

**LAW OFFICE of THOMAS A. JOHNSON**

By: /s/ Thomas A. Johnson
THOMAS A. JOHNSON
Counsel for Defendant