UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:20-cr-00134-JAM |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO A SEARCH WARRANT** |
| TANG JUAN aka JUAN TANG, | |
| Defendant. | |

On April 9, 2021, Defendant filed a Motion to Suppress Evidence seized pursuant to a June 20, 2020 search warrant. See Mot. to Suppress ("Mot."), ECF No. 129. Defendant argues that the warrant authorizing the search and seizure of items at her apartment in Davis, California was not supported by probable cause and was overbroad. Id. The Government opposed this Motion. See Opp'n, ECF No. 136. Defendant replied. See Reply, ECF No. 140. For the reasons discussed below, the Court DENIES Defendant's Motion to Suppress.

I. FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

On October 28, 2019, Defendant, a cancer researcher and Chinese national applied for and, on November 5, 2019, was granted, a non-immigrant visa to participate in a University of California, Davis cancer treatment-method research program. Mot.

1

at 2; Opp'n at 1-2.  Allegedly, Defendant made a false statement on the non-immigrant visa application when she answered "no" in response to the question: "have you ever served in the military?" on her visa application.  Mot. at 3; Opp'n at 2. Specifically, the FBI discovered through an internet search, a photograph of Tang wearing a People's Liberation Army – Air Force ("PLAAF") uniform bearing the insignia of the Civilian Cadre, attached to a news article about a forum in Xi'an, China published on or around April 14, 2019.  Mot. at 3; Opp'n at 2.  Tang was listed as one of four experts invited to the forum and introduced as an associate researcher at the Air Force Military Medical University, Molecular Medicine Translation Center.  Opp'n at 2. According to the Chinese Ministry of Defense Website, members of the PLAAF Civilian Cadre are considered active duty military members.  Id.  Additional open source internet searches revealed other articles about Tang and listed her affiliation with the Air Force Military Medical University/Fourth Military Medical University and China People's Liberation Air Force Military Medical University, Molecular Medicine Translation Center.

    Based upon this information, his training and experience, his knowledge of the Chinese military structure, and the similarities between Tang and another case investigated by the FBI, Steven Dilland, a Special Agent with the FBI, applied for and U.S. Magistrate Judge Kendall Newman issued a search warrant for Tang's apartment in Davis, California.  Decl. of Malcolm Segal Ex. 1 ("Aff."), ECF No. 129-2.  The search warrant authorized the FBI to search Tang's residence and electronic devices for evidence related to visa fraud in violation of 18

U.S.C. § 1546(a). Id. at 12.

On June 20, 2020, FBI agents executed the search warrant at her residence, seizing electronic media and her Chinese passport. Mot. at 1; Opp'n at 3. A subsequent review of the seized electronic evidence revealed numerous photographs of Tang in military uniform. Opp'n at 3. Agents also found a video of a presentation conducted by Tang in which she is wearing what appears to be the PLAAF military uniform and performs a salute, recorded within days of her entrance into the United States. Id. Chinese military documents that detailed Tang's research were also seized, as well as evidence of her initial military enlistment date, and a letter she sent in May 2020 to the China Scholarship Council and PRC Consulate General personnel stating that her research in the United States was ending and requesting to resume her military duties in China. Id.

Defendant now seeks to suppress this evidence. She argues that the affidavit failed to establish probable cause and the warrant was overbroad as it relates to the search and seizure of "digital evidence" from Tang's residence. Mot. at 4. Accordingly, she argues all the evidence seized pursuant to the June 20, 2020 search warrant, as well as all derivative evidence, must be suppressed. Id.

## II. OPINION

### A. Probable Cause

The Fourth Amendment to the United States Constitution, which protects against unreasonable searches and seizures, provides that "no warrants shall issue, but upon probable cause,

supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. "Probable cause for a search requires a fair probability that contraband or evidence of a crime will be found in a particular place, based on the totality of the circumstances." United States v. Grant, 682 F.3d 827, 832 (9th Cir. 2012) (internal quotation marks and citation omitted). Reviewing courts are obligated to give deference to a magistrate judge's determination of probable cause. Illinois v. Gates, 462 U.S. 213, 236 (1983). The magistrate judge's determination should be upheld as long as the affidavit provided "a substantial basis" for determining that probable cause existed. Id. at 239.

The probable cause determination in this case was based on an affidavit prepared by a Special Agent with the Federal Bureau of Investigations ("FBI"). Aff. at 1. The affidavit notes the agent's nearly thirteen years of experience in the FBI's counterintelligence squad investigating allegations relating to United States national security. Id. As the affidavit sets out, this case began with an investigation of Wang Xin by FBI agents in San Francisco. Id. at 2. Wang had admitted during an interview with Customs and Border Protections ("CBP") that he intentionally made fraudulent statements about his Chinese People's Liberation Army military service in order to increase the likelihood of receiving a visa to study at the University of California, San Francisco. Id. FBI San Francisco obtained an email communication from Wang on or around May 15, 2020 which stated that he and 16 other colleagues from the Air Force

4

Military Medical University, also known as Fourth Military Medical University ("AFMMU/FMMU"), were in the United States. Id. at 4. FBI San Francisco conducted further inquiries and discovered that Tang had a similar background and visa application to Wang. FBI San Francisco then referred Tang to FBI Sacramento. Id. at 2.

The FBI's investigation of Tang revealed that she answered "no" to the question "have you served in the military" on her visa application. However, as described in the affidavit, several discoveries gave the government reason to believe this was untrue and that she had in fact served in the military.

First, an open internet search of her name uncovered an article listing her employment as a researcher at the Air Force Military Medical University, Molecular Medicine Translation Center. Id. at 2-3. Further, this same article contained a picture of her wearing the PLAAF uniform bearing what the agent determined to be the Civilian Cadre insignia based on a description of it online. Id. at 3. The Ministry of National Defense of the People's Republic of China website confirmed that Civilian Cadres of the Chinese People's Liberation Army are active military personnel. Id. Additionally, the agent states this is consistent with his understanding, based upon his training and experience, of the Chinese People's Liberation Army military structure. The agent also confirmed the photo was of Tang by comparing it to her DMV picture. Id. Both pictures can be found in the affidavit. Id. at 3-4.

Second, the FBI found similarities between Tang and Wang, who had admitted to engaging in visa fraud. Wang on his visa

5

application listed that he attended and was currently employed by the AFMMU/FFMU in Shaanxi, China. Id. During CBP's interview of Wang, he stated that he was paid 13,000 RMB per month. Id. He also admitted that the Chinese Scholarship Council funded his studies in the United States. Id. Further, as mentioned, the FBI obtained email communications from Wang where he stated in May of 2020 that 16 other AFMMU/FFMU colleagues were in the United States. Id. Tang, like Wang, listed on her visa application that she attended the AFMMU/FFMU in Shaanxi, China. She listed her current employment was at Xijing Hospital Institute of Basic Medical Science Xi'an. Id. An online search revealed this is an affiliate of the AFMMU/FMMU. Tang also wrote on her visa application that her monthly income was 13,000 RMB and her work was funded by the Chinese Scholarship Fund, the same as Wang. Id. Additionally, both Tang and Wang listed email addresses on their applications with the same domain, "fmm.edu.cn." Id. at 5. An internet search connected this domain to AFMMU/FMMU. In sum, a review of both individuals' backgrounds yielded similarities in education, salary, employment, and funding agencies for their expenses in the United States.

Third, Tang in her application listed her Chinese work telephone number, which according to FBI database records, was also listed as the work number for the Director of National Translation Scientific Center of Molecule Medicine and Director of Cell Engineering Research Center and Department of Cell Biology at AFMMU/FMMU. Id.

Finally, an open source internet search of Tang revealed

6

several articles. Id. One titled "2019 Chinese Conference on Oncology" listed Tang as a speaker at the conference and that she worked at the AFMMU/FMMU. Id. Another article published around July 2, 2019 listed Tang's work as China People's Liberation Air Force Military Medical University Molecular Medicine Translation Center. Id. A search also revealed a pdf document with a Chinese government seal from the Shaanxi Province Science and Technology Office, which listed both Tang and Wang as among 100 youth selected for Shaanxi Province Advance Talent Plan. Id.

Based on all the information set forth above, the Court finds the magistrate judge had "a substantial basis" for determining there was probable cause that Tang had misrepresented her military service on her visa application and that evidence of such service would be found in her apartment. See Gates, 462 U.S. at 239. Defendant, however, argues there was not probable cause, as the internet sources relied upon in the affidavit and translation tools used were not verified for accuracy. See Mot. at 4-9. To support her position, Defendant relies on precedent finding that allegations of an unknown informant are insufficient to support probable cause. Id. at 8. It is well established that information from an unverified, anonymous tip alone is not enough to demonstrate probable cause. See Gates, 462 U.S. at 239. Something else is required to indicate it is reliable. See id. at 232-35. But the Court is not persuaded that this situation, where a trained FBI agent relies on certain sources found on the internet, is akin to an unverified, anonymous tip.

This is not a case where law enforcement officers merely state they have received information that the defendant is engaged in criminal activity with no indication of who provided the information or how that person acquired such information. See Aguilar v. State of Tex., 378 U.S. 108, 109 (1964) abrogated by Illinois v. Gates, 462 U.S. 213 (1983). Rather, the affidavit specifically lists where the sources can be found. For example, the agent stated he relied on the Ministry of National Defense of the People's Republic of China's website to determine that Civilian Cadres are active military personnel. Aff. at 3. He also included a hyperlink. Id. Further, while it is true that the affidavit does not set forth the authors of the various articles, the information contained therein indicates where the information was obtained. For instance, one article describes a forum hosted in the city of Xi'an, China, where Tang was listed as one of four experts invited. Id. at 2. This context suggests that the writer obtained the information from attending or participating in the forum. See Gates, 462 U.S. at 234 ("even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case.")

The Court is also not persuaded that all sources found on the internet pose the same reliability concerns as an informant's tip to the police. A tip, unlike an online article or government website, is offered with a criminal investigation in mind. Accordingly, there is reason to doubt the informant's

motivation and truthfulness.  While the internet of course is host to numerous unreliable and untruthful sources, certain forums are more prone to skepticism.  For example, one might give more pause to information found on a Reddit comment than information from a government website or prominent news source.  Thus, Defendant's argument might be more persuasive if the affidavit at issue here had merely stated that "internet searches revealed Tang worked for the military."  This would be similar to the affidavit found insufficient in <u>Aguilar</u> which stated "[a]ffiants have received reliable information from a credible person and do believe that that [narcotics] are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law."  378 U.S. 108, 109.  But the affiant in this case did not merely state the information came from the internet.  Rather, the affiant provided a description of the source, as well as a hyper-link, allowing the magistrate to draw his own inferences about their reliability. <u>See</u> <u>Gates</u>, 462 U.S. at 238-39 ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him [. . .] there is a fair probability that contraband or evidence of a crime will be found in a particular place."); <u>Aguilar</u>, 378 U.S. at 114-15 (explaining that the magistrate must be informed of some of the underlying circumstances regarding the source of information so that the inferences which lead to the complaint are drawn by them.)

 Here, there is little reason to doubt the reliability of the information contained in an article about a medical forum or

the executive department's website.  Further, the affiant, a
Special Agent with the FBI's counterintelligence unit, was in a
unique position to assess whether these sources were reliable.
See United States v. Butler, 74 F.3d 916, 920-21 (9th Cir. 1996)
(law enforcement officers can rely on their own experience in
establishing probable cause).  The magistrate judge was also
entitled to rely on the agent's expertise.  See United States v.
Fernandez, 388 F.3d 1199, 1253 (2004) ("a magistrate may rely on
the conclusions of experienced law enforcement officers")
(internal quotations and citation omitted).[1]

    Finally, even if internet sources were comparable to an
informant's tip, an informant's tip can establish probable cause
when corroborated.  See Gates, 462 U.S. at 242.  Here, the
affidavit is not based on internet sources alone.  One article,
for instance, contained a picture of Tang in what appeared to be
military uniform.  The agent compared this photo to Tang's DMV
photo and determined they were the same person.  But the
magistrate did not have to rely solely on the agent's
conclusion.  Both the military and DMV picture were provided in
the affidavit, allowing Magistrate Judge Newman to make his own
determination.  Further, Defendant's connections with the
AFMMU/FMMU is supported by her own responses in her visa

---

[1] For similar reasons the Court rejects Defendant's argument that these sources failed to establish probable cause because agent Dilland did not detail the translation tools used. See Reply at 5-6. As a Special Agent in the FBI counterintelligence unit he was qualified to assess the translations accuracy and reliability. Further, as mentioned, this information was corroborated by other evidence, including a photograph of her in military gear.

10

application. See Aff. at 4-5 ("Like Wang, Tang (according to her visa application) attended the Fourth Military Medical University" they also both "listed email addresses on their respective NIV applications that resolved to the same domain, i.e., fmmu.edu.en"); id at 5 (Tang listed her Chinese work telephone number which according to FBI database records was the work number for a Director at the AFMMMU/FMMU).

Accordingly, based on the totality of the circumstances, the Court finds the affidavit provided "a substantial basis" for Magistrate Judge Newman's determination that probable cause existed. Id. at 239.

B. Particularity of Warrant

"[F]or a search to be reasonable, the warrant must be specific." In Re Grand Jury Subpoenas Dated Dec. 10, 926 F.2d 847, 856-57 (9th Cir. 1991) (citations omitted). "The specificity required in a warrant varies depending on the circumstances of the case and the type of items involved. Warrants which describe generic categories of items are not necessarily invalid if a more precise description of the items subject to seizure is not possible." United States v. Spilotro, 800 F.2d 959, 963 (9th Cir. 1986). When determining whether a warrant is sufficiently specific, a reviewing court should consider: (1) whether probable cause existed to seize all items of a particular type described in the warrant; (2) whether the warrant set out objective standards by which executing officers could differentiate items subject to seizure; and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the

warrant was issued. Id. at 963-64.

Defendant argues the warrant was facially overbroad as it authorized "the wholesale search and seizure of all of Dr. Tang's electronic devices and media, as well as related forensic data." Mot. at 14. In United States v. Schesso, the Ninth Circuit rejected an overbreadth challenge to a warrant that authorized the search and seizure of "[a]ny computer or electronic equipment or digital storage devices that are capable of be used" for violations of Washington statutes prohibiting possession of and dealing in child pornography. 730 F.3d 1040-146 (9th Cir. 2013). The Court reasoned that because there was a fair probability that evidence of child pornography would be found on Schesso's digital equipment, the warrant was not overbroad as "[t]he government had no way of knowing which or how many illicit files there might be or where they might be stored, or of describing the items to be seized in a more precise manner." Id. at 1046.

Similarly, here, for the reasons explained above, the government had probable cause to believe Defendant had misrepresented her military service and that evidence of such service could be found on her electronic devices. As in Schesso, agent Dilland stated that based on his "training and experience, immigration and employment records, including visa records, travel records, employment history, bank records, records of financial transactions, contracts for payment, employment, and financial agreements, checks and balance sheets, and accounting records are commonly stored at a subject's home in documentary and/or electronic form, including on computers

and other electronic devices such as tablets or smart phones." Aff. at 5. Because there was a fair probability that evidence of Tang's military service would be found on her digital equipment, the warrant was not overbroad as "[t]he government had no way of knowing which or how many illicit files there might be or where they might be stored." Schesso, 730 F.3d at 1046.

In Spilotro, a case which the defense relies, the Ninth Circuit found the warrant at issue was not specific enough to satisfy the Fourth Amendment. 800 F.2d at 966. In that case, the warrant authorized "the seizure of address books, notebooks, documents, records, assets, photographs, and other items and paraphernalia evidencing violations of the multiple criminal statutes listed." Id. at 964. Importantly, the warrant did not specify the crime allegedly committed, instead relying on thirteen statutes, "some of exceptional scope." Id. at 965. The Court noted the warrant may have been adequate had it "more specifically identified the alleged criminal activities in which the items were sought" and that "[r]eference to a specific illegal activity can, in appropriate cases, provide substantive guidance for the officer's exercise of discretion in executing the warrant." Id. at 964. Here, unlike Spilotro, the warrant specified Defendant's alleged crime (violation(s) of Title 18, United States Code Section 1546(a), Fraud and Misuse of Visas, Permits and Other Documents). Aff. at 1-2. The warrant also limited the search to evidence of violations of this crime. Id. at 9. The Court finds this met the specificity requirement of the Fourth Amendment. See United States v. Wong, 334 F.3d 831,

837-38 (9th Cir. 2003) ("The specificity of the items listed in the warrant combined with the language . . . directing officers to 'obtain data as it relates to this case' from the computers is sufficiently specific to focus the officer's search."); United States v. Hay, 231 F.3d 630, 638 (9th Cir. 2000)(finding the warrant was sufficiently particular because the attachment to the warrant mentioned the crime of child pornography and the preface to the warrant limited the scope of the search to evidence of criminal activity.)

    C.   Good Faith Exception

Even if the warrant was invalid, the evidence would still be admissible under the good faith exception. The exclusionary rule was adopted as a "judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." United States v. Calandra, 414 U.S. 338, 248 (1974). "Under this rule, evidence obtain in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure [. . .] as well [as] the fruit of the illegally seized evidence." Id. at 347 (internal citations omitted).

However, an exception to the exclusionary rule exists when officers rely in good faith on the warrant. United States v. Luong, 470 U.S. F.3d 898, 902 (9th Cir. 2006). Under the good faith exception, the exclusionary rule does not bar "the governments introduction of evidence obtained by officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated." Id. at 902. The Court must ask "whether a reasonable well trained officer would have known that

14

the search was illegal despite the magistrate's authorization." Id. (internal quotation marks and citation omitted).

"[T]he Supreme Court has identified at least four situations in which reliance on a warrant cannot be considered objectively reasonable, and therefore the good faith exception cannot apply: (1) when the affiant knowingly or recklessly misleads the judge with false information; (2) when the judge wholly abandons his or her neutral role; (3) when the affidavit is so lacking in indicia of probable cause that official belief in the existence is objectively unreasonable; and (4) when the warrant is so facially deficient that executing officers cannot reasonably presume it to be valid (i.e., it fails to specify the place to be searched or the things to be seized)." Id.

Here, there is no indication, and Defendant does not argue, that the affiant intentionally or recklessly misled the judge, or that Magistrate Judge Newman wholly abandoned his neutral role. Further, as described in detail above, the similarities between Tang and Wang, the photograph of her in military gear, online sources listing her affiliation with the military, agent Dilland's training and expertise, and Tang's own responses in her visa application provided "at least a colorable argument for probable cause." Id.

Finally, the warrant was not so facially deficient that the executing officers could not reasonably presume it to be valid. The warrant first describes in detail the address of the place to be searched and its characteristics. See Aff. at 11. It also lists the type of documentary evidence to be seized including "visa and immigration records, identification

15

documents, travel records, documents related to military service, bank records, records of financial transactions, contracts for payment, employment, and financial agreements, checks and balance sheets, and accounting records" as well as digital evidence. Id. at 12. Even if the Court found the warrant did not sufficiently specify the digital evidence to be seized this is not a case where the warrant was so facially deficient that the executing officers could not reasonably presume it to be valid. See Groh v. Ramirez, 540 U.S. 551, 559-565 (2004) (finding a warrant was so facially deficient a reasonable officer could not reasonably presume it to be valid when "in the space set aside for a description of the items to be seized, the warrant stated that the items consisted of a 'single dwelling residence . . . blue in color.'")

Accordingly, even if the warrant was deficient, because the officers would have been objectively reasonable in their reliance on it, the good faith exception would apply.

### III. ORDER

For the reasons set forth above, the Court DENIES Defendant's Motion to Suppress:

IT IS SO ORDERED.

Dated: May 28, 2021

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE