Malcolm Segal, SBN 075481
Emily E. Doringer, SBN 208727
**SEGAL & ASSOCIATES, PC**
400 Capitol Mall, Suite 2550
Sacramento, CA 95814
Telephone: (916) 441-0886
msegal@segal-pc.com

Thomas A. Johnson, SBN 119203
**Law Office of Thomas A. Johnson**
400 Capitol Mall, Suite 2560
Sacramento, CA 95814
Telephone: (916) 442-4022
taj@tomjohnsonlaw.com

Patrick Wong, SBN 241740
**Patrick Wong, Esq.**
145 El Camino Real
Menlo Park, CA 94025-5234
Telephone: (650) 391-5366
patrick@wong.law

Attorneys for Defendant
JUAN TANG

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>TANG JUAN,<br>　aka Juan Tang,<br><br>　　　　Defendant. | Case No: 2:20-CR-0134 JAM<br><br>**DEFENDANT'S TRIAL BRIEF AND MEMORANDUM SUPPORTING DISMISSAL AT TRIAL**<br><br>Date:　July 26, 2021<br>Time:　9:15 a.m.<br>Crtrm:　6, 14th Floor<br>Judge:　Hon. John A. Mendez |

The defendant, Dr. Juan Tang, submits this trial brief and argument to inform the Court of the most salient issues from the defense perspective, and particularly so considering information recently disclosed by the government under *Brady v. Maryland*. The Court is well informed regarding the background of this case, and only a short summary of the pertinent facts is necessary here.

## I. Background of the Case

Dr. Tang, at age 38, has had a successful and award-winning career as a cancer researcher. She was invited to participate in a cancer research program at U.C. Davis as a visiting scholar by a leading professor and researcher at the Cancer Center, who believed that her participation would both benefit the study and enhance Dr. Tang's knowledge. For years United States and Chinese scholars have collaborated on cancer research with both countries being allowed to visit and study abroad. U.C. Davis certified Dr. Tang to the Department of State as eligible to participate in the program and she applied for a J-1 Visa to come to the United States, intending to bring along her 9-year-old daughter and mother. Dr. Tang was formally invited by U.C.D. to participate as a cancer researcher here in Sacramento and the J-1 Visa was approved. Her husband, an orthopedic surgeon, accompanied them on the visit to the United States as a tourist. Having traveled here with her family to enjoy sightseeing, including a trip to Disneyland, Dr. Tang commenced the process of onboarding with the U.C. Davis research project and rented a student apartment in Davis. The Covid-19 pandemic stalled the program's research activities and by mid-March 2020, the laboratory closed, halting the research and changing the defendant's work plans. She asked for permission to return home to China.

Then, as she, her mother, and her young daughter (from whom she has now been separated from for over a year) were moving out of their rented student apartment and leaving to the airport for the trip back to China, the FBI suddenly descended on the almost empty apartment. Although they had obtained a search

Defendant's Trial Brief & Memorandum Supporting Dismissal at Trial

warrant, the agents chose instead to proceed by ruse, leaving the search team in hiding while they gained entrance to the apartment and interrogated Dr. Tang without providing her with her Miranda rights or any information about her right to refuse to answer questions. In the process of violating Dr. Tang's fundamental constitutional rights by conducting a custodial interrogation without any advisement of rights, the agents asked her if she had her passport there and to produce it "for identification." This Court has found that her statements to agents are inadmissible. Dkt. #157.[1] Her passport and visa documents, the direct result of her involuntary responses to an unlawful coercive interrogation, are equally inadmissible. *See* Def. *In Limine* No. 1, Dkt. #182.[2]

## II. The Defense at Trial

Should the case go forward to trial, the defense will substantially focus on the government's own witnesses, exhibits and evidence gathered during the investigation and expects to utilize that testimony to demonstrate reasonable doubt to the jury. It also anticipates producing additional evidence and witnesses. The defense's factual and legal theory in this case has not faltered or changed since its inception--<u>the defense intends to show that the question on the DS-160 NIV application is fundamentally unclear as to the meaning of the words: "Have you ever served in the military?"</u> The fundamental lack of clarity and resulting potential for multiple correct and reasonable interpretations eviscerates an essential element of the government's case regarding specific intent. 18 U.S.C. §1546(a). Dr. Tang completed that form as part of the lengthy vetting process required of her to become a visiting scholar. To the extent the government claims that she intentionally did not disclose her civilian affiliation with the military, they are wrong, the evidence will show that she clearly disclosed her educational and

---

[1] Exclusion of her statements on June 20, 2020, leaves the prosecution with no evidence in support of Count 2 of the Superseding Indictment.

[2] Exclusion of the unlawfully obtained identification documents also leaves the prosecution without evidence supporting Count 1 of the Superseding Indictment.

-3-

Defendant's Trial Brief & Memorandum Supporting Dismissal at Trial

professional background to U.C. Davis by providing the program with substantial information concerning her work at the Fourth Military Medical University (FMMU) as a cancer researcher, so that the program could certify her to the Department of State, although they knew that background already, including her publications which clearly disclosed and referenced her work at the FMMU and the FMMU (now the Airforce) hospital. Moreover, she disclosed her awards from the FMMU as an Elite Scholar.

She also disclosed her education at the FMMU, the fact that she had a current email address at the FMMU on her DS 160 application, and the correct information about her work location. Her patently honest disclosures, coupled with the mounting evidence of fundamental lack of clarity on the NIV form's question about prior military service, demonstrates her lack of intent to answer the application question falsely and to deceive the Department of State consular officer during her brief interview in China.

These few documents alone offer ample evidence of her lack of criminal intent but the government's own expert supports that position. Even retired army officer Blasko, who appears to have left the military and any affiliation with a university, college, foundation or even a think tank well over twenty (20) years ago, and a self-taught and self-accredited student of the Chinese Military, does not contend that Dr. Tang is a soldier or officer in the army but rather says that she is an active-duty civilian affiliated with the military. Recent *Brady* disclosures demanded by the defense and resisted by the government, just days before trial, reveal that the government has deliberately withheld for months reports and documents which show that the FBI was aware that at least one independent and well-respected expert when consulted could not offer an opinion because he found the question on the visa application to be unclear in light of the civilian status of the scientist under review.

/ / /

-4-
Defendant's Trial Brief & Memorandum Supporting Dismissal at Trial

### III. The FBI's Deliberate Failure to Disclose Critical Exculpatory Evidence to the Court and to the Defense Warrants a Dismissal of this Ill-Conceived Indictment.

There is dissension in the FBI's own ranks. Although the FBI in Sacramento knew in April of 2021 that two analysts tasked to review cases involving technology transfer authored a research report – which they deemed important enough to be provided to the Director or Deputy Director of the FBI – which opines that the question concerning "military service" on the NIV 160 form "potentially lacks clarity" as it applies to Chinese medical scientists, who do not necessarily see their civilian affiliation with the military universities and hospitals as serving in the military. *See*, Exh. A (TANG 2993-2997) and B (TANG 2873) attached.

This recent disclosure demonstrates that the government intentionally did not comply with *Brady* and did not fulfill its promise to the Magistrate Judge or comply with her discovery order, but instead used that delay to "interview," and in reality "woodshed," the FBI analysts who offered the opinion that the question concerning whether the applicant "had ever served in the military" is fundamentally unclear.[3] When the defense demanded production of the names, backgrounds, and opinions of the individuals on whom the FBI analysts relied on in the report, the government suddenly began producing records, including just days ago, a <u>heavily redacted report dated for release four months ago, on April 1,</u>

---

[3]As the defense previously argued in its Rule 12(b) Motion to Dismiss: "[A] question is fundamentally ambiguous when '[people] of ordinary intelligence' cannot arrive at a mutual understanding of its meaning." *United States v. Culliton*, 328 F.3d at 1078; *see also United States v. Boone*, 951 F.2d 1526, 1534 (9th Cir. 1991) (defining "fundamental ambiguity" in the analogous context of providing false statements in violation of 18 U.S.C. § 1623)…. "[A] question is fundamentally ambiguous when '[people] of ordinary intelligence' cannot arrive at a mutual understanding of its meaning." *Culliton*, 328 F.3d at 1078; *see also United States v. Boone*, 951 F.2d 1526, 1534 (9th Cir. 1991) (defining "fundamental ambiguity" in the analogous context of providing false statements in violation of 18 U.S.C. § 1623). *See* Dkt. #131.

<u>2021, which the government did not disclose to this Court when it ruled on Dr. Tang's Motion to Dismiss</u>.

The report also corroborates the position the defense has oft repeated in its arguments and filings: that "the vast majority of [FMMU] affiliated individuals in the US are <u>civilian employees</u> of the PLA." Exh. A at 2994. And, the Report, upon which the Defendant expects to cross-examine government witnesses, states opinions such as: "[redacted] interviews in July 2020 addressed the distinction between being 'affiliated with' versus 'in' the military by describing the different 'types' of PLA personnel (i.e., active duty, civilian cadre, and civilian contract personnel)" and stated "[the visa question] remains an unreliable indicator of nefarious obfuscation of one's military affiliations." Exh. A at 2994.

Other aspects of the Report further demonstrate its relevance, importance and ultimate corroborative effect on the defense theory of the case, when it states that "individuals as well as PLA experts interviewed in the cases cited above suggest that the visa application form (DS-160) potentially lacks clarity when it comes to declaring one's military service or affiliation. China's PLA is not a direct analog to how the US military services are set up, especially regarding the PLA's Civilian Cadre….<u>Among the Civilian Cadre are a significant number of doctors and nurses and other professionals that at times are required to wear a military type uniform, but who would not necessarily consider themselves soldiers despite being considered as active duty</u>." Exh. A at 2997. (Emphasis added.)

Although the FBI "Background Note" or Report (and a similar one dated **March 21, 2021**) were in the hands of the FBI in this District when this Court was considering whether the DS-160 lacked sufficient clarity to satisfy constitutional standards pursuant to Dr. Tang's Motion to Dismiss under Rule 12 (b)(1), it was never disclosed to the Court and not brought to the defense's attention until well after this Court determined to deny the motion and then leave the issue to the

///

jury.[4] With the defense motion to dismiss pending and eventually heard, the defendant and the Court were prevented from knowing these critical and relevant facts – truthful disclosure was required of the government. The court received extensive arguments under Rule 12 for dismissal, with the government forcefully arguing that the question on the form was clear.[5] The defense motion to dismiss was filed on April 9, 2021 – after both recently disclosed FBI analysis reports had already been authored. It is inconceivable that the FBI, preparing for trial in this and other cases and having devoted so much of its resources, as well as those of District Courts, did not realize the importance of the reports and the necessity of disclosing them to the Court and counsel for the defendants in all of the cases they identified as being impacted. To the extent that the government now claims it was unaware of the existence of the report demonstrating FBI analysts believe the DS-160 application is unclear and susceptible to confusion by the applicant, the report itself clearly indicates otherwise. In fact, it appears the report was authored through a coordinated effort involving the FBI's Sacramento headquarters. The report lists the Divisions, Field Offices, LEGATs or OGAs "with whom [the] piece was coordinated." The report then indicates that it is a product "coordinated with FBI San Francisco, FBI Los Angeles, FBI Boston, FBI Indianapolis, **FBI Sacramento**, and Counterintelligence Division: [redacted]." *Id.* Exh. A at 2995.

/ / /

---

[4] Dr. Tang wishes to do nothing to jeopardize the long-awaited trial date in this case and does not seek trial delay by bringing this matter to the Court's attention.

[5] As the defense argued then: As a complete defense, the issue of fundamental ambiguity in the indictment is the proper subject of a Rule 12(b)(1) pretrial motion. *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986); *United States v. Covington*, 395 U.S. 57, 60 (1969) ("[a] defense is thus 'capable of determination' [before trial] if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.")….. If the question on the visa application is excessively vague and fundamentally ambiguous, Dr. Tang's responses cannot form the basis for an indictment. *See United States v. Culliton*, 328 F.3d 1074, 1078 (9th Cir. 2003) (citations omitted).

Defendant's Trial Brief & Memorandum Supporting Dismissal at Trial

It is important to note the views expressed in the analyst's reports fit well with the way in which the term "military" is used in the United States. Here it connotes service in the "armed forces," both colloquially and by statutory definition. The relevant statute defines as the United States Armed Forces the Army, Navy, Air Force, Marines, Coast Guard and Space Force. 10 USC §101(4).[6] The statute defines "Uniformed Services," including the armed forces and the commissioned corps of two other agencies: <u>NOAA</u> and <u>PHS</u>. 10 USC §101(a)(5). The statute defines "military departments" as the Departments of the Army, Navy and Air Force. 10 USC §101(a)(8). Civilians in the United States are recruited by and often work for the military in a purely civilian capacity. *See* Dkt. #27 at Exh. 5-6 (Defense Motion for Pretrial Release.) Similarly, there are individuals designated as "service acquisition executives" defined as a "civilian official within a military department" (i.e., the Army, Navy, or Air Force). 10 USC §101(a)(10).[7] Any reasonable real-world analysis is clear: and, presumably, these statutory definitions inform the question on the NIV application and make it fundamentally ambiguous when a person from China, within an entirely different set of affiliations attempts to navigate the question.

## IV. Conclusion

In sum, the defense continues to believe that this case should be dismissed without being submitted to the jury because it is based on the fruit of an

---

[6] The statute, 10 USC §101, is subject to judicial notice. Fed. R. Evid. §201(b)(2); *See, In re Blumer*, 95 B.R. 143, 147 (9th Cir. 1988) (discussing appropriate matters for judicial notice); *Clemmons v. Bohannon,* 918 F.2d 858, 864 n.5 (10th Cir. 1990) (taking judicial notice of "federal statutes and regulations") (vacated on other grounds at *Clemmons v. Bohannon*, 956 F.2d 1523); *United States v. Pickard*, 100 F.Supp 3d 981, 1011 n.8 (EDCA 2015) (taking judicial notice of state statutory laws).

[7] Within the U.S. military, "active duty" means full time duty in active military service; but it does not include full time National Guard duty (in the Army or Air National Guards), even though the Army and Air Force are part of the "military departments" of the U.S. 10 USC §101(d)(1). "Military munitions" are defined as all ammunition and components produced for or used by "the armed forces" for national defense and security. 10 USC §101(e)(4)(A).

Defendant's Trial Brief & Memorandum Supporting Dismissal at Trial

intentional unlawful interrogation of the defendant by FBI agents[8] and because the charge itself does not meet constitutional standards since it rests on a patently unclear and undefined question on the DS 160 NIV application.[9] In addition, the Court may wish to consider whether the lack of candor by the FBI, in delaying disclosure of exculpatory information or at the very least by failing to disclose information bearing on a litigated issue before the Court to this Court and the Defendant at the time the Rule 12 Motion to Dismiss was heard, warrants the sanction of dismissal or an evidentiary sanction which will enable the defense to make use of the information and require the government to produce all relevant witnesses.

Dated: July 19, 2021.  **SEGAL & ASSOCIATES, PC**

By: /s/ Malcolm Segal  
MALCOLM SEGAL  
EMILY E. DORINGER  
Counsel for Defendant

**LAW OFFICE of THOMAS A. JOHNSON**

By: /s/ Thomas A. Johnson  
THOMAS A. JOHNSON  
Counsel for Defendant

---

[8] See, Defendant's Motions in Limine section 1. Dkt. #182 filed July 16, 2021.

[9] See, Defendant's Motion to Dismiss under Rule 12 (b)(1) Dkt. #131 filed April 9, 2021.