PHILLIP A. TALBERT
Acting United States Attorney
HEIKO P. COPPOLA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

DAVID LIM
Trial Attorney
US Department of Justice
National Security Division
Washington, D.C.

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:17-CR-101-MCE |
| Plaintiff, | UNITED STATES' TRIAL BRIEF |
| v. | DATE: August 26, 2019 |
| TANG JUAN,<br>(a.k.a. Juan Tang) | TIME: 9:15 a.m.<br>COURT: Hon. John A. Mendez |
| Defendant. | |

The United States, by and through its undersigned counsel, respectfully submits this trial brief as a summary of points, as well as notice of the United States' position regarding issues that may arise at trial.

### I.     PROCEDURAL POSTURE

Trial is set for July 26, 2021, at 9:15 a.m. before the Honorable John A. Mendez. The United States estimates that its case-in-chief will last approximately five days, assuming that trial proceeds on an abbreviated time schedule. The government expects to call five witnesses in its case in chief.

The defendant, Tang Juan has not waived her trial by jury. She is currently out of custody. Defense counsel has not indicated that they plan to present any affirmative defenses, such as mistake of

fact, insanity or mental incapacity, or any others. *See, e.g.*, Fed. R. Evid. 12.2. Consequently, the government would object to any such evidence should the defense seek to have it admitted or heard.

## II. SUMMARY OF CHARGE

The Superseding Indictment charges Tang with visa fraud in violation 18 U.S.C. § 1546(a) by knowingly uttering, using, attempting to use, possessing, obtaining, accepting, and receiving a non-immigrant visa knowing the document to have been procured by means of any false claim and statement, otherwise procured by fraud, and unlawfully obtained. The Superseding Indictment further alleges that Tang misrepresented her status as a member of the Chinese military on her U.S. non-immigrant visa application.

## III. STATEMENT OF FACTS

The United States anticipates that the evidence presented at trial will show the following:

### A. The FBI's investigation

Tang applied for a United States Non-Immigrant J-1Visa ("NIV") on or about October 28, 2019, which was issued on or about November 5, 2019. According to the Department of State website, a J-1 visa is a non-immigrant document "for individuals approved to participate in work-and study-based exchange visitor programs." Department of State records reflect that Tang intended to conduct cancer treatment-method research at the University of California, Davis ("UCD"). On or about December 27, 2019, Tang entered the United States through San Francisco International Airport.

On Tang's NIV application, under the Additional Work/Education/Training section, Tang answered "no" when responding to the question: "have you ever served in the military?" Similarly, Tang also responded in the negative to questions related to communist party membership and whether she had any special chemical or biological experience. The FBI's investigation determined Tang's answers to these questions were false.

Specifically, with respect to Tang's military service, the FBI discovered through an internet search a photograph of Tang wearing a People's Liberation Army – Air Force ("PLAAF") uniform bearing the insignia of the Civilian Cadre, attached to a Chinese news article about a forum in Xi'an, China published on or about April 14, 2019. Tang was listed as one of four experts invited to the forum and was further introduced in the article, wearing what appeared to be a military uniform, and listing her

employment as an associate researcher at Air Force Military Medical University, Molecular Medicine Translation Center. According to the Chinese Ministry of Defense Website, members of the PLAAF Civilian Cadre are considered active duty military members. Additional open source internet searches revealed other articles about Tang and listed her affiliation with Air Force Military Medical University/Fourth Military Medical University and China People's Liberation Air Force Military Medical University, Molecular Medicine Translation Center.

Based upon this information, his training and experience, his knowledge of Chinese military structure, and the similarities between Tang and the Wang Xin case that was investigated by the FBI and subsequently charged by the U.S. Attorney's Office in the Northern District of California, on June 20, 2020, FBI SA Steven Dilland applied for and U.S. Magistrate Kendall J, Newman issued a search warrant for Tang's apartment in Davis, California. The search warrant authorized the FBI to search Tang's residence and seize electronic devices and other items for evidence related to visa fraud in violation of 18 U.S.C. § 1546(a).

### B. Search warrant execution

Tang was contacted at her residence in Davis, California by the FBI on June 20, 2020. Tang identified herself using a People's Republic of China passport at the beginning of the contact, after FBI agents were invited inside the residence. FBI agents executed the search warrant at her residence, seizing electronic media and her Chinese passport. Agents found Tang's NIV within her Chinese passport. During a later review of the electronic media evidence seized from Tang's residence, agents discovered a myriad of different photographs of Tang wearing military uniforms. Agents also found a video depicting a presentation conducted by Tang in which she is wearing what appears to be the PLAAF military uniform found in their open source search, and she begins the presentation with a salute. The video presentation was recorded within days of Tang's entrance into the United States on the NIV.

Agents also found evidence of Tang's affiliation with the Chinese Communist Party ("CCP") and military enlistment date. Agents discovered Chinese military documents that detailed Tang's involvement with research related to biohazard research, biological weapons damage prevention, and new drug creation. Further review and analysis of Tang's electronic media a letter dated in May 2020 to

the China Scholarship Council and PRC Consulate General personnel indicating that her research in the United States was concluded and requesting to return to China to resume her military tasks. The FBI also located a letter from the Political Department of the Fourth Military Medical University to the PRC Consulate that identified Tang as current military personnel, provided a military identification number, noted she was a scholar studying at UC Davis, that she had completed her research and that she needed to return home to complete her military topic tasks. Agents also located various other documents, including talent plan applications, resume's and CVs and award recommendations that identify Tang as a member of the Chinese military.

## IV. LEGAL AND EVIDENTIARY ISSUES

### A. Elements of the Charged Offense

The defendant is charged with violating 18 U.S.C. § 1546(a), which provides in pertinent part:

> Whoever knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay in the United States or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained…shall be fined under this title or imprisoned…

To convict on this charge, the government must show beyond a reasonable doubt that:

The elements of 18 U.S.C. § 1546(a) are that the defendant: (1) knowingly uttered, used, attempted to use, possessed, obtained, accepted, or receiving a non-immigrant visa and (2) knowing that the document is forged, counterfeited, altered, falsely made, to have been procured by means of any false claim or statement, otherwise procured by fraud or unlawfully obtained.

### B. Witness Testimony

The United States expects that FBI Special Agent ("SA") Steven Dilland will testify as the primary case in agent in this matter. It is expected that SA Dilland's testimony will discuss the actions he took in this case from the beginning of the investigation, including his preparation of a search

warrant, initial contact and identification of Tang, and the search of her electronic media. SA Dilland will provide foundational testimony as to various documents, photographs and videos that were located on Tang's electronic devices, as well as, seizure of her passport containing the J-1 visa

The United States also expects to call FBI Computer Analyst Alan Schmidt to testify as a foundational witness. Mr. Schmidt will testify that he forensically downloaded the contents of all of Tang's electronic devices for search. Beyond this downloading, he did not perform any forensic analysis of Tang's electronic devices. He may testify as to the meaning of items found that were "deleted." Mr. Schmidt will also testify that he downloaded a complete copy of Tang's devices onto a hard drive for defense counsel.

The United States also expects to call Dr. Jian Jian Li, who was Tang's supervisor at UC Davis. Dr. Li is expected to testify as to his interactions with Tang, her time in his lab, that he assigned her scientific research articles written in English for her review, that she gave a presentation in English as to her research, and that he communicated primarily with her in English over email.

The United States also expects to call three expert witnesses: Dennis Blasko, Andrea Whiting, and Linda Deng. Their testimony is outlined below.

C. **Expert Testimony**

A witness who is "qualified as an expert by knowledge, skill, experience, training, or education" may present expert testimony, "in the form of an opinion or otherwise," if his or her "specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *United States v. Espinosa*, 827 F.2d 604, 612 (9th Cir. 1987).

The United States expects to call Dennis Blasko. Mr. Blasko will testify as an expert on People's Liberation Army ("PLA" or "Chinese military"). In addition to his education, experience, and research, he will testify concerning: (1) the structure of the Chinese military based upon his research, including, the PLA personnel system and PLA Academies; (2) his review of certain documents, photographs, and a video that were found within Tang's electronic devices and are described in detail within his report; and (3) provide his opinion based upon the evidentiary review described in his report that Tang is an active duty member of the Chinese military, serving first as a military cadet, then as a member of the Civil Cadre and holds the rank equivalent to a lieutenant colonel.

The United States expects to call Andrea Whiting. A career State Department employee and experienced consular officer, Ms. Whiting will testify as an expert as to the processing of non-immigrant visas. Ms. Whiting has served as a consular officer on no fewer than three occasions in two different countries. She has processed approximately 30,000 NIV applications, 2,000 of which were J visas. As such, Ms. Whiting is familiar with the NIV application and interview process which is uniform at State Department posts world-wide. In addition to her education, training, and experience, she will testify concerning, among other things: (1) her review of Tang Juan's NIV application, a certified copy of which has been previously provided in discovery; (2) the application process for an NIV J visas; (3) the interview process for an NIV J visa; (4) that interviews for NIV J visas are conducted in the English language because English language proficiency is a requirement for granting a J visa, especially for those who will be working in academic or research positions; (5) that honest answers to all the questions on the NIV application are expected; and (6) the answer to the NIV application question about military service is material in that it has a natural tendency to influence, or the capability to influence, whether an NIV J visa is granted.

Absent a stipulation to the admissibility and accuracy of certain translations, the United States expects to call FBI Linguist Linda Deng to authenticate the translations she performed of various documents in this case. Ms. Deng will testify as an expert in Mandarin Chinese to English translation. A native Chinese speaker, Ms. Deng has over twenty years of experience working as a translator in the United States and has been employed by the FBI since 2004. In addition to her education, training, and experience, she will testify concerning, among other things: (1) the process followed by FBI language analysts when translating documents into English, including peer review; (2) the translations from Mandarin Chinese to English that she performed in this case; and (3) provide descriptions of the documents and video that she translated.

### D. Out of Order Testimony

The government anticipates calling approximately five witnesses, and it is possible that evidence will be presented out of order. The government will make every effort to present the evidence to the jury in a comprehensible sequence.

| | |
|---|---|
| 1 | **E. Cross Examination and Impeachment** |
| 2 | With all witnesses, the scope of a cross-examination is within the discretion of the trial court. |
| 3 | Fed. R. Evid. 611(b). In general, "[c]ross-examination should be limited to the subject matter of the |
| 4 | direct examination and matters affecting the credibility of the witness." *Id.* As to the latter, the United |
| 5 | States reserves the right, and will seek leave of the Court as necessary, to use impeachment materials |
| 6 | that may not have been introduced at any point in the trial, as evidence or otherwise. |
| 7 | The scope of cross-examination does not, of course, extend to matters that are irrelevant, or as to |
| 8 | which the relevance is substantially outweighed by unfair prejudice. Fed. R. Evid. 402, 403. |
| 9 | **F. Authentication, Identification, and Chain of Custody** |
| 10 | The United States intends to introduce physical evidence in the form of Tang's passport |
| 11 | containing her J-1 visa, her electronic devices, as well as various documents, a video, and photographs. |
| 12 | Under Rule 901(a) of the Federal Rules of Evidence, "[t]he requirement of authentication or |
| 13 | identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a |
| 14 | finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). The proponent |
| 15 | of evidence need not establish a proper foundation through personal knowledge; a proper foundation |
| 16 | "can rest on any manner permitted by Federal Rule of Evidence 901(b) or 902." *United States v. Pang*, |
| 17 | 362 F.3d 1187, 1193 (9th Cir. 2004); *Alexander Dawson, Inc. v. NLRB*, 586 F.2d 1300, 1302 (9th Cir |
| 18 | 1978) (content of document and circumstances of discovery sufficient for admissibility). Rule 901(a) |
| 19 | requires the government to make only a prima facie showing of authenticity or identification "so that a |
| 20 | reasonable juror could find in favor of authenticity or identification." *United States v. Chu Kong Yin*, |
| 21 | 935 F.2d 990, 996 (9th Cir. 1991); *United States v. Black*, 767 F.2d 1334, 1342 (9th Cir. 1985). Once |
| 22 | the government meets this burden, "the credibility or probative force of the evidence offered is, |
| 23 | ultimately, an issue for the jury." *Black*, 767 F.2d at 1342. |
| 24 | To be admitted into evidence a physical exhibit must be in substantially the same condition as |
| 25 | when the crime was committed. The Court may admit the evidence if there is "a reasonable probability |
| 26 | the article has not been changed in important respects." *United States v. Harrington*, 923 F.2d 1371, |
| 27 | 1374 (9th Cir. 1991). The government need not establish all links in the chain of custody of an item or |
| 28 | call all persons who were in a position to come into contact with it. *Reyes v. United States*, 383 F.2d |

734 (9th Cir. 1967). Alleged gaps in the chain of custody go to the weight of the evidence rather than to its admissibility. *United States v. Jefferson*, 714 F.2d 689, 696 (7th Cir. 1983). Further, in the absence of evidence of tampering, there is a presumption that public officers have properly discharged their official duties. *Harrington*, 923 F.2d at 1374.

### G. Photographs

Photographs and other relevant items may be introduced. Under Rule 901(a) of the Federal Rules of Evidence, a witness familiar with a scene or object depicted in a photograph may provide a sufficient foundation for admission of the photograph by testifying that the photograph fairly and accurately depicts the scene or the object at some relevant time. *United States v. Brannon*, 616 F.2d 413, 416 (9th Cir.), *cert. denied sub nom. Cox v. United States*, 447 U.S. 908 (1980); *United States v. Albert,* 595 F.2d 283, 290 (5th Cir.1979) (voice identification by conversation participant proper).

### H. Translations

The United States expects to introduce translations of various documents written in Mandarin Chinese and a video of Tang speaking in Mandarin Chinese. The United States has provided Tang with a preliminary list of documents and accompanying translations that it expects to use, as well as Mr. Blasko's expert witness report which contains a recitation of the evidence and translations that he utilized in preparing his opinion.

The use of foreign language transcripts at trial is described in *United States v. Kifwa*, 2017 WL 3599446 (1st Cir. Aug. 22, 2017) (citations omitted):

> Typically, litigants offer recordings as evidence and use transcripts as interpretive aids for the jurors' benefit. The recordings control in the event that they differ from the proffered transcripts. Foreign-language recordings, however, are treated differently. For commonsense reasons, "play[ing] foreign language tapes endlessly to an uncomprehending jury" is not required.
>
> As a result, the parties may agree to forgo having jurors listen to foreign-language recordings that they do not understand. In such circumstances, transcripts containing translations of such recordings may be admitted into evidence as long as they are reliable and properly authenticated. When dealing with translations of foreign-language recordings, the transcripts ordinarily must be divulged to defense counsel sufficiently in advance of trial to allow him to assess their accuracy, raise objections, and craft an informed defense strategy.

As of this writing, Tang has not raised any objections to the proposed translations. At trial, the government anticipates introducing translations – Chinese Mandarin to English – of materials in both verbatim and summary form.

### I. Exclusion of Certain Testimony

The government has provided defendant three draft documents prepared by two FBI analysts in discovery. Should the defense seek to elicit testimony concerning the content of the three draft documents, either on direct or cross-examination, the government will move to exclude such testimony on the basis that it is irrelevant and inadmissible hearsay, pursuant to Fed. R. Evid. 402, 403 and 801.

Trial judges have "wide latitude" in determining the proper scope of cross examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *see also United States v. Lopez*, 885 F.2d 1428, 1438 (9th Cir. 1989). Two factors the trial judge can consider are relevance and prejudice. *Van Arsdall*, 475 U.S. at 679; *Lopez*, 885 F.2d at 1438. A court may limit cross-examination by the defense if the defense is not able to lay a proper foundation." *United States v. Callipari*, 368 F.3d 22, 39 (1st Cir. 2004), vacated on other grounds, 543 U.S. 1098 (2005). In this case, the three documents are unfinalized and unadopted draft documents that contain misstatements of fact and inadmissible opinions. Any reference to them in direct or cross-examination will potentially introduce false or misleading information into the trial and create unnecessary confusion among the jurors.

### J. Reciprocal Discovery

The United States has requested from the defense reciprocal discovery pursuant to Rules 16 and 26.2 of the Federal Rules of Criminal Procedure and Rule 440 of the Local Rules of the U.S. District Court for the Eastern District of California.

At the time of writing, the defense has only provided the United States with some reciprocal discovery, purportedly a portion of its trial exhibits. Tang's deficient expert witness notices are being addressed through motions in limine. To the extent that the defense has other discovery that it will seek to introduce at trial, but which the defense has not disclosed to the United States, that discovery should be excluded in its entirety.

## V. EXCLUSION OF WITNESSES AND CASE AGENT DESIGNATION

At the beginning of trial, the United States intends to move to exclude all witnesses, with the

exception of expert witnesses, as designated before the start of trial, from the courtroom, until those witnesses' testimony has been completed, pursuant to Fed. R. Evid. 615. The government will further move that FBI SA Steve Dilland be designated as the case agent and be exempt from the exclusion order, pursuant to Fed. R. Evid. 615. *See also United States v. Little*, 753 F.2d 1420, 1441 (9th Cir. 1985).

### VI. CONCLUSION

The United States respectfully reserves the right to supplement this trial memorandum to address additional matters that may be raised before or during trial.

Dated: July 19, 2021

PHILLIP A. TALBERT
Acting United States Attorney

By: /s/ HEIKO P. COPPOLA

HEIKO P. COPPOLA
Assistant United States Attorney