PHILLIP A. TALBERT
Acting United States Attorney
HEIKO P. COPPOLA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:20-CR-00134 JAM |
| Plaintiff, | GOVERNMENT'S RESPONSES TO DEFENDANT'S MOTIONS IN LIMINE |
| v. | |
| TANG JUAN, (a.k.a. Juan Tang) | |
| Defendant. | |

## I.    <u>INTRODUCTION</u>

The United States hereby submits the following responses in to defendant Tang Juan's motions in limine.

**Defendant's Motion in Limine No. 1 – The defendant's passport was lawfully seized by the FBI and as a statement of identity cannot be suppressed.**

In what amounts to an untimely Rule 12 motion in which defendant attempts to re-litigate the search warrant and statements suppression motions, defendant now claims that her passport and visa documents contained therein must be suppressed as "a result of her involuntary actions taken at the direction of the interrogating agents," citing this Court's suppression of her statements to FBI agents. Defendant's MIL at 2. The defendant's claims are unavailing.

First, as this Court is aware from having ruled on the all the substantive pretrial motions, SA Dilland obtained a search warrant in advance of his contact with the defendant on June 20, 2020. The search warrant authorized the FBI to search Tang's residence and electronic devices for evidence related to visa fraud in violation of 18 U.S.C. § 1546(a). As the passport and J-1visa contained within it are evidence of visa fraud, the FBI was authorized by the search warrant to seize them. This Court rejected Tang's attempts to suppress the search warrant, holding that based on the totality of the circumstances, "the affidavit provided 'a substantial basis' for Magistrate Judge Newman's determination that probable cause existed." *See* ECF 153 at 11. To that end, the agents acted properly by seizing Tang's passport at the conclusion of their interview.

Second, notwithstanding Tang's assertions to the contrary, the initial contact between SA Dilland and Tang was voluntary. Tang makes much of SA Dilland's clarification testimony before the grand jury during the government's pursuit of the second superseding indictment, however, this testimony does not change the overall facts of this case. The facts related to the initial contact were set out in SA Dilland's declaration attached to the government's opposition to Tang's motion to suppress, which the United States hereby incorporates by reference. Although the parties disputed whether SSA Baoerjin followed Tang to the bedroom when she retrieved her passport, the Court did not resolve this dispute in its order nor did it conduct an evidentiary hearing. There was no dispute as to where the passport was located when SA Dilland retrieved it at the end of the interview – within her reach on a kitchen counter. Furthermore, the Court's suppression order applied only to Tang's statements made during the interview. ECF 157 at 17.

Third, there is simply no evidence to suggest that the FBI's initial contact with Tang prior to beginning the interview was inherently coercive or compelled to the extent that *Miranda* was immediately required before the agents had positively identified Tang. Tang asserts without citation to

persuasive authority that "the interrogation was custodial at its inception" yet fails to include any additional factual information that suggests the initial contact was involuntary. ECF 182 at 4.

Generally, law enforcement personnel are required to advise subjects of their rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) when two conditions are met: (1) the defendant is in custody and (2) is being interrogated. A defendant not formally under arrest may still be "in custody" if he/she is "deprived of his[/her] freedom of action in any significant way." Miranda, 384 U.S. at 444. To determine whether an individual is in custody, the Court examines the totality of the circumstances. *Thompson v Keohane*, 516 U.S. 99, 112 (1995). "Two discrete inquiries are essential to that determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was at liberty to terminate the interrogation and leave." *Id*. Additionally, "not every question posed in a custodial setting is equivalent to 'interrogation.'" *United States v. Booth*, 669 F.2d 1231, 1237 (9th Cir. 1981) and the "routine gathering of background biographical data does not constitute interrogation sufficient to trigger constitutional protections." 776 F.2d 797, 799 (9th Cir. 1985) (citations omitted).

Here, at the time of the initial contact by the FBI, it cannot be said that Tang was in custody and being interrogated. The agents were invited into the residence and identified themselves. This contact took place inside her residence and she was not isolated from her family members. That the agents requested identification to positively identify Tang was not improper or calculated to be incriminating. It was simply to confirm that they were speaking with the correct person, in other words, a request for biographical information. After she identified herself, Tang's passport was not retained but placed within her reach. On these facts it cannot be said that *Miranda* was immediately required once the agents entered the residence.

Generally, to determine voluntariness, courts evaluate the totality of the circumstances in light of the following factors: "(1) whether defendant was in custody; (2) whether the arresting officers have their guns drawn; (3) whether *Miranda* warnings have been given; (4) whether the defendant was told he has a right not to consent; and (5) whether defendant was told a search warrant could be obtained." *United States v. Mora-Alcarez*, 986 F.3d 1151, 1157 (9th Cir. 2021).

Here, at the outset of the FBI's contact, it cannot be said that Tang was in custody. Although *Miranda* warnings were not given, she had freedom of movement and retrieved the passport from a bedroom presumably when the agents requested to confirm her identification. The record is clear that although armed, the agents' weapons were concealed. No mention of obtaining a warrant or attempting to gain consent were made simply because the agents already had obtained a search warrant.

Moreover, even if Tang were in custody at the time she retrieved the passport from the bedroom, "the physical evidence obtained as a result of a custodial interrogation without *Miranda* warnings is nevertheless admissible." *Id.* (citing *United States v. Patane*, 542 U.S. 630 (2004)).

Finally, even if Tang had not retrieved the passport on her own accord, because the agents had obtained a search warrant, they would have inevitably found the passport upon commencing the search. The Court should deny the defendant's motion.

**Defendant's Motion in Limine No. 2 – Blasko is an expert and should not be precluded from testifying.**

The admissibility of expert opinions is governed, *inter alia*, by Fed. R. Evid. 702, which states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)   the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)   the testimony is based on sufficient facts or data;

(c)     the testimony is the product of reliable principles and methods; and

(d)     the expert has reliably applied the principles and methods to the facts of the case.

The trial judge applies these principles in ruling on admissibility, acting as a "gatekeeper." *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 138 (1999) (holding that a judge's "'gatekeeping' obligation applies not only to 'scientific' testimony, but to all expert testimony."). The trial judge exercises broad discretion when discharging their gatekeeping function. *Kumho* 526 U.S. at 152. Although a gatekeeper, "[t]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *Scantlin v. General Elec. Co.*, 510 Fed.Appx. 543, 545 (9th Cir. 2013) (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)). Indeed, as the Supreme Court explained in *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579, 596 (1993), "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky bud admissible evidence."

Tang's motion in limine fails to establish that Blasko is unqualified under Rule 702 to provide expert testimony at trial. As an initial matter, Blasko's testimony centers on a "specialized knowledge" that will help the jury to "understand the evidence [and] to determine a fact at issue." The government's superseding indictment charges the defendant with visa fraud on the premise that she knowingly lied on the visa application when asked "have you ever served in the military?" As previously disclosed to the defendant on May 26, 2021, if accepted as an expert by this Court, retired-Lieutenant Colonel Blasko will testify as an expert on People's Liberation Army ("PLA" or "Chinese military"). In addition to his education, experience, and research, he will testify concerning: (1) the structure of the Chinese military based upon his research, including, the PLA personnel system and PLA Academies; (2) his review of certain documents, photographs, and a video that were found within Tang's electronic devices and are described in detail within his report; and (3) provide his opinion based upon the evidentiary review described in his report that Tang is an active duty member of the Chinese military, serving first as a military cadet, then as a member of the Civil Cadre and that she currently holds the rank equivalent to a lieutenant colonel. The entire scope of Blasko's testimony goes to the most material issue for the trier of fact to reconcile, a point that the defendant appears to concede in her motion: ("[Blasko] is the only

expert witness for the government on the most critical issue in the case, i.e., whether or not there is

sufficient evidence to conclude the defendant answered the J-1 visa application questions accurately.").

(ECF 182 at 7). Accordingly, Blasko's testimony will not cause a "danger of undue prejudice,

confusion, and waste of time," as the defendant argues (ECF 182 at 7), but will instead aid the jury in:

(1) understanding the complex evidence in the case; and (2) deliberating on the ultimate fact at issue.

Second, Blasko's expert testimony will be rooted in sufficient facts and data. Retired-Lieutenant

Colonel Blasko possesses extensive knowledge regarding the Chinese military, rooted in both first-hand

experience and extensive research. *See* Exhibit 1 (Blasko CV) and Exhibit 2 (Blasko Analysis). Blasko

served in the U.S. military for 23 years as a Military Intelligence Officer and Foreign Area Officer

specializing in China. Notably, during his tenure as a U.S. military officer, Mr. Blasko served as

Military Attaché in China and Hong Kong. Since retiring from the military, Blasko has been a

consultant for the U.S. government and non-governmental organizations and has authored two books on

issues related to the Chinese military and PLA, including on a material fact issue for the jury -

identifying Chinese personnel by their uniforms. Despite Blasko's considerable qualifications, the

defendant challenges his ability to provide expert testimony, yet that challenge is not supported by

sufficient detail. For example, Tang alleges that Blasko's "unclear and inconsistent opinions and

analysis on critical facts demonstrate that they are not the product of reliable principles or methods."

(ECF 182 at 6). However, Tang fails to    identify which opinions or analysis are "unclear and

inconsistent." Contrary to her assertions, the materials provided by the government establish that Blasko

bases his opinions and analysis on a reliable set of facts and data, pulled both from his extensive

personal experience and research.

Third, Blasko's expert opinions is the product of reliable principles and methods. Blasko's

opinions are drawn heavily from his personal knowledge and experience in analyzing the Chinese

military and PLA. *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000 ) (affirming district

court's ruling permitting expert testimony from police officer on gang issues, noting the "*Daubert*

factors (peer review, publication, potential error rate, etc.) simply are not applicable to this kind of

testimony, whose reliability depends heavily on the knowledge and experience of the expert, rather than

the methodology or theory behind it."); *see also Kumho* 526 U.S. at 149 ("Engineering testimony rests

upon scientific foundations, the reliability of which will be at issue in some cases….In other cases, the relevant reliability concerns may focus upon personal knowledge or experience.") (internal citations omitted). Here, Blasko's opinions are drawn from his considerable work in the field and in research. Apart from his military service, part of which was spent in China as a Military Attaché, Blasko also worked in the U.S. Intelligence Community ("USIC"), serving as an analyst for the Defense Intelligence Agency, and published numerous articles on matters related to the Chinese military and PLA. *See* Exhibits 1 and 2. Tang is quick to dismiss Blasko's qualifications, arguing that Blasko submitted articles to publications "who accept them without any compensation for his efforts or reject his writings at will." (ECF 182 at 5). Again, the defendant presents broad and unfounded accusations, overlooking the fact that Blasko has been published with distinguished institutions, including the Brookings Institution. *See* ECF 182-1 at 5. Simply put, Tang fails to demonstrate how Blasko's principles and methods are unreliable and irrelevant to the case at hand, and the Court should dismiss this argument.

Lastly, Blasko has applied the principles and methods reliably to the facts of the case. Blasko reviewed a significant amount of the government's evidence. *See* Exhibit 2. As discussed at length in his written analysis (Exhibit 2), Blasko analyzed, among other things, photographs of Tang in multiple military uniforms, the defendant's resume noting various affiliations with PLA-affiliated institutions, and an award certificate indicating that the defendant held the equivalent rank of a lieutenant colonel. *Id*. In synthesizing the evidence, Blasko applied his extensive background and experience, including his personal experience analyzing Chinese military uniforms during his tenure as a Military Attaché to conclude that Tang has served in the PLA from 2004 to 2020. *Id*. In sum, Blasko's background and experience more than qualifies him to testify as an expert in the Chinese military and PLA. Moreover, to the extent the Court has any concerns related to Blasko's ability to aid the jury, the proper remedy is not preclusion, but a "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof…" *Daubert* 509 U.S. at 596.

The Court to deny the defense's motion in limine to preclude the expert testimony of Dennis Blasko.

**Defendant's Motion in Limine No. 3 – Cash found in Tang's residence**

The United States had not planned to address this issue in its case-in-chief and does not object to its exclusion at trial.

### Defendant's Motion in Limine No. 4 – Evidence of English Language Proficiency should be admitted.

Defendant asserts that evidence of Tang's English proficiency found on her NIV application and also in her UC Davis employment file should be excluded as unduly confusing and prejudicial. For the reasons noted below, not only is this evidence relevant, but it is also admissible.

It is now evident that Tang intends to pursue a defense grounded in the notion that the question "have you served in the military" is somehow vague to English and non-English speakers alike. The United States expects that Tang will proffer expert testimony indicating that a translation of the NIV's question into Mandarin Chinese is subject to various interpretations. In order to rebut any suggestion that Tang did not understand the term "military" it is particularly important for the jury to know in the government's case-in-chief that: (1) English language proficiency is required for the issuance of a J-1 visa and the interview is conducted in English, (See Exhibit 3); (2) that the Consular Officer would have made that determination contemporaneously during the interview with Tang at the U.S. consulate and noted it on the NIV; (3) that UC Davis had evidence of English language training in her employment file; and (4) that according to her supervisor, Tang communicated primarily in English while at UC Davis. (See Exhibit 4). None of this evidence is either prejudicial or unduly confusing and directly probative as to Tang's understanding of English. It also rebuts any suggestion that Tang somehow did not understand the term "military."

Additionally, should Tang testify in this case, the United States is entitled to cross-examine her regarding her language proficiency. As Tang has repeatedly stated in her pleadings throughout this litigation, she has a Ph.D. in cellular biology and was coming to the United States to continue her cancer research studies. To do so required some fluency in the English language. That she has utilized an

interpreter throughout this litigation does not mean that she does not understand English or cannot effectively communicate in English.

Tang's entire NIV application is admissible as are her English test scores found in her employment file. Documents are self-authenticating domestic public documents that are sealed and signed if the documents bear:

> (A) a seal purporting to be that of the United States; any state, district, commonwealth, territory, or insular possession of the United States; the former Panama Canal Zone; the Trust Territory of the Pacific Islands; a political subdivision of any of these entities; or a department, agency, or officer of any entity named above; and
> (B) a signature purporting to be an execution or attestation.

Fed. R. Evid. 902(1).

Furthermore, documents that are self-authenticating business records under Rule 902(11) are admissible under Rule 803(6). For such records to be admissible, a certification of the custodian of records or another qualified witness must establish that original or a copy of the records meets the requirements of Federal Rule of Evidence 803(6)(A)-(C). See Fed. R. Evid. 902(11). Rule 803(6) provides, in pertinent part, that records are not excluded by the rule against hearsay so long as:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; [and]
> (C) making the record was a regular practice of that activity[.]

Fed. R. Evid. 803(6)(A)-(C); *see also United States v. Towns*, 718 F.3d 404, 409 (5th Cir. 2013) ("A proper foundation is laid for business records simply by an affidavit that attests to the requisite elements of FRE 803(6).").

Courts, including the Ninth Circuit, have held that certificates of authentication under 902(11) are not testimony and thus do not implicate the Confrontation Clause. *See United States v. Anekwu*, 695 F.3d 967, 974–77 (9th Cir. 2012); *United States v. Yeley-Davis*, 623 F.3d 673, 680-81 (10th Cir. 2011) (agreeing with other circuits and holding that certificates of authenticity presented under Rule 902(11) are not testimonial and not subject to the confrontation clause); *see also Crawford v. Washington*, 541 U.S.C 36, 56 (2014) ("Most of the hearsay exceptions covered statements that by their nature were not

testimonial – for example, business records or statements in furtherance of a conspiracy").

Mindful of this legal framework, district courts, including this court, have routinely held that business records properly authenticated under Rule 902(11) will be admitted at trial without testimony from the custodian of those records. *See, e.g., United States v. Ekwebelem*, No. CR-12-01170-MWF, 2014 WL 12633528, at *1 (C.D. Cal. Sept. 8, 2014) (Fitzgerald, J.) (granting motion in limine to admit bank records); *United States v. Kuzmenko*, No. 2:12-CR-00062 JAM, 2014 WL 1334003, at *2 (E.D. Cal. Apr. 3, 2014) (same); *United States v. Gardley*, No. 2:10-CR-236-GMN-PAL, 2013 WL 4857691, at *1 (D. Nev. Sept. 10, 2013) (same); *United States v. Brugnara*, No. CR 14-00306 WHA, 2015 WL 1907513, at *4 (N.D. Cal. Apr. 23, 2015) (same), aff'd, 856 F.3d 1198 (9th Cir. 2017).

Here, the government has provided to defendant State Department records, along with a certification bearing the seal of that department of the United States government and the signature of a qualified official attesting to the authenticity of those records. Those records are therefore self-authenticating under Rule 902(1). The records are also self-authenticating under Rule 902(11) because the official further certified that they were made from the information provided by defendant at or near in time to when that information was transmitted to the State Department; they were kept in the course of a regularly conducted activity of the State Department and pursuant to the State Department's procedures for the adjudication and retention of visa applications; and they were made as part of a regular practice of that activity. The United States also provided appropriate notice of its intent to rely on Rule 902(11) for the admissibility of these documents. Furthermore, those statements of defendant in the records that the government might offer at trial for the truth of the matter asserted are excluded from the hearsay rule. *See United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) ("self-inculpatory statements, when offered by the government, are admissions by a party-opponent and are therefore not hearsay[.]" (citing Fed. R. Evid. 801(d)(2))).

Similarly, the government has provided to defendant her UC Davis records along with a certificate from a custodian of records. The records are self-authenticating under Rule 902(11) because the official certified that they were made from the information provided by defendant at or near in time to when that information was transmitted to UC Davis; they were kept in the course of a regularly conducted activity of UC Davis; and they were made as part of a regular practice of that activity. The

United States also provided appropriate notice of its intent to rely on Rule 902(11) for the admissibility of these documents.

Finally, with respect to Tang's English test scores, the residual hearsay exception under Rule 807 also applies. This rule of evidence "was designed to encourage the progressive growth and development of federal evidentiary law by giving courts the flexibility to deal with new evidentiary situations which may not be pigeonholed elsewhere." *United States v. Mathis*, 559 F.2d 294, 299 (5th Cir. 1977). Rule 807 provides, in pertinent part, as follows:

> Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804: (1) the statement has equivalent circumstantial guarantees of trustworthiness; (2) it is offered as evidence of a material fact; (3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and (4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a).

The test scores meet the standard set out in Rule 807. First, the test scores have circumstantial guarantees of trustworthiness. They identified Tang by name and provides scores related to the different areas of English comprehension in which she was tested. They were also part of Tang's UC Davis employee file, which strongly suggests that they were documents that UC Davis found important and would have relied on.

Second, the test scores are offered to prove a material fact, namely, that Tang has some English language knowledge. The inference to be drawn is that Tang had sufficient English skills that a major university allowed her to study. Third, it is more probative than other evidence because it is a business record and comes directly from her UC Davis employment file. Fourth, because it is independent corroboration that Tang has English language skills and admitting it serves the best interests of justice and the rules because it promotes the essential truth-seeking function of this criminal trial.

The Court should admit evidence of Tang's English language proficiency.

**Defendant's Motion in Limine No. 5 – Reference to internet resources**

"Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). However, statements offered for "background" rather than for the truth of the matter asserted are not hearsay. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 173 n.18 (1988) (statement was not hearsay where "it was offered to prove what Rainey had said about the accident six months after it happened, and to contribute to a fuller understanding of the material the defense had already placed in evidence"); *United States v. Gadson*, 763 F.3d 1189, 1212 (9th Cir. 2014) ("A witness making statements to provide clarification and context for other statements is not offering evidence for the truth of the matter asserted.").

Defendant moves to exclude the admission of certain Internet search results (the "results") at trial that the government identified and provided to Tang in discovery.[1] As indicated above, the government will not seek to admit these results at trial for the truth of the matter asserted. Instead, the government will seek to introduce the results for the limited purpose of providing background information to the trier of fact. Specifically, the government anticipates introducing the results at trial to provide additional context to the jury on the government's investigation of Tang. The results, which generally cover the Chinese military and the Chinese civilian cadre, address issues that go to the heart of the government's investigation. Most importantly, the results are necessary to aid the jury in understanding the actions taken by the Federal Bureau of Investigation ("FBI"), including the effect on FBI Special Agent Steve Dilland, the lead case agent. *United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991) ("We find that the statement properly was treated as non-hearsay because it was introduced not for the truth of the matter asserted. The statement was introduced…to show the effect on the listener[.]"). To the extent that the Court has concerns about the scope of the government's use of the results at trial, a limiting instruction charging the jury not to accept the results for its truth, not exclusion, is the appropriate remedy.

Most notably, the reliability and authenticity of the results have already been addressed in previous motions. In her Motion to Suppress Evidence (ECF 129), Tang raised many of the same

---

[1] Although it is unclear which specific Internet search results the defendant is seeking to exclude, Tang identified three online articles that were included in the government's search warrant affidavit. *See* ECF 182 at 14, n.4.

arguments that she re-presents in this motion in limine.  *See* ECF 129 at (Challenging the government's search warrant affidavit, in part, because the "open-source materials obtained from the internet [ ] fails to establish that such materials are reasonably trustworthy and should be credited…").  This Court rebuffed such arguments, noting "Here, there is little reason to doubt the reliability of the information contained in an article about a medical forum or the executive department's website.  Further, the affiant, a Special Agent with the FBI's counterintelligence unit, was in a unique position to assess whether these sources were reliable."  ECF 153 at 9-10.  Even in reviewing the defendant's request *de novo*, Tang's argument that the results are unreliable are purely speculative, devoid of any examples demonstrating the unveracity of the results.  Absent a demonstrable issue with its reliability, the results should be presented to the trier of fact as critical background information on the government's case.  *See United States v. Safavian*, 435 F.Supp.2d 36, 38 (D.D.C. 2006) ("The Court need not find that the evidence is necessarily what the proponent claims, but only that there is sufficient evidence that the *jury* ultimately might do so.").

The Court to deny the defense's motion to exclude references to information obtained from internet resources.

### Defendant's Motion in Limine No. 6 – Reference to other cases

The United States had not planned to address this issue in its case-in-chief and does not object to its exclusion at trial.

### Defendant's Motion in Limine No. 7 – References to "secret" research tasks or "biological weapons"

As previewed in the government's Memorandum to Admit Inextricably Intertwined Evidence or Alternatively for Admission Under Rule 404(b), the defendant additionally checked "no" in response to a question as to whether she had any specialized biological experience.  For the reasons set forth below, the government requests that the Court deny the defendant's motion.

### A.    This Evidence is Inextricably Intertwined with the Charged Offenses

The J-1 visa application is admissible in evidence in its entirety as both a business record and a public record under Federal Rules of Evidence 803(6), 901 (2) and (11) respectively.[2] Moreover, it contains statements that are non-hearsay as they are the defendant's own statements. Fed. R. 801(d)(2)(A); *See United States v. Reed*, 227 F.3d 763, 770 (7th Cir. 2000) (Holding statements admitted under Rule 801(d)(2)(A) "need neither be incriminating, inculpatory, against interest, nor otherwise inherently damaging to the declarant's case. Rule 801(d)(2)(A) simply admits those statements made by one party, but offered as evidence by an opposing party." It is one of the primary and most important pieces of evidence in the case and all of the defendant's statements thereon are intrinsic to, and provide necessary context to, the charged offense.

"[E]vidence that is 'inextricably intertwined' with a charged offense is independently admissible and is exempt from the requirements of Rule 404(b). *United States v. Anderson*, 741 F.3d 938, 949 (9th Cir. 2013) (citing Fed. R. Evid. 404(b) advisory committee's notes, which state that Rule 404(b)'s requirements do "not extend to evidence of acts which are 'intrinsic' to the charged offense"). Acts that are "intrinsic" to the charged offense "include evidence constituting a part of the transaction that serves as the basis for the criminal charge." *Id.* (citing *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012)). For example, the Ninth Circuit has held that contemporaneous uncharged drug transactions may be admitted as intrinsic to the charged offense. *Id.* (citing *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995)). The Court has explained that this "is because Rule 404(b) does not apply when offenses committed as part of a single criminal episode become other acts simply because the defendant is indicted for less than all of his actions." *Id.* Documents provided in discovery that reference the defendant's "secret" research or "biological weapons" research are also intertwined with the charged offenses insofar as it is "necessary to permit the

---

[2] *See* Government's Motion in Limine to Admit Defendant's Visa Records, filed on July 16, 2021.

prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Dorsey*, 677 F.3d at 951; *Anderson*, 741 F.3d at 949-50 (explaining that "intrinsic evidence" includes evidence that is necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime). Included in this category is "evidence explaining the nature of a defendant's business activity and providing a context" for various transactions. *Anderson*, 741 F.3d at 949.

Here, all of the defendant's statements on the application form constitute a single criminal episode in which she lied on the visa form to gain entry into the United States. In order to present a clear and comprehensible picture for the jury of the scope of Tang's visa fraud, the United States should be allowed to present evidence related to Tang's other lie on her visa application. The falsehood related to her experience in biological research reflects not only her consciousness of guilt, but also greatly diminishes her ability to argue that her failure to truthfully disclose her military affiliation was simply a mistake or misunderstanding. As such, the jury should be allowed to consider evidence corroborating Tang's lie about her biological research experience. While the defendant opines that the information should be excluded at trial because it "may include proprietary information that is not appropriate for public dissemination" (ECF 182 at 20), Tang offers nothing to support this proposition.

**B.    Alternatively, the Evidence Should be Admitted Under Rule 404(b)**

Federal Rule of Evidence 404(b) limits the general admissibility of relevant evidence, as it makes evidence of other crimes, wrongs, or acts inadmissible to show propensity. *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc). However, such evidence is admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).

Rule 404(b) is a rule of inclusion that permits the government to introduce prior act evidence unless the *only* purpose of the evidence is to show criminal character. *United States v. Curtin*, 489 F.3d

935, 944 (9th Cir. 2007) (en banc). "Once it has been established that the evidence offered" by the government is to establish the defendant's motive, intent, or knowledge, "the 'only' conditions justifying the exclusion of the evidence are those described in Rule 403." *Id.* at 952-53.

In the Ninth Circuit,

> The test for admitting evidence under 404(b) is whether: (1) it tends to prove a material fact; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the act; and (4) where knowledge and intent are at issue, the act is similar to that charged.

*United States v. Tsinnijinnie*, 91 F.3d 1285, 1288-89 (9th Cir. 1996).

Here, the evidence concerning defendant's other misrepresentation on the visa application tend to establish the defendant's intent, knowledge, and absence of mistake and meet the Ninth Circuit's test for admission under Rule 404(b). This evidence is not offered to show criminal character. Simply put, Tang's other lie, and evidence corroborating that lie, is probative of her overall intent to obfuscate on the J-1 visa application. Evidence indicating Tang lied about her specialized biological experience tends to show an absence of mistake or accident with respect to answering the question on the visa application regarding her military service. The government expects Tang will take the position that she simply misunderstood the question related to military service or that it was confusing. The fact that Tang made other false representations and that there is corroborating evidence to that effect, seriously undercuts that position.

This other misrepresentation is not remote in time, as they were made contemporaneously with the charged misstatement, and the government expects to be able to sufficiently prove these misrepresentations with witness testimony and the other evidence outlined above. Additionally, knowledge and intent are at issue as to the charges in this case. As charged in the superseding indictment, knowledge that the visa had been obtain through fraudulent means in an element of the offense.

Finally, Rule 403 does not justify exclusion of this evidence. "Rule 403 . . . is 'an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence." *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (quoting *United States v. Patterson*, 819 F.2d 1495, 1505 (9th Cir. 1987)). For it to apply, "the danger of prejudice must not merely outweigh the probative value of the evidence, but substantially outweigh it." *Id.* "Unfair prejudice" is measured by the extent to which testimony "makes conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Bailleaux*, 685 F.2d 1105, 1111 (9th Cir. 1982).

Here, the prejudice of the other falsehood on the defendant's visa application simply do not outweigh their probative value. They simply paint a complete picture of the defendant's actions. None of this evidence is likely to provoke an emotional jury response nor is there any danger that the additional lies will somehow impact the jury's attitude toward Tang. The evidence is relevant because shows the extent to which Tang was willing to go in order to obtain a non-immigrant visa.

The Court to deny the defense's with respect to references of "Secret" research tasks or "Biological Weapons" research.

### Defendant's Motion in Limine No. 8 – References to Defendant's hospital and consulate stays

The United States had not planned to address these issues in its case-in-chief and does not object to their exclusion at trial.

### Defendant's Motion in Limine No. 9 – Deletion of data files on defendant's electronic devices

The United States had not planned to address this issue in its case-in-chief and does not object to its exclusion at trial. However, the United States included FBI Digital Forensic Examiner Alan Schmidt on its witness list. The United States expects that Mr. Schmidt will testify as a foundational witness

regarding the downloading of the defendant's electronic devices for review by the FBI agents assigned to this case. The United States also expects that Mr. Schmidt will testify that be downloaded a complete copy of the defendant's electronic devices on to a hard drive that was later provided to defense counsel.

### Defendant's Motion in Limine No. 10 – The Court should admit evidence of the Defendant's Chinese Communist Party Membership[3]

Tang asserts that evidence related to her Chinese Communist Party membership should be excluded because it is unduly prejudicial and lacks relevance. In essence, Tang seeks exclusion of this evidence because it was not material to the State Department's determination whether to grant Tang's J-1 visa. The United States incorporates by reference the factual statements from its Motion In Limine to Admit Inextricably Intertwined Evidence as to the documents relevant to Tang's Chinese Communist Party Membership. ECF 187.

### A.  This Evidence is Inextricably Intertwined with the Charged Offenses

The J-1 visa application is admissible in evidence in its entirety as both a business record and a public record under Federal Rules of Evidence 803(6), 901 (2) and (11) respectively.[4] Moreover, it contains statements that are non-hearsay as they are the defendant's own statements. Fed. R. 801(d)(2). It is one of the primary and most important pieces of evidence in the case and the all of the defendant's statements thereon are intrinsic to, and provide necessary context to, the charged offense.

"[E]vidence that is 'inextricably intertwined' with a charged offense is independently admissible and is exempt from the requirements of Rule 404(b). *United States v. Anderson*, 741 F.3d 938, 949 (9th Cir. 2013) (citing Fed. R. Evid. 404(b) advisory committee's notes, which state that Rule 404(b)'s requirements do "not extend to evidence of acts which are 'intrinsic' to the charged offense").

---

[3] The United States recognizes that this portion of its response is largely the identical to that contained in its response to Defense Motion in Limine No. 7. However, for issue clarity purposes, the United States did not collapse these two motions.

[4] *See* Government's Motion in Limine to Admit Defendant's Visa Records, filed on July 16, 2021.

Acts that are "intrinsic" to the charged offense "include evidence constituting a part of the transaction that serves as the basis for the criminal charge." *Id.* (citing *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012)). For example, the Ninth Circuit has held that contemporaneous uncharged drug transactions may be admitted as intrinsic to the charged offense. *Id.* (citing *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995)). The Court has explained that this "is because Rule 404(b) does not apply when offenses committed as part of a single criminal episode become other acts simply because the defendant is indicted for less than all of his actions." *Id.*

This evidence is also intertwined with the charged offenses insofar as it is "necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Dorsey*, 677 F.3d at 951; *Anderson*, 741 F.3d at 949-50 (explaining that "intrinsic evidence" includes evidence that is necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime). Included in this category is "evidence explaining the nature of a defendant's business activity and providing a context" for various transactions. *Anderson*, 741 F.3d at 949.

Here, all of the defendant's statements on the application form constitute a single criminal episode in which she lied on the visa form to gain entry into the United States. In order to present a clear a comprehensible picture for the jury of the scope of Tang's visa fraud, the United States should be allowed to present evidence related to other Tang's lies on her visa application. The other falsehoods on Tang's visa application reflects not only her consciousness of guilt, but also greatly diminishes her ability to argue that her failure to truthfully disclose her military affiliation was simply a mistake or misunderstanding. There is simply no good explanation for Tang to lie about her Communist Party membership.

## B. Alternatively, the Evidence Should be Admitted Under Rule 404(b)

Federal Rule of Evidence 404(b) limits the general admissibility of relevant evidence, as it makes evidence of other crimes, wrongs, or acts inadmissible to show propensity. *United States v. Curtin*, 489 F.3d 935, 943 (9th Cir. 2007) (en banc). However, such evidence is admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence

of mistake, or lack of accident." Fed. R. Evid. 404(b).

Rule 404(b) is a rule of inclusion that permits the government to introduce prior act evidence unless the *only* purpose of the evidence is to show criminal character. *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc). "Once it has been established that the evidence offered" by the government is to establish the defendant's motive, intent, or knowledge, "the 'only' conditions justifying the exclusion of the evidence are those described in Rule 403." *Id.* at 952-53.

In the Ninth Circuit,

> The test for admitting evidence under 404(b) is whether: (1) it tends to prove a material fact; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the act; and (4) where knowledge and intent are at issue, the act is similar to that charged.

*United States v. Tsinnijinnie*, 91 F.3d 1285, 1288-89 (9th Cir. 1996).

Here, the evidence concerning defendant's other misrepresentations on the visa application tend to establish the defendant's intent, knowledge, and absence of mistake and meet the Ninth Circuit's test for admission under Rule 404(b). This evidence not offered to show criminal character. Simply put, Tang's lies on questions other than military service are probative of her overall intent to obfuscate on the J-1 visa application. For example, the fact that Tang lied about her specialized biological experience and Communist Party membership tends to show an absence of mistake or accident with respect to answering the question on the visa application regarding her military service. The government expects Tang will take the position that she simply misunderstood the question related to military service or that it was confusing. The fact that Tang made other false representations seriously undercuts that position. These other misrepresentations are not remote in time, as they were made contemporaneously with the charged misstatement, and the government expects to be able to sufficiently prove these misrepresentations with witness testimony and the other evidence outlined above. Additionally, knowledge and intent are at issue as to the charges in this case. As charged in the superseding indictment, knowledge that the visa had been obtain through fraudulent means in an element of the offense.

Finally, Rule 403 does not justify exclusion of this evidence. "Rule 403 . . . is 'an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence.'"

1   *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (quoting *United States v. Patterson*, 819

2   F.2d 1495, 1505 (9th Cir. 1987)).  For it to apply, "the danger of prejudice must not merely outweigh the

3   probative value of the evidence, but substantially outweigh it." *Id.*  "Unfair prejudice" is measured by

4   the extent to which testimony "makes conviction more likely because it provokes an emotional response

5   in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart

6   from its judgment as to his guilt or innocence of the crime charged." *United States v. Bailleaux*, 685

7   F.2d 1105, 1111 (9th Cir. 1982).

8       Here, the prejudice of the other falsehoods on the defendant's visa application do not outweigh

9   their probative value.  They simply paint a complete picture of the defendant's actions. None of this

10  evidence is likely to provoke an emotional jury response nor is there any danger that the additional lies

11  will somehow impact the jury's attitude toward Tang.  The evidence is relevant because shows the

12  extent to which Tang was willing to go in order to obtain a non-immigrant visa.

13      The court should admit evidence related to the defendant's Chinese Communist Party

14  Membership.

15

16   Dated:  July 21, 2021                              PHILLIP A. TALBERT
                                                        Acting United States Attorney
17

18                                              By:   /s/ HEIKO P. COPPOLA
                                                      HEIKO P. COPPOLA
19                                                    Assistant United States Attorney

20

21

22

23

24

25

26

27

28

GOVERNMENT'S RESPONSES TO DEFENDANT'S
MOTIONS IN LIMINE.